COPPERSMITH BROCKELMAN PLC
KEITH BEAUCHAMP (#012434)
ROOPALI H. DESAI (#024295)
2800 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone:  (602) 381-5490
kbeauchamp@cblawyers.com
rdesai@cblawyers.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM A. ISAACSON *(admitted pro hac vice)*
KAREN L. DUNN *(admitted pro hac vice)*
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone:  (202) 237-2727
wisaacson@bsfllp.com
kdunn@bsfllp.com

STEVEN C. HOLTZMAN *(admitted pro hac vice)*
JOHN F. COVE, JR. *(admitted pro hac vice)*
KIERAN P. RINGGENBERG *(admitted pro hac vice)*
SEAN P. RODRIGUEZ *(admitted pro hac vice)*
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
sholtzman@bsfllp.com
jcove@bsfllp.com
kringgenberg@bsfllp.com
srodriguez@bsfllp.com

*Attorneys for Plaintiff SolarCity Corporation*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SolarCity Corporation,<br><br>　　　　　Plaintiff,<br><br>　　　　vs.<br><br>Salt River Project Agricultural Improvement and Power District; Salt River Valley Water Users' Association,<br><br>　　　　　Defendants. | No.  2:15-CV-00374-DLR<br><br>**JOINT PROPOSED DISCOVERY PLAN** |

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

Pursuant to the Court's March 19, 2015 order (Dkt. 24) in this case, the parties conducted a Rule 26(f) meeting on May 14, 2015, and jointly submit this Discovery Plan. Where the parties could not reach agreement on a joint proposal, this Plan sets forth the parties' positions.

**1.      The parties who attended the meeting and assisted in developing the Plan.**

Plaintiff SolarCity Corporation ("SolarCity") and Defendant Salt River Project Agricultural Improvement and Power District ("the District") attended the March 19 meeting through their counsel of record in this case.[1]

Defendant Salt River Valley Water Users' Association ("the Association") was not a named party to the case at the time of the initial meeting, but has since been added as a Defendant in SolarCity's First Amended Complaint dated May 20, 2015.   Counsel for the District agreed to accept service of the Amended Complaint on behalf of the Association and was served on May 20, 2015.  Counsel for the District will be prepared to address any issues raised by the addition of the Association at the May 29 conference with the Court. In the meantime, the Association does not join this Plan.

**2.      A short statement of the nature of the case (3 pages or less), including a description of each claim and defense.**

Plaintiff's Statement.  SolarCity sells and leases solar systems that generate electricity for residential and business customers.  Defendants (the District and the Association, collectively "SRP") oversee a power-and-water utility that serves almost 1 million electric customers in the Phoenix area.  As documents from SRP and other market participants will confirm, SolarCity and SRP compete in a market for the provision of

[1]      Steven C. Holtzman, John F. Cove, Jr., Kieran P. Ringgenberg, Marcy Lynch, and Sean P. Rodriguez of Boies, Schiller & Flexner LLP, and Keith Beauchamp of Coppersmith Brockelman PLC attended for SolarCity Corporation and assisted in developing this Plan.  Eric J. Mahr, Christopher T. Casamassima, and David L. Sluis of Wilmer Cutler Pickering Hale and Dorr LLP and Paul Charlton and Karl Tilleman of Steptoe & Johnson LLP attended the Rule 26(f) conference on behalf of Salt River Project Agricultural Improvement and Power District and assisted in the development of this Discovery Plan.

JOINT PROPOSED DISCOVERY PLAN

1    electric power to end-user customers, even while SolarCity customers remain customers

2    of SRP for access to the grid and purchases of electricity at times the sun is not shining.

3        On February 26, 2015, the District adopted Standard Electric Price Plans

4    ("SEPPs") that single out prospective solar customers for such a severe economic penalty

5    that it is now infeasible to install solar.  As intended, the SEPPs stopped virtually all new

6    rooftop solar installations in SRP's territory, eliminating competition in a single stroke.

7        SRP has no legitimate justification for its discriminatory and exclusionary terms.

8    Its pretextual "cost-shift" rationale fails for many reasons, including, among others, that

9    SRP's "fixed" cost calculations are skewed to deliberately disfavor solar customers, that

10   SRP's calculations ignore the benefits that solar users provide to the grid, that SRP

11   continues to deliberately perpetuate other far more massive cost-shifts that are in the

12   economic interest of SRP's owners, and that SRP's penalties on solar users are neither

13   tailored nor necessary to accomplish SRP's stated purpose.  Instead, SRP adopted the

14   SEPPs with the anticompetitive intent of preventing further growth of distributed

15   generation and keeping retail electric prices high, deliberately disregarding many of the

16   near-term benefits that distributed solar provides to SRP.

