COPPERSMITH BROCKELMAN PLC
KEITH BEAUCHAMP (#012434)
ROOPALI H. DESAI (#024295)
2800 North Central Avenue, Suite 1200
Phoenix, AZ  85004
Telephone:  (602) 381-5490
kbeauchamp@cblawyers.com
rdesai@cblawyers.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM A. ISAACSON *(admitted pro hac vice)*
KAREN L. DUNN *(admitted pro hac vice)*
5301 Wisconsin Ave, NW
Washington, DC  20015
Telephone:  (202) 237-2727
wisaacson@bsfllp.com
kdunn@bsfllp.com

STEVEN C. HOLTZMAN *(admitted pro hac vice)*
JOHN F. COVE, JR. *(admitted pro hac vice)*
KIERAN P. RINGGENBERG *(admitted pro hac vice)*
SEAN P. RODRIGUEZ *(admitted pro hac vice)*
1999 Harrison Street, Suite 900
Oakland, CA  94612
Telephone: (510) 874-1000
sholtzman@bsfllp.com
jcove@bsfllp.com
kringgenberg@bsfllp.com
srodriguez@bsfllp.com

*Attorneys for Plaintiff SolarCity Corporation*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SolarCity Corporation, <br><br>             Plaintiff, <br><br> vs. <br><br> Salt River Project Agricultural Improvement and Power District; Salt River Valley Water Users' Association, <br><br>             Defendants. | No.  2:15-CV-00374-DLR <br><br> **PLAINTIFF SOLARCITY CORPORATION'S OPPOSITION TO DEFENDANT SALT RIVER VALLEY WATER USERS' ASSOCIATION'S MOTION TO DISMISS** <br><br> **Oral Argument Requested** |

The Association and the District are *alter egos*.[1] SolarCity's Complaint alleges that relationship, and describes the many facts that support it, including how the Association and the District share nearly every director, commingle funds, operate a single integrated business, and hold themselves out as a single company—and have done so for their long, shared history. *E.g.*, ¶¶ 19-35. SolarCity did not invent this relationship. Instead, the District and the Association have deliberately and publicly perpetuated it. A state appellate court reasoned in 1970 that the district had become "in fact the alter ego of the association," *Miller v. Salt River Valley Water Users' Assoc.*, 11 Ariz. App. 256, 262 (1970). Decades later, the Ninth Circuit observed that their *alter ego* status continued. *Smith v. Salt River Project Agr. Imp.& Pwr. Dist.*, 109 F.3d 586, 589 (9th Cir. 1997). Against all this, the Association argues that SolarCity's "bald[]" *alter ego* allegations are "purely legal conclusion[s]." A-MTD 7. It can do so only by ignoring paragraph after paragraph of specific factual allegations in the Complaint.

The Association's other arguments fare no better. *First*, the Association says it lacks notice of the claims against it because the Complaint uses the "artifice[]" of referring to the District and Association together as "SRP." D-MTD 2. If any artifice exists, it comes from SRP: The Complaint's definition allegation quotes SRP's Annual Report, which expressly defines SRP as a single "Company" composed of the two legal entities. ¶ 19. And the District and Association regularly refer to themselves in the same, undifferentiated way. ¶ 20. No further delineation is possible because SRP has obscured any distinction between the entities, operating them jointly as a single company that shares management, executives, and nearly all boardmembers. *See* ¶¶ 20-22, 26-27.

*Second,* the Association argues that *alter ego* liability cannot apply in a case of a

---

[1] "The Association" means defendant Salt River Valley Water Users' Association. "The District" means defendant Salt River Project Agricultural Improvement and Power District. "SRP" means both the District and the Association. ¶¶ 19-20. "Complaint" means the Amended Complaint. Dkt. 39. Citations preceded by "¶"without other qualification refer to the Complaint. "SolarCity" refers to plaintiff SolarCity Corporation. "D-MTD" and "A-MTD" refer to the District and Association motions to dismiss, respectively. Dkts. 52, 53. "SO-MTD" refers to SolarCity's opposition to the District's motion to dismiss.

"political subdivision" or "public authority." But the District is nothing like the entities in the cases the Association cites for this proposition. Rather, as SolarCity has alleged and the courts have repeatedly found, the District is fundamentally a business enterprise, privately controlled and operated for the benefit of private interests. Even were these distinctions not crystal clear from the repeated determinations of the federal and state appellate courts, they are issues of fact that preclude determination that *alter ego* liability cannot apply as a matter of law at the pleading stage.

*Third*, the Association argues that it should enjoy any protection flowing from the District's nominal governmental status, either because one *alter ego* enjoys the immunities of another or because it was ordered to act on the District's behalf as an agent. A-MTD 2:20-21, n.4 & 15-16. The Association has no law on point, so it invents inapposite analogies even as it distances itself from the holdings of its cited cases.

