WILMER CUTLER PICKERING
  HALE AND DORR LLP
Eric Mahr (*admitted pro hac vice*)
Christopher E. Babbitt (*admitted pro hac vice*)
Christopher T. Casamassima (*admitted pro hac vice*)
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
eric.mahr@wilmerhale.com
christopher.babbitt@wilmerhale.com
chris.casamassima@wilmerhale.com

STEPTOE & JOHNSON LLP
Paul K. Charlton (012449)
Karl M. Tilleman (013435)
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
Telephone: (602) 257-5200
Facsimile: (602) 257-5299
pcharlton@steptoe.com
ktilleman@steptoe.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| SolarCity Corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>Salt River Project Agricultural Improvement and Power District; Salt River Valley Water Users' Association,<br><br>    Defendants. | Case No. 2:15-CV-00374-DLR<br><br>**DEFENDANT SALT RIVER VALLEY WATER USERS' ASSOCIATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>**Oral Argument Requested** |

1    Because SolarCity cannot state a claim directly against the Salt River Valley
2 Water Users' Association (the "Association"), it asks this Court to hold that a private
3 corporation like the Association can be the "alter ego" of a public entity—here, the Salt
4 River Project Agricultural Improvement and Power District (the "District").[1]  Every court
5 that has considered whether the alter ego theory applies in the public entity context,
6 however, has held that it does not.  *See* Association's Motion to Dismiss ("A-MTD") 8.
7 The Court should decline SolarCity's invitation to depart from that settled line of
8 authority.
9    And, even if the Court were to conclude that a private corporation could somehow
10 be the alter ego of a public entity, SolarCity has failed to allege facts sufficient to
11 establish such a relationship between the Association and the District under federal or
12 Arizona law.  In particular, SolarCity has not pleaded, and cannot plead, that failure to
13 hold the Association liable for the acts of the District would perpetuate a fraud or would
14 result in injustice, an essential element of alter ego liability.
15    In any event, SolarCity cannot have it both ways, asking the Court to transfer the
16 District's alleged liabilities to the Association, without also transferring the District's
17 immunities.  Because SolarCity's alter ego claims against the Association are entirely
18 derivative of the underlying claims against the District, if the Court were to conclude that
19 the Association is the alter ego of the District, the Association would be entitled to the
20 same defenses as the District, including the District's immunity defenses.

---

[1] SolarCity's Opposition ("A-OPP.") offers no response to the Association's argument that SolarCity fails to allege facts sufficient to establish a cause of action directly against the Association under the *Twombly/Iqbal* pleading standards (A-MTD 4- 9), and makes clear that its claims against the Association are based entirely on an alter ego theory of liability, not on any independent conduct by the Association.  *See* A-OPP. 9 ("SolarCity has pleaded the facts giving rise to *alter ego* claims.  Nothing more is required.").

1

# ARGUMENT

## I. A PRIVATE CORPORATION CANNOT BE THE ALTER EGO OF A PUBLIC ENTITY

As federal courts have recently recognized, no court has ever held that alter ego liability applies in the context of public entities. *McDaniel v. Bd. of Educ.of Chicago*, 956 F. Supp. 2d 887, 896 (N.D. Ill. 2013) ("Plaintiffs have provided no legal authority to support their veil-piercing theory in the context of municipal entities like those at issue here, and the Court finds none."); *Katz v. Holzberg*, No. 13-1726 (FSH), 2013 WL 5523488, at *4 (D.N.J. Oct. 2, 2013) ("Katz does not provide a single case, from New Jersey or otherwise, supporting the application of corporate veil-piercing theory or parent-subsidiary law to the public authority context."). SolarCity states that the Association is "simply wrong" for asserting that "no court has applied the *alter ego* doctrine to municipalities," A-OPP. 10, but then fails to cite a single case holding that a municipality—or any public entity for that matter—is the alter ego of another entity.[2] This is not surprising, as the rationale underlying alter ego liability simply does not make sense if applied to public entities.