17       SRP's conduct constitutes a scheme to monopolize, attempt to monopolize, and to

18   restrain trade in the retail market in violation of the Sherman Act (15 U.S.C. §§ 1, 2), the

19   Clayton Act (15 U.S.C. § 14), and the Arizona Uniform State Antitrust Act (A.R.S. §§ 44-

20   1402, 44-1403), as well as intentional interference with SolarCity's contracts and business

21   expectancies.  The SEPPs are unlawful exclusive dealing contracts because they require

22   all customers to agree to terms that make it uneconomical and irrational for customers to

23   deal with distributed solar providers, and instead require them to buy all their electricity

24   from SRP.  Alternatively, SRP's conduct constitutes tying, bundling, and leveraging

25   SRP's monopoly power in the market for grid access to foreclose competition in the retail

26   market.  SolarCity's antitrust claims are supported by well-established precedent.  The

27   fact that they focus on exclusionary pricing policies—as is common in many cases

28   alleging tying and exclusive dealing—is in no way a bar to SRP's liability.

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

2

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1   Nor is SRP entitled to the protection of doctrines that exempt certain government

2   actors from some types of antitrust liability under limited circumstances, as discussed in

3   Section 12 below.  SRP serves the private interests of large landholders, which are

4   structurally over-represented on the SRP Board, which is elected only by certain

5   landowners, and by those landowners in proportion to the size of their landholdings.

6   Indeed, SRP keeps its electric prices high so that it can shift $50-100 million per year in

7   electricity profits to water operations that serve large landowners' interests.  Neither the

8   District nor the Association nor the Board is a public regulatory body, and the pricing

9   process that resulted in the adoption of the SEPPs was exclusively controlled by SRP's

10   management.  SRP cannot avail itself of defenses based on any status as a public body.

11   <u>The District's Statement</u>.  SolarCity's case is an attempt to achieve through

12   litigation what it failed to achieve through its active participation in the state-regulated

13   public pricing process that led to the adoption of the SEPPs by the District's governing

14   body—its publicly elected Board of Directors.  Customers with rooftop solar systems do

15   not pay for their fair share of the electrical grid under a traditional utility pricing model.

16   As a result, the fixed costs of building and maintaining the grid are shifted to customers

17   without rooftop systems.  In adopting the price plans that SolarCity asks this Court to

18   overturn, the District's board acted in the interests of all of its customers to end this unfair

19   cost shift.  SolarCity's claims fail for the following reasons.

20   First, *the District is immune from suits brought under the antitrust laws.*  The

21   Arizona Legislature has entrusted the District's pricing decisions to the District's elected

22   Board and established SRP as a political subdivision of the State of Arizona, A.R.S. § 48-

23   2302, that is "vested with all the rights, privileges and benefits, and entitled to the

24   immunities and exemptions granted municipalities and political subdivisions" under the

25   laws of Arizona and the United States, Ariz. Const. Art. 13 § 7.  Accordingly, the state

26   action immunity and filed-rate doctrines, the *Noerr-Pennington* immunity doctrine, and

27   the Local Government Antitrust Act, require dismissal of SolarCity's claims.  State action

28   immunity applies where a political body's conduct is authorized by the state legislature

JOINT PROPOSED DISCOVERY PLAN

and any allegedly anticompetitive effects are the "foreseeable result" of that conduct. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 40 (1985).  The policy implications raised by the state action immunity doctrine are so significant that an immediate appeal may be taken from a district court's determination that the state action immunity does not apply.  *Martin v. Memorial Hosp. at Gulfport*, 86 F.3d 1391, 1397 (5th Cir. 1996). The filed rate doctrine forbids a court from revising a regulated utility's rate where that rate is approved by the utility's governing regulatory body.  *Ark La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981).  The *Noerr-Pennington* immunity doctrine extends absolute immunity where a defendant's alleged injuries result solely from government action in response to valid petitioning.  *See Sessions Tank Liners, Inc. v. Joor Mfg.*, 17 F.3d 295, 300-02 (9th Cir. 1994).  And the Local Government Antitrust Act immunizes local government entities from antitrust claims for damages.  15 U.S.C. § 35.

Second, *SolarCity lacks standing to sue the District under the antitrust laws* because, as the Arizona Corporation Commission has held, SolarCity is not a competitor in the market for retail electricity, nor is it a residential customer of the District.

Third, *SolarCity's does not and cannot state viable federal or state antitrust claims*.  In addition to failing to allege an anticompetitive agreement under Section 1 of the Sherman Act, Section 3 of the Clayton Act or Arizona law, SolarCity does not—and cannot—allege that the District has any antitrust duty to set its rates in a manner that serves SolarCity's business interests, nor does it—or can it—allege that SolarCity's rates constitute unlawful below-cost pricing.  Therefore, SolarCity does not and cannot adequately allege actionable conduct under Section 2 of the Sherman Act or an unreasonable restraint of trade under Section 1 of the Sherman Act, Section 3 of the Clayton Act, or Arizona law.