Finally, the Association argues that it is entitled to a state action doctrine defense in its own right because Arizona has expressed a policy to displace electric competition and the District "actively supervises" the Association. Neither condition is satisfied. The District is a non-sovereign body and active market participant incapable of acting as an active supervisor under the state action doctrine. Even if it were, the Association is an entirely private body that does not qualify for protection. Nor does it qualify for protection under the Local Government Antitrust Act, the filed-rate doctrine, or the *Noerr-Pennington* doctrine.

The Court should deny the Association's motion to dismiss.

## BACKGROUND

The Association and District's long-intertwined history demonstrates their *alter ego* status. The Association began as the "Farmers Protective Association" in 1895. *Ball v. James*, 451 U.S. 355, 357-58 (1981). In 1903, the Association created "The Salt River Project" in order to take interest-free loans from the federal government. *Id.*; ¶ 27. The same year, the Association was organized as a private corporation under Arizona's corporate law. ¶ 27; *Citrus Growers' Dev. Ass'n v. Salt River Valley Water Users' Ass'n*,

34 Ariz. 105, 109 (1928). The Association was (and is) made up of landholders, who own water rights and vote in proportion to the acres of land they own. *Ball*, 451 U.S. at 358; *Orme v. Salt River Valley Water Users' Ass'n*, 25 Ariz. 324, 328-29 (1923); *see also* ¶¶ 27, 29, 32. By 1937, the Association wanted to issue interest-free bonds, so it formed the District as a type of tax-free agricultural improvement district under what is today A.R.S. § 48-2303. *Ball*, 451 U.S. at 358-59; ¶ 28. Such districts have "no political or governmental purposes or function" and are granted limited taxing and other authority to benefit landholders through water-related services. *Gorenc v. Salt River Project Agr. Imp. & Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1989) (addressing the District specifically); *Maricopa Cnty. Mun. Water Conservation Dist. No. 1 v. La Prade*, 45 Ariz. 61, 76 (1935) (addressing irrigation district organized under the same title as the District), *addressing title subsequently renumbered to title 48*, Ariz. Sess. Laws Ch. 190 § 18 (1985); ¶ 40.

Since the District's creation, its identity has been inseparable from the Association. In 1937, the Association transferred all its property to the District. *Ball*, 451 at 359; ¶ 28. The District began issuing bonds and turning over the proceeds to the Association, and in return the Association collected money from its shareholders to reimburse the District for the taxes it had to levy to meet the bonds. ¶ 28; *Reichenberger v. Salt River Project Agr. Imp. & Pwr. Dist.*, 50 Ariz. 144, 151 (1937). The District's taxing power "mirrors the Association's stock assessment scheme." *Ball*, 451 U.S. at 359-60. Only those landholders within the original 1903 Association boundaries have the right to vote—and their votes are counted proportional to their acreage. ¶ 32; *Ball*, 451 U.S. at 358; Ariz. Rev. Stat. §§ 48-2362(A) (council members must be qualified district electors); 48-2363(A) (members of the Board of Directors must be qualified district electors); 48-2309(A) (qualified district electors must be real property owners); 48-2383 (acreage voting system). In sum, the Association and District have identical boundaries and serve the same landholders. ¶¶ 22, 24, 27, 29, 32-33; *Reichenberger*, 50 Ariz. at 154-55.

Surveying this history, the Arizona Court of Appeal reasoned that the District had become "in fact the *alter ego* of the association," assuming both its liabilities and debts.

*Miller*, 11 Ariz. App. at 262.  The Ninth Circuit later observed: "Today, the Association and District operate as alter egos.  The District operates the Salt River Project's power function; the Association acts as the District's agent to operate the water delivery system." *Smith*, 109 F.3d at 589.  The Complaint expressly incorporates the Ninth Circuit's observation and alleges facts about the Defendants' relationship that remain apparent today.  ¶¶ 19-30, 32-34.[2]  For example, SRP's own Annual Report explains that "the Company" is composed of the Association and District.  ¶ 19.  The Annual Report and other SRP-created documents refer to the entities interchangeably as "SRP," without differentiation.  ¶ 20.  Any differentiation would be impossible because they are in fact a single entity.  ¶¶ 20-21, 27.

And there is more.  The District and Association issue combined financial statements.  ¶ 27.  The District transfers tens or hundreds of millions of dollars in profits to the Association every year.  ¶ 35.  The District and Association have identical management and executives.  ¶ 21.  Their governing bodies—a Board and a Council for each—have near-complete overlap.  ¶¶ 21, 26.  Board and Council members owe fiduciary duties to the Association's private shareholders, and they serve those same shareholders when they vote in District elections, with votes counted proportionately to Association shares.  ¶¶ 22, 25, 29.  In sum, the District and Association are governed and operate as a single business to irrigate "private lands for personal profit."  ¶ 35 (quoting *Local 266, Int'l Bd. of Elec. Workers v. Salt River Project Agr. Imp. & Pwr. Dist.*, 78 Ariz. 30, 44 (1954)).