Under Arizona law, "alter-ego status is said to exist when there is such unity of interest and *ownership* that the separate personalities of the corporation and owners cease to exist." *Deutsche Credit Corp. v. Case Power & Equip. Co.*, 876 P.2d 1190, 1195

---

[2] SolarCity's reliance on *DBT Yuma, L.L.C. v. Yuma County Airport Authority*, 340 P.3d 1080 (Ariz. Ct. App. 2014), is misplaced. First, the Arizona Court of Appeals, in *DBT Yuma*, held that the alter ego liability factors had *not* been satisfied as to the public entity in that case. Second, the Court of Appeals did not address the question presented here of whether the alter ego doctrine applies to public entities, as the issue was not presented. Instead, the parties in that case stipulated to certain facts relevant under a traditional alter ego analysis and the court ruled on that basis, rejecting plaintiff's alter ego theory in short order. *See DBT Yuma*, 340 P.3d at 1083. In addition, the Arizona Supreme Court has granted DBT Yuma's Petition for Review, *see* Order Granting Petition Review, *DBT Yuma, L.L.C. v. Yuma County Airport Authority*, No. CV-15-0019-PR (Ariz. May 27, 2015), and DBT Yuma appears to have abandoned its alter ego theory, to the extent it ever asserted one, *see* Petition for Review, at 8, *DBT Yuma, L.L.C. v. Yuma County Airport Authority*, Arizona Supreme Court, No. CV-15-0019-PR (Ariz. Jan. 14, 2015) ("There are no issues about alter-ego nor are tort concepts—vicarious liability and respondeat superior—at issue. The issue is whether Yuma County is responsible for the actions of its agent, the Yuma County Airport Authority.").

2

(Ariz. Ct. App. 1994) (emphasis added); *Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1972) (same). Because the District is a political subdivision of the State of Arizona, A.R.S. § 48-2302, neither the Association nor any person is capable of having an ownership interest in the District. No "unity of ownership" could possibly exist, and therefore the alter ego theory cannot apply to the District as a matter of law. *Foster Wheeler Energy Corp. v. Metro. Knox Solid Waste Auth., Inc.*, 970 F.2d 199, 202-203 (6th Cir. 1992); *McDaniel*, 956 F. Supp. 2d at 897-98; *Katz*, 2013 WL 5523488, at *5; *Newcrete Prods. v. City of Wilkes-Barre*, 37 A.3d 7, 14 (Pa. Commw. Ct. 2012).

Neither of the cases cited by SolarCity—*Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725 (Ariz. 1991), and *Deutsche Credit*—provide the Court with any basis to expand alter ego liability to situations in which there is no common ownership among alleged alter egos. *See* A-OPP. 10-11. *Gatecliff* concerned alter ego liability in the parent-subsidiary context, 821 P.2d at 728 ("[The] alter ego theory . . . allows a parent corporation to be held liable for the acts of its subsidiary."), which is the traditional context for application of the doctrine, *see Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003). Nothing in *Gatecliff* suggests that alter ego liability applies to public entities. Similarly, *Deutsche Credit* holds that in order to find alter ego liability (again in the corporate context), there must be "such a unity of interest and *ownership* that the separate personalities of the corporations and the owners cease[] to exist." 876 P.2d at 1195 (emphasis added).[3] Indeed, the court in *Deutsche Credit* concluded that common officers and owners alone are insufficient to sustain a finding of alter ego liability. *Id.* at 1196. In short, these cases do not in any way conflict with or undermine the reasoning of the cases holding that alter ego liability does not apply in the context of public entities—they do not even mention the issue in passing. *See* A-MTD 8.

---

[3] Contrary to SolarCity's suggestion that Arizona applies a less rigorous standard for alter ego liability, A-OPP. 10-11 & n.7, this court has recognized that Arizona applies "a strict standard for establishing alter-ego status." *Patterson v. Home Depot, USA, Inc.*, 684 F. Supp. 2d 1170, 1180 (D. Ariz. 2010).