Fourth, *SolarCity's state tort law claims fail* because SolarCity cannot allege the required predicate antitrust violation or any conduct by the District that is wrongful or

JOINT PROPOSED DISCOVERY PLAN

unlawful under Arizona law.[2]

**3.      A description of the principal factual and legal disputes in the case.**

The principal factual and legal disputes in this case include[3]:

   i.    The definition of the relevant product and geographic markets;

   ii.   Whether the Association and the District are *alter egos* such that the conduct of, or a judgment against, one applies to the other;

   iii.  Whether SolarCity competes with the District;

   iv.   Whether SolarCity has standing to sue under federal and Arizona antitrust laws;

   v.    Whether the District has obtained or maintained its monopoly power by means of anticompetitive conduct;

   vi.   Whether an anticompetitive agreement exists;

   vii.  Whether the District has legitimate business justifications for its conduct;

   viii. Whether the District's professed business justifications are pretextual;

   ix.   Whether the District's conduct has any procompetitive benefits and, if so, do they outweigh any anticompetitive effects;

   x.    Whether the District has less restrictive alternatives to the challenged conduct;

   xi.   Whether SolarCity has suffered cognizable harm, and if so in what

---

[2] The District further reserves the right to assert additional defenses to SolarCity's Amended Complaint, which the District had not had an opportunity review in advance of the Rule 26 conference or in connection with the preparation of this Report.  In addition, the Association reserves its rights to assert any applicable defenses to the Amended Complaint filed on May 20, 2015.

[3] By identifying an issue here, neither party makes a representation as to whether a particular issue is of a factual or legal nature for purposes of the litigation.

B O I E S , S C H I L L E R & F L E X N E R   L L P
O A K L A N D , C A L I F O R N I A

JOINT PROPOSED DISCOVERY PLAN

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

amount, as a result of the District's conduct;

xii.     Whether SRP's conduct and mental state meets the standards for intentional interference torts;

xiii.    Whether the District engaged in tortious conduct;

xiv.     Whether the District is immune or otherwise exempt from any or all of SolarCity's claims under the state-action doctrine, filed-rate doctrine, the *Noerr-Pennington* doctrine, the Local Government Antitrust Act, or any other exception to the application of competition law;

xv.      Whether any of SolarCity's claims are barred by its failure to exhaust administrative remedies under A.R.S. 30-811 and 30-812;

xvi.     Whether the District is immune from damages based on state law claims under Title 12 of the A.R.S.;

xvii.    Whether SolarCity complied with Arizona's notice of claim statue; and

xviii.   Whether SolarCity is entitled to any of the relief it seeks.

**4.      The jurisdictional basis for the case, citing specific jurisdictional statutes.**

SolarCity asserts that there is personal jurisdiction over SRP in this District, including under 15 U.S.C. § 22, because SRP is a resident of this District and the relevant conduct took place, and continues to take place, in this District.  SolarCity and the District agree that the Court has subject-matter jurisdiction over the Complaint under 28 U.S.C. §§ 1331 and 1337(a), as well as 15 U.S.C. § 22, because this includes claims arising under the antitrust laws of the United States.  SolarCity and the District agree that the Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367 to the extent SolarCity's federal causes of action survive a motion to dismiss.  Furthermore, SolarCity believes that this Court has diversity jurisdiction over the state claims in the Amended Complaint under 28 U.S.C. § 1332 because there is complete diversity between the parties and the matter in controversy exceeds $75,000 before interest and costs.

JOINT PROPOSED DISCOVERY PLAN

The District and the Association state that they have not yet had an opportunity to evaluate fully whether the Court has jurisdiction over the Amended Complaint.

**5.** **Any parties that have not been served and an explanation of why they have not been served; and any parties which have been served but have not appeared.**

All parties have been served and have appeared.  Counsel for the Association agreed to waive service of the Amended Complaint on May 20, 2015, and the Association was served on May 20, 2015.

**6.** **A statement of whether any party expects to add additional parties to the case or otherwise amend pleadings.**

Plaintiff's Statement.  No additional parties are anticipated at this time.

The District's Statement.  The District does not expect add any additional parties at this time, however, the District had not had an opportunity review the Amended Complaint in advance of the Rule 26 conference or in connection with the preparation of this Report, and therefore requests a reasonable amount of time for the addition of parties.

**7.** **A listing of contemplated motions and statement of the issues to be decided by these motions (including motions under FRE 702-05).**

The District will file a motion to dismiss by June 23, 2015.  If any aspect of SolarCity's case survives the District's motion to dismiss, the District expects to file a motion for summary judgment addressing each remaining claim.

SolarCity does not at present contemplate filing any motions.  Of course, depending on developments during discovery, SolarCity may later decide to file dispositive, or other, motions.

The parties are currently working to resolve disputes concerning an appropriate protective order and discovery issues.  It is possible those or similar disputes could require motion practice.  The parties may also make additional procedural, evidentiary, or expert-related motions as the case record develops.

JOINT PROPOSED DISCOVERY PLAN

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

**8.**   **Whether the case is suitable for reference to arbitration or a US magistrate judge for trial.**

The parties do not believe this matter is suitable for such reference.

**9.**   **The status of related cases pending before other courts or other judges of this Court.**

No related cases are pending before other courts or other judges of this Court.

**10.**   **A statement of when the parties exchanged Federal Rule of Procedure 26(a) initial disclosures.**

The parties exchanged their initial disclosures on May 8, 2015, as directed in this Court's March 19, 2015 Order.