## LEGAL STANDARD

The ordinary pleading standard applies to *alter ego* allegations.  *Barba v. Seung Heun Lee*, 2009 WL 8747368, at *4-5 (D. Ariz. Nov. 4, 2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim that is plausible

---

[2] The Association's assertion that "the [complaint] rests entirely on" *Smith* with regard to *alter ego*, A-MTD 11, is plain wrong.  As discussed below, the complaint rests on fact allegations, including but not limited those *Smith* previously recognized.  Whether *Smith* "analyzed" these factual issues in excruciating detail, or related to other legal issues, is irrelevant because the complaint alleges sufficient facts.

on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). All factual allegations should be accepted as true and construed in the light most favorable to the nonmoving party. *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008). Once facts nudging a claim into plausibility are alleged, *alter ego* is a "uniquely factual issue not resolvable as a pure matter of law." *Sheet Metal Workers Int'l Assoc., Local No. 359 v. Ariz. Mech. & Stainless, Inc.,* 863 F.2d 647, 652 n.5 (9th Cir. 1988).

The *alter ego* doctrine applies "when the individuality or separateness" of the two corporate entities has ceased. *Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 38 (1991); *Deutsche Credit Corp. v. Case Pwr. & Equip. Co.*, 179 Ariz. 155, 160 (App. 1994).[3] When that happens, courts "look beyond the legal fiction of distinct corporate existence" and make both equally liable, in the interests of justice. *Gatecliff*, 170 Ariz. at 38. The Association is wrong to suggest there can be no *alter ego* liability simply because one entity is "public" in any respect; the analysis applies and must be followed regardless of whether an entity purports to be a state actor. *See Miller*, 11 Ariz. App. at 262 (addressing the District); *DBT Yuma, L.L.C. v. Yuma County Airport Auth.*, 236 Ariz. 372, 374 (App. 2014) (analyzing whether airport authority was Yuma County's *alter ego*), *rev. granted on other grounds* (May 26, 2015).

A plaintiff alleging *alter ego* status must plead "(1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice." *Gatecliff*, 170 Ariz. at 37. Unity-of-control may be pleaded through a variety of factors, including (but not limited to):

---

[3] The Association expresses uncertainty about whether to apply state or federal *alter ego* doctrine. A-MTD n.3. Federal common law controls only when there is a need for uniform federal law. *See Wolfe v. U.S.*, 798 F.2d 1241, 1244 n.3 (9th Cir. 1986), *as amended*, 806 F.2d at 1411. When, as here, the fundamental issue is who can be ordered to pay a judgment, the Ninth Circuit uses state *alter ego* doctrine even for federal claims. *See S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) (federal securities); *Towe Antique Ford Found. v. I.R.S.*, 999 F.2d 1387, 1391 (9th Cir. 1993) (federal tax); *see also Wolfe*, 798 F.2d at 1244 n.3 (noting same for Lanham Act damages issues). However, the question is largely "academic" because federal law accords with Arizona law on the matter. *See Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1102, 1110-11 (9th Cir. 1979) (federal analysis); *TAC-Critical Sys., Inc. v. Integrated Facility Sys., Inc.*, 808 F. Supp. 2d 60, at *64 (D.D.C. Aug. 24, 2011) ("academic"); A-MTD n.3.

- "common officers or directors," *Gatecliff*, 170 Ariz. at 37;

- practices with regard to "payment of salaries and other expenses," *id.*;

- practices with regard to "maintaining of corporate financial records" and the "commingling" of funds," *Deutsche Credit Corp.*, 179 Ariz. at 160-61;

- "diversion of corporate property for shareholders' personal use," *id.*;

- "similarity of corporate logos" or factors leading to "lack of knowledge of separate corporate existence," *id.*;

- "intermixing of shareholders' actions with those" of the other entity, *id.*; and

- facts regarding the entity's "financing" and "stock ownership," *Gatecliff*, 170 Ariz. at 37.

The fraud or injustice requirement is satisfied when failing to attribute wrongdoing to a corporate defendant "will produce inequitable results." *Barba v. Seung Heun Lee*, 2009 WL 8747368, at *5 (D. Ariz. Nov. 4, 2009); *see also SMDI Co. v. Dynamic Details Inc.*, 2006 WL 2355387, at *1-2 (D. Ariz. Aug. 14, 2006).