3

1    The District is a political subdivision of the State of Arizona.  A.R.S. § 48-2302.
2 "[T]hat the District is a limited-purpose public entity makes it no less public." *Smith v.*
3 *Salt River Project Agric. Improvement and Power Dist.*, 109 F.3d 586, 593 (9th Cir.
4 1997).  The Arizona Legislature specifically authorized the District to use revenues
5 generated from the sale of electricity to support water operations.  A.R.S. §§ 48-
6 2303(A)(7), 48-2337(A)(4).  Rather than diminishing the District's public character, as
7 SolarCity would have the Court believe, *see* A-OPP. 1-3, 7, 11-12, the District's support
8 of the Association's water operations is part and parcel of the District's public purpose.
9 *See Ball v. James*, 451 U.S. 355, 368-69 (1981) (stating that water functions are one of
10 the District's primary purposes under Arizona law); *Ramada Inns, Inc.* v. *Salt River*
11 *Valley Water Users' Ass'n*, 523 P.2d 496, 499 (Ariz. 1974) (the District's irrigation
12 system is "indispensable for the maintenance of life and prosperity").  Indeed, the very
13 purpose of the federal reclamation project that gave rise to the District was reclaiming the
14 arid lands in the Salt River Valley.  *Uhlmann v. Wren*, 401 P.2d 113, 117-18 (Ariz. 1965)
15 (purpose of the federal reclamation fund is the "development of waters for the
16 reclamation of arid and semiarid lands in" Arizona and other states).
17    The Arizona Legislature has expressly authorized the organization of agricultural
18 improvement districts—like the District here—to, among other things, "reduce the cost of
19 irrigation, drainage and power to the owners of the lands in the district by the sale of
20 surplus water or power produced, owned or controlled by the district … ."  A.R.S. § 48-
21 2303(A)(7).  The policy judgments of the federal government and the State of Arizona do
22 not provide a basis for SolarCity to contort the common law doctrine of alter ego liability
23 to support an antitrust claim against the Association, an entity not alleged to have taken a
24 single action in relation to the challenged conduct.[4]

---

[4] Despite being in quotes in SolarCity's Opposition, *Gorenc v. Salt River Pojrect Agric. Improvement & Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1989), does not state that agricultural improvement districts have "no political or governmental purposes or function."  *See* A-OPP. 3.  The purported quote does not appear in the opinion, nor is the proposition supported by the case.

4

1
2
## II. SOLARCITY HAS FAILED TO PLEAD FACTS SUFFICIENT TO ESTABLISH THAT THE ASSOCIATION IS THE ALTER EGO OF THE DISTRICT UNDER FEDERAL OR ARIZONA LAW

Even if the Court were to expand the scope of the alter ego doctrine to public entities, SolarCity has failed to plead sufficient facts to establish that the Association is the alter ego of the District. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under both federal and Arizona law "corporate status will not be lightly disregarded." *Patterson v. Home Depot, USA Inc.*, 684 F. Supp. 2d 1170, 1178 (D. Ariz. 2010). The "general rule [is that] a corporation will be treated as a [separate] legal entity until sufficient reason appears to disregard the corporate form," *Dietel*, 492 P.2d at 457; *see Dole Food*, 538 U.S. at 475 (federal law). To overcome the presumption of respect for the separate legal status of corporate entities, a plaintiff must plead facts that establish "(1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice." *Gatecliff*, 821 P.2d at 728 (citing *Dietel*, 492 P.2d at 457); *see Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (federal law). SolarCity has failed to plead facts sufficient to establish either element.[5]

### A. The FAC Fails To Adequately Plead A Unity Of Control Between The District And The Association

To satisfy the "unity of control" element, a plaintiff must show that "there is such unity of interest and ownership that the separate personalities of the corporation and

---

[5] As discussed in the Association's Motion to Dismiss, the cases cited by SolarCity addressing the history of and relationship between the District and the Association (*i.e. Smith* and *Miller*) do not support the argument that the Association is the alter ego of the District as a legal matter. A-MTD 11-12 & n.6. Indeed, the Arizona Supreme Court has been careful to note that that the District may be "in substance, *though not in law*, the [a]lter ego of the [A]ssociation." *E.g.*, *Reichenberger v. Salt River Project Agric. Improvement and Power Dist.*, 70 P.2d 452, 455 (Ariz. 1937) (emphasis added). In addition, contrary to SolarCity's implication, the Court of Appeals in *Miller v. Salt River Valley Water Users' Ass'n*, 463 P.2d 840 (Ariz. Ct. App. 1970) did not rely on the alter ego liability doctrine to conclude that the District assumed the Association's "liabilities and debts." *See* A-OPP. 3-4. Instead, the court interpreted the scope of a 1949 agreement pursuant to which the District explicitly assumed the Association's debts and liabilities. *See Miller*, 463 P.2d at 845-46. No finding of alter ego liability was necessary. Moreover, none of the cases cited by SolarCity even mention, much less consider, the fraud or injustice requirement for derivative alter ego liability.