**11.**   **A discussion of necessary discovery, including:**

**a.**   **The extent, nature, and location of discovery anticipated by the parties.**

<u>Plaintiff's Statement</u>.  SolarCity will seek discovery into SRP's cost structure, investments, and grid technology; motivations for the SEPPs; alternatives to the SEPPs that SRP considered, if any; anticipated and actual effect of challenged conduct on SRP, SRP's customers, and distributed generation competitors; SRP's dealings and internal discussions and analyses concerning distributed solar and other competitors or competitive technologies; SRP's motivations and incentives (including its motivations as a private actor).  Discovery will include documents, electronically stored information, and data maintained by SRP, including its governing Boards and Councils.

There is a substantial need for discovery from SRP in addition to the limited materials SRP decided to disclose to the public during the SEPP process.  Indeed, SRP management exercised complete discretion over what materials to make available during the process, and declined a significant number of SolarCity's and others' requests for information.  Moreover, SRP never suggested during the pricing process that any requests for information during the process would foreclose later requests in litigation deemed necessary to address the ultimate result of the process.  Finally, discovery in a case of this nature will not be limited simply to materials on which SRP purportedly based its

JOINT PROPOSED DISCOVERY PLAN

decisionmaking during the SEPP process, but of course must extend to substantial historical and competitive information that will put the competitive effects, intent, and justifications for that conduct to the test.[4]

SolarCity will also seek discovery from third parties, including SRP's consultants, customers, and the members of SRP's governing Boards and Councils (to the extent that SRP contends that those members are not subject to party discovery).

The District's Statement.  Because SolarCity's case is based entirely on the SEPPs adopted pursuant to a state-regulated public pricing process in which SolarCity actively participated, discovery from the District need not be as extensive as in many other antitrust cases.  The vast majority of the documents on which the District's Board based the pricing decision that SolarCity challenges were available for public inspection during the public pricing process, and have already been produced to SolarCity.  SolarCity played an active role in that process, including conducting interviews of members of the District's Board and the Board's consultants and presumably reviewing available documents.  Despite the transparent pricing process, and SolarCity's active role in it, SolarCity is still requesting a massive amount of discovery in this case.  Indeed, in addition to extensive document requests served on the District, SolarCity has already served _**68**_ Rule 45 subpoenas to nonparties located inside and outside of Arizona— including each of the 46 publicly elected Board and Council members that govern the

---

[4] As to the 68 subpoenas referred to by SRP in its statement below, 46 of those are to SRP Board or Council members.  SolarCity subpoenaed those individual members to avoid disputes about whether their documents were in the custody or control of SRP or the individual for purposes of party discovery, and to gain discovery into the members' financial interests, which are relevant to the market-participant exception and intent because many members have substantial interests in the agricultural irrigation subsidized by SRP's supracompetitive electric revenues.  The remaining subpoenas are to SRP's own various consultants and putative experts that SRP hired to assert justifications for the SEPPs; four other utilities in Arizona; and to two customers that are subjects of the intentional interference claims.  There has been no motion practice on any of those subpoenas because SolarCity has sought to be reasonable in accommodating those third parties' objections and schedules.

JOINT PROPOSED DISCOVERY PLAN

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1    District and the Association.

2          Depending on the scope of the case that remains after the District's motion to

3    dismiss—if any claim remains at all—the District will likely need discovery to prepare its

4    defenses.  To that end, the District has served written discovery on SolarCity pursuant to

5    this Court's March 19 Order.  The District anticipates that there will be additional written

6    discovery, depositions, and expert discovery, including expert reports and depositions, to

7    the extent that this case survives the District's motion to dismiss.  Most of this discovery

8    will occur at or near SolarCity's and the District's respective headquarters in San Mateo,

9    California and Tempe, Arizona.  Additional discovery will likely occur at or near the

10   locations of subpoenaed nonparties.

11          **b.       Suggested changes, if any, to the discovery limitations imposed by the**
             **FRCP.**

12

13          <u>Plaintiff's Statement</u>.  SolarCity believes that this complex case warrants

14   expanding the number of requests for production and requests for admission to 60 of each

15   for each side (*i.e.*, SolarCity would have 60 requests for production and 60 requests for

16   admission to use as to Defendants collectively, and Defendants collectively would have

17   60 requests for production and 60 requests for admission to use as to SolarCity).

18          SolarCity further proposes that each side may propound 25 interrogatories plus (for

19   each side) one interrogatory corresponding to each set of requests for admission seeking

20   the basis of each response to the requests that is not, in its entirety, "ADMIT."

21          SolarCity also proposes that fact depositions (*i.e.*, all depositions that are not expert

22   depositions) should be limited to a cumulative total of 180 hours or 35 fact depositions

23   (whichever is reached first) for each side.  For the sake of clarity, multiple Rule 30(b)(6)

24   notices may issue, and a witness offered as a Rule 30(b)(6) witness on any topic(s) may be

25   separately deposed as an individual fact witness to the extent the Rule 30(b)(6) deposition

26   was limited to the designated Rule 30(b)(6) topics.  In this respect, SolarCity notes that

27   SRP's initial disclosures already identify 11 SRP-employee witnesses and 7 third-party

28   witnesses that SRP may use to support its claims or defenses.  SRP also provided a list of

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

JOINT PROPOSED DISCOVERY PLAN

B O I E S   ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

1   persons involved with developing the SEPPs that includes an additional 3 SRP employees

2   not on their initial disclosures.  That is a total of 21 witnesses that SRP even initially

3   admits are relevant, not even including Rule 30(b)(6) witnesses, experts, or individuals

4   that SolarCity believes have information that would support *its* case, such as individual

5   customers and other market participants.