## ARGUMENT

### I. The Complaint Alleges The Facts Necessary To Plead *Alter Ego* Liability

#### A. The Complaint Alleges Facts Showing Unity of Control and Injustice

SolarCity has pled facts demonstrating all the foregoing "unity of control" factors. The Association and District share officers, management, and nearly every boardmember. ¶¶ 21, 26. The District finances the money-losing Association (*i.e.*, pays the Association's "expenses") with millions of dollars per year. ¶ 35. Indeed, the Association created the District as a vehicle for the Association's assets and to move money—everything from tax-free bond revenues to electric profits—through the District to the Association. ¶¶ 27-28, 35. The District is not a "stock" corporation, but the Association's stockholders' voting interest in the Association and the District are the same, the District's taxing power is the same as the Association's assessment scheme, and the District's profits are distributed to the Association stockholders through free water for their commercial use and "private profit." ¶ 35. SRP's spokesperson admits that the District's "elected officials" represent

1   "shareholders." ¶ 25.  Indeed, most of those "elected officials" have a fiduciary duty to the

2   Association's shareholders.  ¶ 22.

3   SRP holds itself out as a single "Company" made up of the District and

4   Association. ¶¶ 19-20.  Even the Arizona Supreme Court has been hard-pressed to see the

5   distinction.  *Salt River Valley Water Users' Ass'n. v. Giglio*, 113 Ariz. 190, 193 (1976)

6   ("Both the Association and the District appear to hold themselves out as the 'Salt River

7   Project,' but it does not appear to be a separate entity.").  As for corporate logo, SolarCity

8   did not specifically plead the issue—but the Association's brief itself cites an SRP

9   webpage that contains the single logo on the single website of the single organization.  A-

10  MTD n.2 (citing http://www.srpnet.com/about/elected.aspx).

11  The Association argues that SolarCity did not specifically allege that failing to

12  disregard the entities' nominally separate status would result in injustice.  A-MTD 9.

13  Here, the injustice that would result from deferring to the nominal form is plain from the

14  facts alleged.  The District and Association share an identity and commercial purpose,

15  running a single integrated business enterprise.  ¶¶ 19-22, 25, 27-30.  The District sends at

16  least tens of millions of dollars in electricity profits to the Association each year, ¶ 35, but

17  then says it must recover a small fraction of that from solar users and falsely asserts that it

18  acts in its customers' interest as a public entity.  ¶ 26; D-MTD 2-3.  SRP's ultimate goal is

19  to protect itself from liability, even though its electric business is a private enterprise.  *E.g.*,

20  *Ball*, 451 U.S. at 370.  Even worse, SRP uses the District's supposed public status as a

21  sword and shield:  here it relies almost entirely on the assertion that the District is a

22  "political subdivision"; at other times it "argues that it is not a 'political subdivision.'"

23  *Smith*, 109 F.3d at 592.[4]  Allowing the Association to benefit from the self-serving

---

[4] Contrary to the Association's implication that *Smith* found that the District exercises "broad decision-making authority" as a supposed government entity, even the passage the Association quotes limits that authority to the <u>business</u> functions exercised by the District. A-MTD 11.  Moreover, the Ninth Circuit recognized that the District is a "limited-purpose public entity." *Smith*, 109 F.3d at 594.  Neither the Association nor the District suggests that *Smith* supports the District's unfounded attempt to invoke the state action doctrine or similar defenses.  Nor could they.  *Smith* simply held that for the purposes of the Voting Rights Act, which must be interpreted "in a manner that provides the broadest possible
(footnote continued on next page)

inconsistency would be manifestly unjust.

A complaint "need only assert facts that would show that observance of the corporate form would sanction a fraud or promote injustice." *SDMI*, 2006 WL 2355387, at *2. Far less detailed allegations than these suffice under the ordinary pleading standards that apply to *alter ego* allegations. *Barba*, 2009 WL 8747368, at *4-5.[5]

### B. The Complaint Provides The Association Notice

The Association says SolarCity alleged no facts suggesting that the Association itself participated in any misconduct, and that the Association lacks notice because the Complaint makes allegations against the District and the Association collectively by "artificially conflat[ing]" them as "SRP." A-MTD 5-6. The Association is wrong for three reasons.

*First*, the Association and District have done the conflating by choosing to define and operate themselves as one entity. The Complaint's definitional allegation quotes SRP's own Annual Report and references other SRP-created documents:

> "19. SRP's latest Annual Report describes 'the Company' as composed of the two Defendants, 'Salt River Project Agricultural Improvement and Power District (the District)' and 'Salt River Valley Water Users' Association (the Association).'
>
> 20. The Annual Report and numerous other SRP documents use "SRP" to refer to the District and the Association jointly, a convention followed in this Complaint. This nomenclature reflects business reality. The District and the Association in fact operate as a single business."