5

owners cease to exist." *Deutsche Credit*, 876 P.2d at 1195.[6] As SolarCity suggests, several factors may be relevant to this inquiry. *See id.* at 1195-96; A-OPP. 6. Under Arizona law, however, not all factors are treated equally. *See Mid Am. Title Co. v. Transnation Title Ins. Co.*, 332 F.3d 494, 496-97 (7th Cir. 2003) (discussing factors that "Arizona courts typically rely on in piercing the corporate veils").

One factor of critical importance is whether the conduct of the alleged alter egos caused the plaintiff to be confused about which entity caused it harm. *See id.*; *Gatecliff*, 821 P.2d at 729; *Chapman v. Field*, 602 P.2d 481, 484 (Ariz. 1979); *Farrarell v. Robinson*, 465 P.2d 610, 613 (Ariz. Ct. App. 1970).[7] Here, there is no hint of confusion, and SolarCity makes no argument to the contrary. SolarCity initially filed its Complaint solely against the District, *see* Dkt. # 1, and the FAC makes clear that it was the District that caused the alleged harm. *See* FAC ¶¶ 97, 145, 154, 161, 170, 178, 187, 194, 204, 212 (identifying the District's Board as the entity adopting the SEPPs and describing the SEPPs as anticompetitive and tortious conduct). And SolarCity's allegation that "SRP's latest Annual Report describes 'the Company' as comprised of the two Defendants," *see* FAC ¶ 19, indicates, if anything, that the Annual Report informed readers that it covered two separate entities.

Another important factor is whether the entities maintained corporate formalities. *See Mid Am. Title*, 332 F.3d at 497. Here, the FAC specifically alleges that the Association has a separate Board and Council, ¶ 21,[8] and "that [it] files reports with the

---

[6] As discussed above, the fact that no one has "ownership" of the District and therefore there can be no common ownership between the Association and the District completely forecloses SolarCity's alter ego theory. The Association nevertheless addresses the other factors relevant to the analysis in the event the Court were to hold that alter ego liability can exist even in the absence of any common ownership.

[7] Courts also analyze this factor under the "injustice" prong of the alter ego inquiry. *See Taeger v. Catholic Family & Cmty. Servs.*, 995 P.2d 721, 735 (Ariz. Ct. App. 1999) (injustice prong met where "observing the form would allow the corporation to confuse plaintiff, frustrate their efforts to protect their rights, and allow the responsible part to evade liability"); *infra*, at pp. 7-9.

[8] As explained in the Association's Motion to Dismiss, overlaps in management and board membership do not give rise to alter ego liability. *See* A-MTD 10; *Horizon Res. Bethany Ltd. v. Cutco Indus., Inc.*, 881 P.2d 1177, 1180 (Ariz. Ct. App. 1994).

6

state," ¶ 26.  Moreover, contrary to SolarCity's assertions, A-OPP. 1, the FAC contains no allegations that the District and the Association commingle funds.  While the FAC alleges that the Association and District issue "combined financial statements," ¶ 27, that is fundamentally different than commingling funds, and "the control standard for filing a combined financial statement [is] not the equivalent of the control standard for determining whether one corporation is an alter ego of another."  *Taeger v. Catholic Family & Cmty. Servs.*, 995 P.2d 721, 734 (Ariz. Ct. App. 1999).

In sum, although the District and Association are related entities that share a common history, that is true of many organizations in the traditional corporate setting, where the law respects the corporate form.  *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  For the reasons set forth in the Association's Motion to Dismiss and this Reply, SolarCity has failed to plead sufficient factual matter to establish that "there is such unity of interest and ownership that the separate corporate personalities of the [District and the Association] cease to exist."  *Dietel*, 492 P.2d at 457.

**B.     The FAC Fails To Allege Any Facts Indicating That Failing To Hold The Association Liable Would Perpetuate A Fraud Or Result In Injustice**

SolarCity has failed to allege any facts regarding the second required element of alter ego liability:  "that observance of the corporate form would sanction a fraud or promote injustice."  *Gatecliff*, 821 P.2d at 728 (citing *Dietel*, 492 P.2d at 457); A-OPP. 7. This failure provides another, independent ground for dismissal.  *See* A-MTD 9.