6       In addition, SolarCity proposes that each expert may be deposed once following

7   the conclusion of that expert's report(s).

8       <u>The District's Statement</u>.  SRP believes the Court's modifications to the Federal

9   Rules of Civil Procedure contained in its model Case Management Order—limiting

10  requests for production and requests for admission to 40 per side—should apply to this

11  case.  The District believes the Court should adhere to the 10 deposition limit contained in

12  FRCP 30(a), but would not oppose extending this limit to accommodate additional

13  depositions above 10 for each retained expert who submits an expert report pursuant to

14  FRCP 26(a)(2).  The District requests no further modifications to the Federal Rules of

15  Civil Procedure.

16      The District specifically opposes SolarCity's proposal to take up to 35 depositions

17  (which is more than three times as many depositions that are permitted by default under

18  FRCP 30(a)) or up to 180 hours in total deposition time (which is well more than twice

19  the total time permitted by default under FRCP 30(a)).  The District also opposes

20  SolarCity's request to effectively expand the number of interrogatories permitted from 25

21  to 65 by permitting an interrogatory for each request for admission that is not admitted in

22  full. And the District presently sees no reason why the parties should be permitted to

23  exceed the 40 requests for admission included in this Court's model Case Management

24  Order.  The District agrees with SolarCity that each expert may be deposed only once.

25      **c.**     **The number of hours permitted for each deposition, unless extended by**
26          **agreement of the parties.**

27      The parties agree that all depositions should remain at the 7-hour-day default, with

28  the parties reserving the right to agree to different limits for certain depositions or to seek

11

1    an order permitting more than 7 hours for good cause.

2    **12.    Proposed specific dates for each of the following (deadlines should fall on a
            Friday unless impracticable).**

3

4        <u>Plaintiff's Statement</u>.  SolarCity believes that substantive discovery, including

5    productions of documents and responses to interrogatories and requests for admission,

6    should continue to proceed in a reasonably tailored manner pending a motion to dismiss.

7    Many categories of documents and data exist that can and should be produced without

8    delay, in many cases requiring no substantial document-by-document review, and

9    SolarCity is prepared (as it has already indicated to the District) to discuss reasonable

10   limits on near-term production that minimize the burden on the District.

11       With regard to Defendants' Statement below, SolarCity disagrees that substantive

12   discovery or document production should be stayed pending a motion to dismiss.  SRP

13   previously sought to delay discovery citing by the complexity of antitrust discovery and

14   an Arizona statute.  (Dkt. Nos. 9-13.)  SRP's new reasons for delay rely entirely on

15   various narrow, disfavored doctrines that do not apply on this case's facts.[5]  Both here

16

17

18

19   [5] The Supreme Court made clear earlier this year that the state action doctrine is limited
     and disfavored.  *N.C. State Bd. Of Dental Examiners v. F.T.C.*, 135 S. Ct. 1101 (2015).

20   SRP cannot meet the doctrine's *prima facie* requirements of a "clearly articulated and
     affirmatively expressed" state policy to displace competition, and active supervision by

21   the state (not just a "mere façade" of involvement).  *Id.* at 1111.  SRP is not implementing

22   any state policy; its decisions are the otherwise unchecked exercise of its economic self-
     interest and the economic interests of large landowners that undemocratically elect its

23   Board.  SRP can identify neither any state policy authorizing its misconduct nor any state
     supervision.  Even if it could, the Ninth Circuit recognizes the "market participant"

24   exception, under which the state action doctrine does not apply when a governmental
     entity participates in private markets, as SRP does here.  *Johnson v. Rancho Santiago*

25   *Cmty. Coll*, 623 F.3d 1011, 1023 (9th Cir. 2010).

26       The filed-rate doctrine is similarly disfavored and does not apply in a suit by a

27   competitor, such as this one.  *Cost Management Services, Inc. v. Washington Natural Gas
     Co.*, 99 F.3d 937, 945-48 (9th Cir. 1996) (filed-rate doctrine is disfavored and does not

28

JOINT PROPOSED DISCOVERY PLAN

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

and above (Section 2, pp. 3-4), SRP puts particular weight on the state-action doctrine and incorrectly asserts that the doctrine allows an immediate interlocutory appeal.  That is incorrect for several independent reasons.

SRP erroneously relies on *Martin v. Memorial Hosp. at Gulfport*, 86 F.3d 1391 (5th Cir. 1996) and *Acoustic Systems v. Wenger*, 207 F.3d 287 (5th Cir. 2000) for the propositions that the state-action doctrine is an "immunity" from suit arising from such significant "policy implications" that immediate appeal is warranted after a motion to dismiss.  *Martin* and *Wenger* represent a minority view on the state-action doctrine, never followed by any court within this Circuit and heavily criticized by the more recent decisions and commentators.  As the Fourth Circuit more recently explained, the state action doctrine does not rest on a "constitutional or common law 'right not to be tried'" and so is "qualitatively different from" the settled immunities from suit such as qualified immunity, "which focus on the harms attendant to litigation itself."  *S.C. State Bd. of Dentistry v. F.T.C.*, 455 F.3d 436, 445 (4th Cir. 2006)*, cert. denied*, 549 U.S. 1165 (2007).