*Second*, proceeding from its false premise of "conflation," the Association quotes or cites various cases that reject claims that, unlike SolarCity's Complaint, fail to plead *any* facts explaining why multiple defendants are liable for the same conduct. Some of the Association's cases rejected allegations of nothing more than joint ownership or a parent-subsidiary relationship. *In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109, 1116-17

---

scope," the District is a "political subdivision" in the most generous possible sense, without regard to the limited scope of its authority. *Id.* at 593 (quoting *Allen v. State Bd. of Elections*, 393 U.S. 544 (1991) and *Chisom v. Roemer*, 501 U.S. 380, 403 (1991)).

[5] SolarCity also notes that the Association did not meet and confer in advance with SolarCity regarding issues it contemplated raising in its motion. *See* A-MTD 1-2 (discussing counsel's meet-and-confer on the original complaint against the District, before the Association was added as a party). Although SolarCity's pleading is more than adequate, SolarCity requests leave to amend should the Court conclude the contrary.

1  (N.D. Cal. 2008).  Many reject complaints regarding horizontal antitrust conspiracies
2  because the complaints did not explain who did what as part of the alleged conspiracy,
3  despite the fact that to plead a conspiracy one must allege an agreement, intent, and "the
4  role each defendant played."  *E.g.*, *id.*; *In re Capacitors Antitrust Litig.*, --- F. Supp. 3d ----,
5  2015 WL 3398199, at *7 (N.D. Cal. 2015).  By contrast, the point of *alter ego* liability is
6  that it is impossible (particularly in the absence of discovery) to differentiate the entities'
7  conduct when they operate as a single business and disregard any distinction between
8  them.  ¶¶ 20, 27.  At the same time, SolarCity's Complaint does allege the respective roles
9  of the District and the Association, including that the Association is the beneficiary of
10 massive profit transfers that give it an incentive to perpetuate monopolization of the retail
11 electricity market.  ¶¶ 28, 32-33, 35, 54.

12       The District also attempts to construct a special standard for "group pleading"—
13 when complaints "repeatedly refer[] to defendants collectively, without differentiation."
14 *Slack v. Int'l Union of Op. Eng'rs*, 2014 WL 4090383, at *16 (N.D. Cal. Aug. 19, 2014)
15 (quoting *In re Am. Apparel, Inc. S'holder Deriv. Litig.*, 2012 WL 9506072, at *41 (C.D.
16 Cal. July 31, 2012)).  But, as the case *Slack* quotes went on to say:  group pleading is
17 appropriate "so long as group pleading is limited to defendants who are similarly situated."
18 2012 WL 9506072, at *41.  As discussed above, SolarCity has pleaded the facts giving rise
19 to *alter ego* claims.  Nothing more is required.

20       *Third*, the District asserts disputed facts, saying the Association's operations "have
21 nothing to do with electricity."  A-MTD 6.  Of course, contesting the Complaint's factual
22 allegations is improper on a motion to dismiss.[6]

---

[6] The Association also cites irrelevant procedural statutes—A.R.S. § 30-803, which is part of a statutory scheme that the District's motion to dismiss concedes does not govern or authorize any conduct at issue, D-MTD nn.17 & 18; 19:3-13—and the procedural statute at A.R.S. § 48-2334.  A-MTD 6.  Neither statute changes the fact that the District's rate decisions are, and are alleged to be, private actions—simply transactions "between consumers and a business enterprise from which they buy."  *Ball*, 451 U.S. at 370; *see also Gorenc*, 869 F.2d at 506-07; *see also* ¶¶ 31, 35-39.

### C. The District's Purported Status As A "Political Subdivision" Has No Bearing On *Alter Ego* Liability

The Association asserts that no court has applied the *alter ego* doctrine to municipalities, suggesting that this Court should categorically refuse to apply *alter ego* liability by virtue of the District's purported public status. A-MTD 8-9. This is simply wrong. Indeed, the very first case the Association cites on the point explains that "there is no authority which explicitly precludes an application of the corporate veil theory in [the municipality] setting," and goes on to assess the specific "set of facts" presented there in light of the doctrine's purposes. *Foster Wheeler Energy Corp. v. Metro. Knox Solid Waste Auth., Inc.*, 970 F.2d 199, 202-03 (6th Cir. 1992), *as clarified on denial of reh'g* (Sept. 2, 1992). Similarly, the Arizona Court of Appeals recently applied the traditional *alter ego* factors to assess, as a *factual* matter, allegations that Yuma County and an airport authority were *alter egos*. *DBT Yuma, L.L.C.*, 236 Ariz. at 374. Though the court there concluded that those entities were not *alter egos* because they lacked key indicia such as shared officers and directors, shared financing between entities, and absence of overlapping operating expenses, SolarCity alleges precisely contrary facts here. ¶¶ 21-23, 28. The *DBT Yuma* approach is what *alter ego* requires; it is an equitable doctrine, and equity is not bound by the "absence of precedents." *Sanders v. Folsom*, 104 Ariz. 283, 289, (1969). Given these allegations and principles, the Association's misguided (and factual) protestation that the District is a public entity provides no basis for dismissal.