SolarCity argues that "injustice is plain from the facts alleged."  A-OPP. 7. Specifically, SolarCity argues that "SRP's ultimate goal is to protect itself from liability." *Id.*  It is unclear what, precisely, SolarCity means by this broad statement, but courts have recognized that limiting liability to the corporate entity alleged to have committed the wrongdoing is "a legitimate purpose of incorporation," *Dietel*, 492 P.2d at 457, and does not constitute an injustice.  Moreover, where "a corporation is operated and maintained for the purpose for which it was incorporated and [n]ot as a mere shield of the

7

stockholder, the corporate form should [n]ot be disregarded." *Id.* Although SolarCity may disagree with the Arizona Legislature's judgment to permit the District to support water operations with sales of electricity, such support does not constitute the kind of injustice required under the alter ego doctrine.

SolarCity also argues that "allowing the Association to benefit" from allegedly inconsistent advocacy "would be manifestly unjust." A-OPP. 7-8. But there has been no inconsistent advocacy. The District has always maintained that it is a political subdivision of the State under Arizona law. Indeed, in *Smith*, the parties stipulated that the District was vested with the rights granted to political subdivisions pursuant to A.R.S. § 48-2302. *Smith*, 109 F.3d at 593. Moreover, any benefits from allegedly inconsistent advocacy is not the type of "injustice" the alter ego theory of liability was designed to prevent. The alter ego theory was designed to prevent abuse of the corporate form, and is employed where the corporate form is a legal fiction used "as a mere shield of the stockholder." *Dietel*, 492 P.2d at 457. That purpose has no application here and the alter ego theory of liability has no relevance to this case.

Even if SolarCity had stated a viable claim against the District, SolarCity has not alleged that failure to disregard the District's status as separate entity from the Association would prevent SolarCity from obtaining the relief it seeks—nor could it do so. *See Taeger*, 995 P.2d at 735; *cf. Gatecliff*, 821 P.2d at 729 ("Observance of the corporate form in this case could deny plaintiffs recovery from the party responsible for canceling their insurance policy."). SolarCity makes no allegation that the Association is in any better position to pay damages than the District—its decision to name the Association is simply an attempt to evade the District's statutory immunity from damages. *See* A-MTD 1.[9] In fact, the FAC alleges, and SolarCity argues, that the Association is a "money-losing " enterprise, FAC ¶ 35b; A-OPP. 6, while the District's

---

[9] The Association was added only after counsel for the District explained in the meet-and-confer process that SolarCity's claims against the District were barred under several well-established immunities and doctrines.

8

1 electricity operations generate "$100 million in profit, " FAC ¶ 35b.  SolarCity's request
2 for injunctive relief is even less applicable to the Association, as SolarCity does not
3 identify anything the Court could require of the Association—or prohibit it from doing—
4 that would in any way address the District's pricing plans (the SEPPs) that are the
5 exclusive focus of SolarCity's claims.

        **C.**     **Any Further Amendment To SolarCity's FAC Would Be Futile**

Because the facts already alleged in the Complaint make clear that observance of the District's separate legal status would not sanction a fraud or promote injustice, amendment would be futile. *See Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991).  SolarCity's claims against the Association should be dismissed with prejudice.

### III. IF THE ASSOCIATION WERE THE ALTER EGO OF THE DISTRICT, THE DISTRICT'S DEFENSES AND IMMUNITIES WOULD AUTOMATICALLY APPLY TO THE ASSOCIATION

SolarCity's alter ego claims against the Association are entirely derivative of its underlying claims against the District.  Thus, if the Court were to conclude that the Association is the alter ego of the District, the Association would be entitled to the same defenses as the District, including the District's immunity defenses.  Transfer of the District's immunities to the Association follows from the fact that an alter ego is only liable to the extent liability exists on the underlying cause of action.  *Five Points Hotel P'ship v. Pinsonneault*, No. CV-11-000548-PHX-JAT, 2014 WL 1713623, at *3-4 (D. Ariz. May 1, 2014); *Lindquist v. Farmers Ins. Co. of Ariz.*, No. CV 06-597-TUC-FRZ, 2008 WL 343299, at *10 (D. Ariz. Feb. 6, 2008) (alter ego liability is a "form[] of derivative liability arising from the underlying substantive cause of action").  Therefore, whether cast as an automatic transfer of the District's immunities to the Association, or simply as SolarCity's failure to state a claim against the District, the failure of SolarCity's claims against the District (because of the District's immunities or otherwise), means that the same claims against the Association also fail.