Even the Fifth Circuit itself recognizes that "immunity is an inapt description, for its parentage differs from the qualified and absolute immunities of public officials." *Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1*, 171 F.3d 231, 234 (5th Cir. 1999) *(en banc)*.  Accordingly, a defendant asserting state action defense must "await a single consolidated appeal [ . . . were it] otherwise, the important interests protected by the final judgment rule would fade out whenever the government or an official lost an early round that could have stopped the fight."  *S.C. State Bd. of Dentistry*, 455 F.3d at 445 (internal quotation omitted); *see also* Wright & Miller, Federal Practice & Procedure,

apply in competitor suits); *Johnson v. First American Title Ins. Co.*, 2008 WL 4850198, at *4 (D. Ariz. 2008) ("Arizona has never adopted the filed-rate doctrine").

The Local Government Antitrust Act does not apply in this case.  Even if it did, it bars only damages on federal claims; federal equitable relief would remain, as would state damages claims.

The *Noerr-Pennington* doctrine is not an immunity and applies to government-petitioning conduct.  SRP cannot petition itself.

SRP's remaining arguments regarding various Arizona statutes will likewise fail.

JOINT PROPOSED DISCOVERY PLAN

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

§ 3914.10 (West 2015) ("One court has permitted a defendant to appeal on the defense that an antitrust claim was barred by the 'state action' doctrine but the contrary ruling of another court is more persuasive; there is little to distinguish this defense from many other defenses to antitrust or other claims.") (citations omitted).  Instead, a defendant arguing the state-action doctrine is in the same position as "a defendant arguing his conduct falls outside the scope of a criminal statute," who must await appeal from a final judgment. *S.C. State Bd. of Dentistry*, 455 F.3d at 445.

Indeed, the Supreme Court this year issued a decision regarding the state action doctrine that confirms that *Martin* and *Wenger* are wrong about the policy behind the state-action doctrine.  *N.C. State Bd. Of Dental Examiners v. F.T.C.*, 135 S. Ct. 1101 (2015).  Given the "fundamental national values of free enterprise and economic competition that are embodied in the federal antitrust laws," the state action defense to antitrust claims is "disfavored" and limited.  *Id.* at 1111.  That undermines the Fifth Circuit's misguided belief that the state-action doctrine is somehow more important than the antitrust laws' fundamental economic policy.

Moreover, contrary to SRP's blithe and purely semantic assertion that "immunity" is the inquiry's beginning and end, the Supreme Court has made clear that SRP would need to meet "stringent" requirements in order to take an immediate appeal.  *Will v. Hallock*, 546 U.S. 345, 349-50 (2006).  These requirements include that the order from which an appeal is taken must (1) "conclusively determine the disputed question"; (2) "resolve an important issue completely separate from the merits of the action"; *and* (3) "be effectively unreviewable on appeal from a final judgment."  *Id.*  But SRP's state-action defense raises merits issues, implicates SRP's burden of *proof*, and depends on *factual* issues (*e.g.*, whether SRP serves private rather than public interests and operates as a market participant) that are intertwined with merits issues such as the nature and intent of its conduct.  *See Johnson v. Rancho Santiago Cmty. Coll*, 623 F.3d 1011, 1023 (9th Cir. 2010); *Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.*, 22 F.3d 1260, 1266 (3d Cir. 1994).  In sum, SRP provides no basis on which discovery should be stayed or limited

JOINT PROPOSED DISCOVERY PLAN

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1    in this case.

2         The District's Statement.  The District believes discovery should be limited and the

3    Court should defer setting specific discovery deadlines pending the outcome of the motion

4    to dismiss.  The District's motion to dismiss will seek dismissal of this this case in its

5    entirety.  One of the bases for dismissal is that the District is immune from the antitrust

6    laws under the state action immunity doctrine.  This immunity is not just a protection from

7    judgment; it protects state actors from suit and all the discovery burdens associated with

8    it.  *Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 293-94 (5th Cir. 2000).  As a non-

9    profit, public entity whose only revenues necessarily come from ratepayers, the District

10   should not be forced to respond to extensive discovery until this Court has determined that

11   the District is not immune from suit and that SolarCity has stated a viable claim.[6]

12        The reasons for staying discovery apply with even greater force to nonparties.

13   Indeed, the parties and this Court have a special obligation to protect nonparties from

14   undue burdens.  See Fed. R. Civ. P. 45(d).  Here, if the Court finds that the District is