The Association also says that *Foster Wheeler* and other cases turn on the fact "that, unlike a private corporation, public authorities have no equity owners to hold liable in the event the corporate veil is pierced." A-MTD 8:22-24. This falsely equates *alter ego* liability with shareholders' personal liability. *Alter ego* liability under Arizona and federal law is not limited to shareholder liability. Instead, it embraces multiple theories of *alter ego* liability, including those that make one corporate entity liable for the acts of non-shareholder corporate entities, as here. *Gatecliff*, 170 Ariz. at 728, 730 (distinguishing between the *alter ego* identity inquiry and the instrumentality inquiry); *Deutsche Credit*,

179 Ariz. at 160-61; 1 Fletcher Cyclopedia Corp. § 43 (West 2015) (discussing the identity and instrumentality theories). The District's cases apply the law of states that reject such inter-corporate liability or simply misapprehend the doctrine—and address very different facts.[7] Here, SolarCity does not seek to impose liability on shareholders behind the Association (or the District), but only to hold the Association liable as the District's corporate *alter ego*, which Arizona law permits.

Finally, even if public entities performing sovereign functions—such as the defendants in all the cases that the Association cites for this point—were not subject to *alter ego* liability, that would offer no help to the District and the Association, which are commercial entities serving the same commercial purposes, as a factual matter. *E.g.*, ¶¶ 19-36; *Ball*, 451 U.S. at 368 (electricity not a traditional sovereign function); *Local 266*, 78 Ariz. at 43-44 (concerning the District, "Most municipal corporations are owned by the public and managed by public officials . . . . Such is not the case here."); *Niedner*, 121 Ariz. at 332 ("Unlike other municipal corporations owned by the public and managed by public officials, the District is owned and managed by private landowners and, although the District supplies services to the public such as electrical power, the profits of its operations are used to defray the expenses of irrigation of private lands of the District's landowners."); *see also Gorenc*, 869 at F.3d 507.[8] The District is nothing like the

---

[7] The Association cites a New Jersey case, but New Jersey has an unusually restrictive view of *alter ego* that is not the law in Arizona. *Katz v. Holzberg*, 2013 WL 5523488, at *4 (D.N.J. Oct. 2, 2013); *compare* 1 Fletcher Cyclopedia § 43 & n.33 (citing *Verni ex rel. Burstein v. Harry M. Stevens, Inc.*, 903 A.2d 475 (App. Div. 2006)), *with Gatecliff*, 170 Ariz. at 728, 730; *Deutsche Credit*, 179 Ariz. at 160-61. As for the Association's other cases, both focused on "equity ownership," but that would reduce Arizona's multifactor test to a single factor that would prevent liability based the form of interest one holds in the other. *McDaniel v. Bd. of Education of Chicago*, 956 F.Supp.2d 887, 989 (N.D. Ill. 2013) and *Newcrete Products v. City of Wilkes-Barr*, 37 A.3d 7, 13-14 (Pa. Cmwlth. 2012). This is completely at odds with the doctrine's purpose and applications outside the parent-subsidiary context. 1 Fletcher Cyclopedia § 43. At any rate, in all these cases, the plaintiff was trying to reach a municipality with general government authority; the plaintiff was not using *alter ego* doctrine to reach a private entity running a business.

[8] The Association's reference to *Wright v. Salt River Val. Water Users' Ass'n*, 94 Ariz. 318, 323-24 (1963), is puzzling. A-MTD 11-12. There, a specific statute governed suits by "irrigation workers." The plaintiff was an irrigation worker. The statute turned on the worker's identity, not the defendant's identity, so the *alter ego* argument could not change (footnote continued on next page)

1  municipal entities at issue in the cases on which the Association relies. There is no basis,
2  either in law or in fact, for refusing to apply *alter ego* liability to the Association based on
3  the manner in which the District now chooses to portray itself, contrary to what it has
4  argued before. *Smith*, 109 F.3d at 592 (District argued that it is not a political subdivision).

*     *     *

The Association provides no legal basis for dismissal. As the Ninth Circuit has explained, *alter ego* is a "uniquely factual issue not resolvable as a pure matter of law." *Sheet Metal,* 863 F.2d at 652 n.5. SolarCity pleads the necessary *alter ego* facts and gives the Association clear notice of the allegations relating to it, particularly in light of the extent to which the District and Association themselves have deliberately conflated their activities over a period of decades; and there is neither legal nor factual basis for dismissal on the ground that the District says, as a matter of fact, that it is a public entity.

## II.  No Doctrine Of Regulatory Or Political Deference Protects The District

The Association argues that defenses arising from the District's supposed governmental status apply to the Association. A-MTD 12. Even were the District's defenses not meritless, the Association could not use them.