9

1    SolarCity's arguments regarding the automatic application of immunity defenses
2 conflates two separate inquiries:  (1) the test for determining whether alter ego liability is
3 appropriate in a given case; and (2) the test for determining whether the immunities of
4 one alter ego apply to the other.  *See* A-OPP. 13-15.  Even if SolarCity were correct that
5 determining whether alter ego liability exists does not lend itself to strict rules, *see id.* at
6 13, the same is not true for application of the immunities of one alter ego to the other.  As
7 set forth in the Association's Motion to Dismiss, once it is determined that alter ego
8 status exists, the immunities of one alter ego are automatically transferred to the other.
9 A-MTD 12-13.
10   This is made apparent in SolarCity's analysis of *Alaska Cargo Transport, Inc. v.*
11 *Alaska Railroad Corp.*, 5 F.3d 378, 379-80 (9th Cir. 1993).  *See* A-OPP. 13-14.  In the
12 Eleventh Amendment context, courts determine whether a state agency should be
13 considered the alter ego of the state, *i.e.*, an arm of the state.  *See Alaska Cargo*, 5 F.3d at
14 379-80 (citing *State Highway Comm'n of Wyo. v. Utah Constr. Co.*, 278 U.S. 194, 199
15 (1929)).  While SolarCity correctly notes that the court conducted a detailed analysis to
16 determine whether the defendant was an alter ego of the state, it ignores the fact that once
17 that determination had been made, the Ninth Circuit applied the State's Eleventh
18 Amendment immunities without further analysis.  *See Alaska Cargo*, 5 F.3d at 380, 382
19 ("We conclude that ARRC is an 'arm of the state,'" and "ARRC is an alter ego of the
20 State of Alaska and . . . immune from suit in federal court.").
21   SolarCity's analysis of *United States v. Gravel*, 408 U.S. 606, 617 (1972),
22 concerning the extension of legislative immunity to Congressional aides, also misses the
23 mark.  As SolarCity suggests, when the Supreme Court first extended legislators'
24 immunity to their aides, it analyzed "the likely practical effects of extending the
25 privilege."  A-OPP. 14.  After the extension of immunity was established, however,
26 subsequent cases looked only to whether a legislative aide's "conduct would be a
27 protected legislative act if performed by a member."  *United States v. Renzi*, 686 F. Supp.
28

10

2d 956, 973 (D. Ariz. 2010).  After that question has been answered, no additional analysis is necessary.

## **CONCLUSION**

For all these reasons, and those set forth in the Association's Motion to Dismiss, and the District's Motion to Dismiss and Reply, the Association respectfully requests that SolarCity's claims against it be dismissed with prejudice in their entirety.

RESPECTFULLY SUBMITTED this 12th day of August, 2015.

| | |
|---|---|
| Steptoe & Johnson LLP<br>Paul K. Charlton<br>Karl M. Tilleman<br>201 East Washington Street, Suite 1600<br>Phoenix, AZ 85004<br>Telephone:  (602) 257-5200<br>Facsimile:  (602) 257-5299<br>pcharlton@steptoe.com<br>ktilleman@steptoe.com | s/Christopher E. Babbitt<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>Eric Mahr<br>Christopher E. Babbitt<br>Christopher T. Casamassima<br>1875 Pennsylvania Avenue NW<br>Washington, DC 20006<br>Telephone:  (202) 663 6000<br>Facsimile:  (202) 663 6363<br>eric.mahr@wilmerhale.com<br>christopher.babbitt@wilmerhale.com<br>chris.casamassima@wilmerhale.com<br><br>Attorneys for Defendant |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Richard J. Pocker (012548)

BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
William A. Isaacson (*admitted pro hac vice*)
Karen L. Dunn (*admitted pro hac vice*)

BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Steven C. Holtzman
John F. Cove, Jr.
Kieran P. Ringgenberg
Sean P. Rodriguez

COPPERSMITH BROCKELMAN PLC
2800 North Central Avenue, Suite 1200
Phoenix, AZ 85004
Keith Beauchamp
Roopali H. Desai

                                                s/ Christopher E. Babbitt