---

[6] SolarCity's argument that the state action doctrine is not immediately appealable rests solely on two out-of-circuit decisions that hold that the state action doctrine is not a true "immunity."  Whatever the merits of those decisions at the time they were decided, arguments based on those decisions have been squarely foreclosed by the Supreme Court's decision in *North Carolina State Bd. of Dentistry v. FTC*, 135 S. Ct. 1101 (2015). That decision refers to the state action doctrine as conferring on defendants an "immunity" from the antitrust laws no fewer than 35 times.  Similarly, the Ninth Circuit has repeatedly recognized that the state action doctrine provides covered defendants with "immunity" from the antitrust laws.  *See, e.g.*, *Snake River Valley Elec. Ass'n v. PacifiCorp*, 357 F.3d 1042 (9th Cir. 2004).  The logic of the cases SolarCity relies on are also flawed.  State action immunity arises from "States' . . . sovereign interest in structuring their governments."  *North Carolina State Bd.*, 135 S. Ct. at 1115.  That interest lies "at the heart of representative government," *Gregory v. Ashcroft*, 501 U.S. 452, 463 (1991) and should therefore be treated no differently than other forms of state immunity from suit, the denial of which in federal district court are also immediately appealable.  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993) (denials of state sovereign immunity are immediately appealable); *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005) (same).

        Rather than fully brief these issues as part of the Discovery Plan, the District will be prepared to discuss them at the May 29, 2015, conference, if the Court desires.

JOINT PROPOSED DISCOVERY PLAN

1   immune from suit or that SolarCity has otherwise failed to state a claim, any burden

2   imposed on nonparties will have been undue.

3        For these reasons, the District requests that discovery should thus be limited,

4   pending a ruling on the District's motion to dismiss, to: (1) responding to all outstanding

5   written discovery served as of the date of the filing of this Report (but not producing any

6   documents); (2) negotiating with opposing counsel regarding collection, review, and

7   production of documents responsive to such requests; (3) and resolving any discovery

8   disputes relating to those requests (including through Court intervention if necessary).

9   This would enable the parties to make meaningful progress with respect to document

10  production by identifying and collecting materials for review so that they could promptly

11  proceed to review and production if any claims survive dismissal, without undertaking the

12  costly process of document-by-document review and production while a case-dispositive

13  motion is pending.

14       Following a ruling on the District's motion to dismiss, both parties would then

15  meet and confer within 10 days to discuss the timing and scope of document productions

16  and any additional discovery relevant to SolarCity's remaining claims, if any, and the

17  potential implication of any immediate appellate proceedings.  The District further

18  proposes that, if any of SolarCity's claims survive dismissal, the Court could set a

19  scheduling conference to establish specific deadlines for completing discovery and

20  dispositive motions.

21       In the event the Court does not agree to limit discovery pending a ruling on the

22  District's motion to dismiss, the District proposes the alternative schedule described in

23  items 12(a)-(e) below, assuming that discovery will be limited to the District's proposal in

24  paragraph 11 (including 10 fact witness depositions per side).

25  **a.    A deadline for completion of fact discovery and disclosure pursuant to Rule 26(a)(3).**

26

27  Plaintiff's Statement.  SolarCity proposes that fact discovery should be complete

28  by February 26, 2016.  SolarCity also proposes the following interim deadlines and

JOINT PROPOSED DISCOVERY PLAN

guidelines for discovery during the fact discovery period:

- Documents should be produced on a rolling basis reasonably designed to ensure the efficient and orderly progress of discovery, even during the pendency of a motion to dismiss, without imposing undue burden while any such motion is pending.

- Production of documents responsive to any request for production served on or before July 3, 2015 should be completed by October 2, 2015, without limiting or modifying any earlier applicable deadlines imposed by any otherwise applicable rule.

- Interrogatories, requests for admission, and requests for production should be served on or before November 27, 2015.

- The fact discovery deadline of February 26, 2016 should be subject to possible supplementation in advance of trial on a schedule to be set in connection with the trial.

The District's Statement. Fact discovery, including all responses to discovery and document productions (which may take place on a rolling basis), should be complete by February 26, 2016.

**b.    A deadline for complete disclosures of expert testimony.**

Plaintiff's Statement. SolarCity proposes that expert disclosure be made in the manner set forth by the Court's model Case Management Order, with the following specific dates:

- Plaintiff shall provide full and complete expert disclosures as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure no later than March 25, 2016.

- Defendants shall provide full and complete expert disclosures, including any response or rebuttal to Plaintiffs' expert disclosures, as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure no later than April 29, 2016.

JOINT PROPOSED DISCOVERY PLAN

- Plaintiff shall provide rebuttal expert disclosures, if any, no later than May 20, 2016.  Rebuttal experts shall be limited to responding to opinions stated by initial experts.

SolarCity notes that its proposal differs from the District's statement below in only one respect:  SolarCity proposes that only SolarCity's expert(s) make rebuttal reports, in light of the fact that the District's expert(s) will be making disclosures a month after SolarCity's expert(s) make their opening reports, and therefore can and should incorporate all rebuttal material in those reports.  Alternatively, SolarCity is amenable to a schedule under which both parties' experts make opening disclosures on March 25, 2016, and then both parties' experts make rebuttal disclosures on May 20, 2016.

The District's Statement.  The District suggests that this Court structure expert disclosures according to its model Case Management Order, with the following specific dates:

Plaintiff shall provide full and complete expert disclosures as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure no later than March 25, 2016.

The District shall provide full and complete expert disclosures as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure no later than April 29, 2016.

The parties' rebuttal expert disclosures, if any, shall be made no later than May 20, 2016.  Rebuttal experts shall be limited to responding to opinions stated by initial experts.