### A.  The Association's "Contractual Agent" Theory Cannot Prevent Liability

The Association offers only one explanation for its financial and operational relationship to the District: it is merely an agent for the District under a 1949 contract. A-MTD 2:19-21, 4:14-23.

The Arizona Supreme Court has already explained that the Association cannot use government "immunity" on the theory that it is a government agent. In *Salt River Valley Water Users' Association v. Giglio*, the Association "contend[ed] that the [Salt River]

---

the result—and the court expressly declined to reach the *alter ego* argument. *Id.* at 323. *Wright* also pointed out that the Association and District's joint operations concern "electrical energy which is sold at a substantial profit by the District." *Id.* at 323. The irrigation worker's "functions and activities were solely concerned" with irrigation work handled by the [District]." *Id.* at 324. By contrast, this case directly implicates the Association and District's joint operation and their shared interest in electric profits.

Project is owned by the United States and the Association is merely an agent of the United States in the operation of the Project and that as an agent of the United States government, it is immune from suit for its acts." 113 Ariz. 190, 195 (1976). The Arizona Supreme Court rejected the Association's argument and continued:

> "Even assuming, however, that the Association is an agent of the United States, we would still disagree as to the immunity of the Association from suit. Section 347 Restatement of the Law Second, Agency 2d (1958) states:
> 'Immunities and Standard of Care of Principal
> '(1) An agent does not have the immunities of his principal although acting at the direction of the principal.'" *Id.*

Nor does the result change if the District were the Association's agent: the Association would still be liable, either for directly violating the law or as the principal.

### B. The Association Cannot Assert The District's State-Actor-Related Defenses As the District's *Alter Ego*

The Association also argues that, assuming the District and Association are *alter egos*, the Association automatically qualifies for every defense available to the District. The Association admits it has no authority for the point. Instead, it analogizes to various other contexts, while at the same time distancing itself from the holdings of the cases it cites. A-MTD 12-13 & n.7.

The District's categorical approach is entirely at odds with *alter ego*'s nature. *United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774, 777 (9th Cir. 1977) ("Issues of *alter ego* do not lend themselves to strict rules [the determination depends on] innumerable individual equities of each case.") (applying California law). To the extent that any of the Association's cases transferred a defense or immunity from one entity to another based on *alter ego* analysis, they did so by evaluating the facts and equities at issue. For example, one cited case extended sovereign immunity to a corporation after determining that the corporation was exercising state sovereign functions and was controlled by the state government, and that a judgment against it would be borne by the state's general taxpayers. *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5. F.3d 378, 379-382 (9th Cir. 1993). Not so here. As the Complaint alleges, both the District and the

Association serve private rather than state interests, and neither can bind taxpayers at large to any judgment against them. ¶¶ 22, 24-26, 29, 31-35, 40-41.  The closest the District's cases come to a bright-line rule is *Gravel v. United States*, 408 U.S. 606, 617 (1972).  There, the Supreme Court extended legislators' constitutional speech-and-debate privilege to legislators' aides. *Id.*  Before doing so, it considered *facts* about the "modern legislative process" and the likely practical effects of extending the privilege. *Id.* at 616-17.[9]  It is neither logical nor possible to simply transfer such factual considerations regarding that privilege over to the state action doctrine that is at issue here.

None of the rationales underlying the decisions the Association cites suggest that those decisions should be applied to either the Association or the defenses at issue in this case.  For example, the state-action doctrine has the context-dependent "active supervision" requirement for private actors and actors controlled by private interests.  *N.C. State Board of Dental Examiners v. F.T.C.*, 135 S. Ct. 1101, 1116-17 (2015).  And the LGAA considers whether taxpayers at large would be liable or whether liability would be borne privately.  *Tarabishi v. McAlester Reg'l Hosp.*, 951 F.2d 1558, 1566 (10th Cir. 1991); *United Nat'l. Maint., Inc. v. San Diego Conv'tn Ctr. Corp.*, 2010 WL 3034024, at *4 (S.D. Cal. Aug. 3, 2010).

In sum, nothing about the Association, its relationship to the District, or the doctrines from which the Association seeks shelter, suggest that their *alter ego* status could or would automatically transfer the District's state actor-related defenses to the private Association.  To the contrary, that result would *defeat* the strict limits the Supreme Court has placed on defenses under the "disfavored" state action doctrine, filed rate doctrine, and other regimes on which the District and the Association rely, because it would extend a

---

[9] Another of the Association's cases, *Santiago-Hodge v. Parke Davis & Co.*, considered whether *alter ego*-like reasoning was appropriate for purposes of interpreting a Puerto Rico statute and certified a question to the Puerto Rico Supreme Court.  859 F.2d 1026, 1032 (1st Cir. 1988).  And *Transfield ER Cape Ltd. v. Industrial Carriers, Inc.* merely noted that a registration for one corporate *alter ego* would protect another corporate *alter ego* from maritime attachment—*i.e.*, that conduct by one would bind the other.  571 F.3d 221, 223-24 (2d Cir. 2009).

blanket defense as a matter of law to an entity that does not meet the specific requirements of the doctrines.