**c.**     **A deadline for completion of all expert depositions.**

Expert depositions should be completed no later than June 17, 2016.

**d.**     **A deadline for filing dispositive motions.**

Dispositive motions and motions challenging expert opinion testimony should be filed no later than July 29, 2016.

**e.**     **A date by which the parties shall have engaged in good faith settlement talks.**

Within 30 days following a decision on the District's motion to dismiss.

JOINT PROPOSED DISCOVERY PLAN

**13.     Whether a jury has been requested and whether the request for a jury trial is contested (if the request is contested, set forth separately).**

SolarCity has requested a jury trial.  The District contests SolarCity's right to a jury trial if no damages claims remain after the District's motion to dismiss.  SolarCity does not agree that any combination of SRP's legal arguments could completely eliminate its right to a jury trial, but SolarCity may be willing to agree to a bench trial if only equitable relief remains available.

**14.     The estimated length of trial and any suggestions for shortening trial.**

The parties currently anticipate that trial would require 3-4 weeks.  The parties will work together on ways to shorten the trial as the record develops.

**15.     The prospects for settlement, including any request of the Court for assistance in settlement efforts.**

The parties engaged in pre-complaint discussions and SolarCity made an offer of compromise as part of its notice of state law damages claims pursuant to A.R.S. § 12-821.01.[7]  The District responded to the notice, and the offer included therein, on May 15, 2015.  The parties do not believe settlement is likely prior to a decision on a motion to dismiss and further discovery.

The parties anticipate, barring resolution by dispositive motion, the case has a high probability of proceeding to trial.  The parties therefore do not request the Court's assistance as to any settlement effort.  If the Court or parties determine that settlement assistance is appropriate in the future, the parties believe that referral to a magistrate or private mediator would be the best course.

---

[7] The District does not believe SolarCity's notice met the requirements of A.R.S. § 12-821.01.

JOINT PROPOSED DISCOVERY PLAN

1

2

**16.    Any other matters that will aid the Court and parties in resolving this case in a just, speedy, and inexpensive manner as required by FRCP 1.**

3

<u>The District's Statement</u>.  The District refers to its response to paragraph 12, above.

4

5

Dated:  May 22, 2015                    Respectfully Submitted,

6

                                         BOIES, SCHILLER & FLEXNER LLP

7

                                         By: s/Steven C. Holtzman_____

8

                                                 Steven C. Holtzman

9

                                         *Attorneys for Plaintiff* SolarCity Corporation

10

11

Dated:  May 22, 2015                    Respectfully Submitted,

12

13

                                         WILMER CUTLER PICKERING HALE
                                             & DORR LLP

14

15

                                         By: s/Christopher T. Casamassima_____

16

17

                                         *Attorneys for Defendants* Salt River Project
                                         Agricultural Improvement and Power District &

18

                                         Salt River Valley Water Users' Association

19

20

21

22

23

24

25

26

27

28

20

JOINT PROPOSED DISCOVERY PLAN

1

| *Attorneys for Plaintiff* SolarCity Corporation | *Attorneys for Defendants* Salt River Project Agricultural Improvement and Power District & Salt River Valley Water Users' Association |
|---|---|

2

3

4  Steven C. Holtzman *(admitted pro hac vice)*

John F. Cove , Jr.  *(admitted pro hac vice)*

5  Kieran P. Ringgenberg *(admitted pro hac vice)*

6  Sean P. Rodriguez *(admitted pro hac vice)*

7  BOIES SCHILLER & FLEXNER LLP

1999 Harrison St., Ste. 900

8  Oakland, CA 94612

510-874-1000

9  Fax: 510-874-1460

sholtzman@bsfllp.com

10  jcove@bsfllp.com

11  kringgenberg@bsfllp.com

srodriguez@bsfllp.com

12

13  Keith Beauchamp (#012434)

14  Roopali H. Desai (#024295)

Coppersmith Brockelman PLC

15  2800 N. Central Ave., Ste. 1200

Phoenix, AZ 85004

16  602-224-0999

17  Fax: 602-224-6020

kbeauchamp@cblawyers.com

18  rdesai@cblawyers.com

19

20

Eric J. Mahr *(admitted pro hac vice)*

Christopher E. Babbitt *(admitted pro hac vice)*

Wilmer Cutler Pickering Hale & Dorr LLP

1875 Pennsylvania Ave. NW

Washington, DC 20006

202 663 6000

Fax: 202-663-6363

eric.mahr@wilmerhale.com

christopher.babbitt@wilmerhale.com

Christopher T. Casamassima (*admitted pro hac vice*)

Wilmer Cutler Pickering Hale & Dorr LLP

350 South Grand Ave.

Los Angeles, CA 90071

chris.casamassima@wilmerhale.com

Karl Michael Tilleman (012449)

Paul Kipp Charlton (013435)

Steptoe & Johnson LLP

201 E Washington St., Ste. 1600

Phoenix, AZ 85004-2382

602-257-5200

Fax: 602-257-5299

ktilleman@steptoe.com

pcharlton@steptoe.com

21

22

23

24

25

26

27

28

JOINT PROPOSED DISCOVERY PLAN