### C.     The Association Cannot Assert State-Actor-Related Defenses Itself

The Association next argues it could take advantage of the state-doctrine, the Local Government Antitrust Act of 1984 ("LGAA"), the filed-rate doctrine, and *Noerr-Pennington*. It then largely incorporates or references the District's motion. A-MTD 14-16. To the extent these arguments overlap with the District's motion, they are addressed in SolarCity's opposition to the District's motion. SO-MTD §§ I-II.

For the state-action doctrine, the Association calls the District Board a "regulatory body" and a "municipality" that does not "passively accept" what management wants and that "actively supervises" the Association. A-MTD 14-15. But the Board is neither a regulator nor a municipality in any relevant sense. *Compare N.C. State Board*, 135 S. Ct. at 1110, 1112-13 (explaining that Supreme Court had allowed a municipality to use the "disfavored" state-action doctrine in a prior case because that municipality "exercised a wide range of governmental powers, across different economic spheres, substantially reducing the risk that it would pursue private interests while regulating any single field"), *with Niedner*, 121 Ariz. at 332 ("Unlike other municipal corporations owned by the public and managed by public officials, the District is owned and managed by private landowners . . . ."). Moreover, the Complaint specifically alleges that the District *does* passively accept what management wants, and the Association cannot contest that allegation on a motion to dismiss. *E.g.*, ¶ 103 (quoting District boardmember discussing the rate changes at issue: "I don't want management [ . . . ] to think I'm second guessing them in anything they do."). The issue is factual.

But more fundamentally, the Association overlooks that the District is *incapable* of itself serving as an active supervisor. As the Supreme Court held in *N.C. State Board*:

> "[T]he question is whether the State's review mechanisms provide realistic assurance that a <u>nonsovereign actor's</u> anticompetitive conduct promotes state policy, rather than merely the party's individual interests.
>
> [ . . . ] Further, <u>the state supervisor may not itself be an active market participant.</u> In general, however, the adequacy of supervision otherwise will <u>depend on all the</u>

circumstances of a case." 135 S. Ct. at 1116-17 (emphases added; internal quotations and citations omitted).

The District is not a sovereign actor and its electric operations are not traditional sovereign functions. *Ball*, 451 U.S. at 368-69. It is an entity that must be supervised, not an entity that supervises another. Moreover, whether the District somehow oversees the Association in the manner required by the Supreme Court "is a factual [question] inappropriately resolved in the context of a motion to dismiss." *Cost Mgmt. Svcs., Inc. v. Wash. Nat. Gas Co.*, 99 F.3d 937, 943 (9th Cir. 1996).

For the LGAA, the Association construes the Complaint as alleging that the District ordered the Association to violate the antitrust laws. A-MTD 15-16. There is no such allegation.[10] The only other possible application of the LGAA would be if the private Association were itself a "special function governmental unit." 15 U.S.C. §§ 34(1)(B), 35(a). The Association cannot meet the test (and does not attempt to argue that it can) because it is not a governmental entity with any taxing power. *Tarabishi*, 951 F.2d at 1566; *United Nat'l*, 2010 WL 3034024, at *4.

The Association adds no substance to the District's *Noerr-Pennington* and filed-rate doctrine arguments. A-MTD 16 (referencing D-MTD 16-18). Its contentions are meritless for the reasons set forth at SO-MTD I.B-C.

## CONCLUSION

For the foregoing reasons, SolarCity respectfully requests that the Court deny the Association's Motion to Dismiss.

Dated: July 24, 2015　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　BOIES, SCHILLER & FLEXNER LLP

　　　　　　　　　　　　　　　　　　　By:  s/Steven C. Holtzman
　　　　　　　　　　　　　　　　　　　　　　Steven Holtzman

　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff SolarCity Corporation*

---

[10] Even if there were, the LGAA would not apply because the District is not a local government. SO-MTD § II.A.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

WILMER CUTLER PICKERING HALE & DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
Eric J. Mahr (admitted pro hac vice)
Christopher E Babbitt (admitted pro hac vice)
350 South Grand Ave.
Los Angeles, CA 90071
Christopher T. Casamassina (*admitted pro hac vice*)

STEPTOE & JOHNSON LLP
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
Paul K. Charlton (012449)
Karl M. Tilleman (013435)
Quintin Cushner (027303)
Jason M. Porter (027475)

                                                s/Steven C. Holtzman
                                                Steven C. Holtzman