WILMER CUTLER PICKERING
  HALE AND DORR LLP
Eric Mahr (*admitted pro hac vice*)
Christopher E. Babbitt (*admitted pro hac vice*)
Christopher T. Casamassima (*admitted pro hac vice*)
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile:  (202) 663-6363
eric.mahr@wilmerhale.com
christopher.babbitt@wilmerhale.com
chris.casamassima@wilmerhale.com

STEPTOE & JOHNSON LLP
Paul K. Charlton (012449)
Karl M. Tilleman (013435)
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
Telephone: (602) 257-5200
Facsimile: (602) 257-5299
pcharlton@steptoe.com
ktilleman@steptoe.com

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| SolarCity Corporation, | No. 2:15-CV-00374-DLR |
| Plaintiff, | |
| vs. | **DEFENDANT SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS** |
| Salt River Project Agricultural Improvement and Power District; Salt River Valley Water Users' Association, | |
| Defendants. | **Oral Argument Requested** |

I.  INTRODUCTION

SolarCity cannot point the Court to a single case finding an antitrust violation or tort where the gravamen of the plaintiff's complaint is that the rate a utility charges its customers is too high. And it certainly has not cited any authority to suggest such a suit is appropriate where, as is true here, the utility is a political subdivision of the state and the rate in question is set by elected officials pursuant to a public process established by state law.  Recognition of such claims would be unprecedented.  This is a poor case to break new ground.

SolarCity's claims run afoul of several well-established antitrust immunity doctrines.  Both federal and state law also preclude SolarCity's attempt to obtain damages against the District because the District is a public entity as a matter of state law.  And even if its claims had some substantive merit, SolarCity would lack standing to bring them:  Ninth Circuit precedent requires an antitrust plaintiff to be either a customer or competitor of the defendant, and SolarCity is neither.  Moreover, SolarCity's claims are without substantive merit.  SolarCity cannot run from its First Amended Complaint ("FAC"), in which the District's retail prices are the only challenged conduct.  The antitrust laws are clear that prices set unilaterally may be challenged only if they are predatory, and SolarCity makes clear that the District's prices are not.

At bottom, SolarCity asks this court to resolve a policy debate over the extent to which local electric ratepayers should be required to subsidize rooftop solar installations. The Court should decline SolarCity's invitation to do so.  The FAC should be dismissed, without leave to amend, and the policy debate should be permitted to continue where it belongs:  among regulators and legislators, not federal courts.

II.  THE DISTRICT IS ENTITLED TO GOVERNMENTAL IMMUNITIES

Under Arizona law, the District is a "public, political, taxing subdivision of the state."  A.R.S. § 48-2302.  Arizona's Constitution endows the District with "all the rights, privileges, and . . . immunities . . . granted municipalities and political subdivisions under . . . any law of the state or of the United States."  Ariz. Const. Art. XIII, § 7.  The plain

language of these provisions requires that the District be treated as a "local government," immune from antitrust damages under the Local Government Antitrust Act ("LGAA"), and as a "public entity" immune from all state law damages for purposes of Title 12 of the Arizona Revised Statutes.[1] *Stulce v. Salt River Project Agric. Imp. & Pwr. Dist.,* 197 Ariz. 87, 88 n.1 (Ct. App. 1999) (finding that the District is a "public entity" and "a political subdivision of the state.").

Despite clear authority to the contrary, SolarCity argues that Arizona law does not treat the District as a government entity. See OPP. 4-6, 15-19. SolarCity relies on out-of-context snippets from cases on unrelated topics ranging from the Voting Rights Act to labor relations that touch on acts by the District that are viewed as "proprietary." These snippets are red herrings. Even those decisions recognize that the District is a public entity under Arizona law. *See, e.g.*, *Ball v. James*, 451 U.S. 355, 368-69 & n.14 (1981). SolarCity cites no authority for its contention that the proprietary aspects of the District abrogate its constitutionally conferred status as a political subdivision accorded all of the privileges and immunities of a municipal corporation.

More importantly, Arizona courts have consistently held that the fact that the District engages in proprietary activity "does not defeat its status as a . . . political subdivision of the state." *Salt River Project Agric. Imp. & Pwr. Dist. v. City of Phoenix*, 129 Ariz. 398, 399-400 (Ct. App. 1981); *see also Rubenstein Constr. Co. v Salt River Project Agric. Imp. & Pwr. Dist.*, 76 Ariz. 402, 404 (1953) ("[P]laintiff contends . . . that when municipal corporations engage in proprietary functions they thereby lose their municipal status . . . . There can be no such metamorphosis. The [District] is either at all times a political subdivision of the state or it never is."); *Smith v. Salt River Project*

---

[1] This Court recently recognized the District's status as a public entity. *See* Order Granting Motion for Summary Judgment, *Haffer v. Salt River Project*, No. CV-14-1213 (D. Ariz. Apr. 30, 2015) (Rayes, J.) (ECF No. 28), at 5 (disposing of claims brought under the Arizona Civil Rights Act on ground that plaintiff failed to comply with notice-of-claims requirement applicable to public entities).

2

*Agric. Imp. & Pwr. Dist.*, 109 F.3d 586, 594 (9th Cir. 1997) ("The fact that the District is a limited purpose public entity makes it no less public.").

### A. The District Is Immune From Antitrust Damages Under The LGAA

The District epitomizes the type of "special function governmental unit established by State law" immunized under the LGAA. 15 U.S.C. § 34. The LGAA indisputably bars damages actions against municipalities, *Palm Springs Med. Clinic v. Desert Hosp.*, 628 F. Supp. 454, 456 (C.D. Cal. 1986), and the District receives all immunities granted to municipalities and other political subdivisions under federal and state law. Ariz. Const. Art. XIII, § 7; *cf. Horisons Unlimited v. Santa Cruz-Monterey-Merced Managed Med. Care Comm'n*, 2014 WL 3342565, at *13 (E.D. Cal. July 2, 2014) (managed care commission that possessed "all rights, powers, duties, privileges and immunities vested in a county" immune under LGAA).

Further, the LGAA's legislative history provides that "[e]xamples of special purpose political subdivisions . . . are planning districts, water districts, sewer districts, irrigation districts, drainage districts, road districts, and mosquito control districts." 1984 U.S.C.C.A.N. 4602, 4620-21. This language is "inclusive and not exclusive," *Palm Springs*, 628 F. Supp. at 456-57 & n.2, and surely extends to the District given its status as a political subdivision of the state. In contrast, the District bears no similarity to the organizations "such as a county or city bar association, dental association, or medical association" that Congress excluded from coverage. 1984 U.S.C.C.A.N. at 4620-21.

SolarCity's reliance on *Tarabishi v. McAlester Regional Hosp.*, 951 F.2d 1558 (10th Cir. 1991) demonstrates the weakness of its argument to the contrary. The Tenth Circuit, in rejecting LGAA immunity for a hospital, relied heavily on the fact that the hospital was *excluded* under the state's Governmental Tort Claims Act from immunity as a political subdivision, *Id.* at 1567. Here, the District is a political subdivision covered by Title 12's immunity from damages. *See infra* II.B; *Stulce*, 197 Ariz. at 88 n.1; A.R.S. § 12-820.01.

1    SolarCity attempts to transform a policy goal of the LGAA, protecting taxpayers
2  from damages awards, into an unstated statutory requirement that taxpayers must "bear
3  the burden of any antitrust damage award" for the entity to qualify as a special function
4  governmental unit.[2]  OPP. 16.  The LGAA contains no such requirement.  Immunity has
5  been extended "to hospital centers . . . port authorities . . . and a local town-operated
6  airport " that generate revenue from proprietary activities.  *Capital Freight Servs., Inc. v.*
7  *Trailer Marine Transp. Corp.*, 704 F. Supp. 1190, 1199 (S.D.N.Y. 1988).
8    In any event, the District has authority to levy taxes and assessments on
9  landowners, foreclosing SolarCity's attempt to exclude the District from the LGAA's
10 coverage.  A.R.S. § 48-2414.[3]  In addition, the District's ratepayers—who are also the
11 taxpayers—would necessarily bear the burden of a damages award, squarely implicating
12 the LGAA's concern of protecting the public from the burden of such an award.[4]  *Cf.*
13 *Moongate Water Co. v. Dona Ana Mut. Dom. Water Cons. Ass'n*, 145 N.M. 140 (2008).

14  **B.    The District Is Immune From State Law Damages Claims Under A.R.S. § 12-820.01 Because It Is A Public Entity And Rate-Setting Is A**
15  **Legislative Function**

16    Under Arizona law, a "public entity" possesses "absolute immunity" in its
17 "exercise of a legislative function," or "an administrative function involving the
18 determination of a fundamental governmental policy." A.R.S. § 12-820.01.
19    SolarCity does not dispute that rate-setting is generally considered by courts to be
20 a "legislative function."  *See* cases cited D-MTD 7 & n.11.  Instead, SolarCity attempts to
21

---

[2] SolarCity's sole authority for this requirement is *United Nat'l. Maint. Inc. v. San Diego Conv'tn Ctr. Corp.*, 2010 WL 3034024 (S.D. Cal. Aug. 3, 2010).  The district court there did not cite any authority, nor did it provide any analysis to support imposing the requirement, which is not found in the text of the LGAA.
[3] SolarCity would also require that the government in question must have "general" taxing authority.  OPP. 16.  SolarCity offers no support for its assertion.  Congress immunized "special function governmental unit[s]" like the District that lack general governmental powers, including general taxing authority.
[4] SolarCity argues that the LGAA does not control dismissal of its claims for state law damages, disagreeing with the case law the District cited in its opening brief.  *See* D-MTD 7 at n.10.  SolarCity, however, cites no authority reaching a contrary holding.

4

1  distinguish these cases on the ground that they involved the ACC (or in other states,
2  municipalities).  SolarCity's argument rests primarily on its contention that the ACC is a
3  "popularly elected," "coordinate branch" of government.  OPP. 17.  But the District's
4  Board is also popularly elected, A.R.S. § 48-2365(A), and Title 12 immunities apply to
5  political subdivisions, including the District.  *Stulce*, 197 Ariz. at 88 n.1.  Moreover,
6  nothing in SolarCity's authorities depends on the ACC's elected or political status.  Rate-
7  setting constitutes a legislative function because it shares the same characteristics as
8  legislation:  "Legislation . . . changes existing conditions by making a new rule . . . .  The
9  establishment of a rate is the making of a rule for the future, and therefore is an act
10 legislative, not judicial, in kind."  *Ariz. Corp. Comm'n v. Super. Ct. In & For Maricopa*
11 *Cty.*, 107 Ariz. 24, 27 (1971).

Cases holding that ratemaking by a municipality is legislative also cannot be
distinguished.  SolarCity contends those cases are inapposite because those municipalities
have "broad grants of general authority."  OPP. 17.  But rate-setting does not lose its
legislative character merely because the District possesses only some, but not all, of the
powers typically held by a local government, especially since rate-setting is among the
powers expressly granted by the legislature to the District's Board.  A.R.S. § 48-2334.[5]

**C.    SolarCity's State Law Damages Claims Must Be Dismissed For Failure To Comply With The Notice of Claims Statute**

Under Arizona law, an action for damages against a public entity may "proceed
only if a claimant files a notice of claim that includes . . . a specific amount for which the
claim can be settled."  *Backus v. State*, 220 Ariz. 101, 104 (2009).  Arizona requires strict
compliance with this requirement.  *Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, 61-62

---

[5] Moreover, SolarCity is wrong that the District's rate-setting does not implicate a fundamental governmental policy.  Rather, the District's sale of electricity is "use[d] to accomplish the [District's] primary governmental purpose" of the "reclamation and irrigation of arid lands." *City of Phoenix*, 129 Ariz. at 401-02.  SolarCity wrongly asserts that *Ball v. James* "disagrees" that the District's rate-setting implements a fundamental governmental policy. OPP. 17.  The *Ball* decision—addressing coverage under the Voting Rights Act—certainly did not address immunity from Arizona tort law; indeed, it predated the enactment of A.R.S. § 12-821.01.

5

1  (App. 2010). SolarCity violated A.R.S. § 12-821.01 by failing to specify a sum certain
2  for which the damages claims could be settled independently of SolarCity's condition
3  that the District cease applying its new rates. *See Crum v. Super. Ct. In & For Cty of*
4  *Maricopa*, 186 Ariz. 351, 353 (Ct. App. 1996). SolarCity's failure to cure within the
5  180-day period after being notified of the deficiency further demonstrates its
6  noncompliance with the requirement.

7  **III.    THE FILED RATE DOCTRINE BARS SOLARCITY'S CLAIMS**

8  SolarCity agrees that its suit asks the Court to (1) determine that the District's
9  rates for retail electricity are too high, and (2) revise those rates in accordance with
10 SolarCity's interests. Absent an exception, the filed-rate doctrine bars such a claim. *Cty.*
11 *of Stanislaus v. Pac. Gas & Elec. Co.*, 114 F.3d 858, 863 (9th Cir. 1997) (doctrine bars
12 alleged antitrust violation that caused plaintiffs "to pay an inflated rate"). Nonetheless,
13 SolarCity insists the doctrine does not apply because: (1) the District's Board is not a
14 regulator of "the type that may implicate the doctrine," and (2) the so-called competitor
15 exception to the doctrine should apply. OPP. 12. Both arguments fail.

16 In assessing the applicability of the filed-rate doctrine, courts do not examine the
17 character of the regulatory authority or its relationship to the defendant. *See, e.g.*, *Ark.*
18 *La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981) (doctrine applies to "the spectrum of
19 regulated utilities"); *Wah Chang v. Duke Energy Trading and Mktg., LLC*, 507 F.3d
20 1222, 1227 (9th Cir. 2007) ("lax" regulatory authority "does not indicate, much less
21 establish, that [plaintiff] can turn directly to the courts for rate relief"). SolarCity's
22 unsupported assertion that "independent regulatory agencies" are required, *see* OPP. 12-
23 13, would preclude all municipally-owned utilities (in Arizona and elsewhere), from
24 receiving the doctrine's protection, rendering its protection illusory. *Compare* 28 U.S.C.
25 § 1342 (immunizing rates set by a "rate-making body of a State political subdivision").

26 SolarCity also may not invoke the filed rate doctrine's "competitor exception,"
27 assuming such an exception exists at all. The Supreme Court has not recognized a
28 "competitor exception." *AT&T Co. v. Centr. Office Tel., Inc.*, 524 U.S. 214 (1998)

1  (applying doctrine even though plaintiff was a competitor of defendant).  At best, the
2  exception exists only where the challenged rate is alleged to be too low.  *Cost Mgmt.*
3  *Servs, Inc. v. Wash. Nat. Gas Co.*, 99 F.3d 937, 946 (9th Cir. 1996) (allowing competitor
4  challenge to rates that were allegedly too low but noting that a regulatory agency
5  "generally scrutinizes rates to see if they are too high").  In contrast, the exception does
6  not apply where, as here, a plaintiff contends that a rate is too high.  *Id*.; *see also Town of*
7  *Norwood v. New England Power Co.*, 202 F.3d 408, 420 (1st Cir. 2000) (rejecting
8  exception where rate was challenged as too high).  SolarCity also cannot rely on the
9  exception because it does not compete with the District.  *See Tex. Commercial Energy v.*
10 *TXU Energy, Inc*., 413 F.3d 503, 510 (5th Cir. 2005); D-MTD 18-20; *infra* V.A.
11         The doctrine's reach extends to bar SolarCity's claims for injunctive relief and its
12 state law claims.  SolarCity's claims for injunctive relief are barred because its suit would
13 necessarily require an adjustment to the set rate.  *Pub. Util. Dist. No. 1 of Snohomish Cty*
14 *v. Dynegy Pwr. Mktg., Inc*., 384 F.3d 756, 761 (9th Cir. 2004) ("injunctive relief . . . [is]
15 barred by the filed rate doctrine"); *McLeodUSA Telecomms. Servs. v. Ariz. Corp.*
16 *Comm'n*, 655 F. Supp. 2d 1003, 1009-11 (D. Ariz. 2009) (same).  *In re NOS*
17 *Communications*, cited OPP. 13 at n.12, is not to the contrary.  That decision held only
18 that, "[t]o the extent [] plaintiffs can prove damages without attacking the filed rate,"
19 their claims could proceed.  495 F.3d 1052, 1060-61 (9th Cir. 2007).
20         Likewise, while SolarCity suggests that the filed rate doctrine does not bar its state
21 law claims because Arizona's state courts have not endorsed the doctrine, two federal
22 courts have assumed they would do so.  *McLeodUSA*, 655 F. Supp. 2d at 1018-19; *Sun*
23 *City Taxpayers' Ass'n v. Citizens Utils. Co.*, 847 F.Supp. 281, 283 (D. Conn. 1994); *see*
24 *also* A.R.S. § 30-810; § 40-252 (foreclosing collateral judicial challenge to filed rates).
25
26
27
28

## IV. THE DISTRICT IS IMMUNE UNDER THE STATE ACTION DOCTRINE

### A. Arizona Has A Clearly Articulated Policy Displacing Competition In The Provision Of Retail Electricity

Seeking to evade application of the state action immunity doctrine, which is fatal to *all* of its antitrust claims,[6] SolarCity ignores several of the District's arguments in their entirety, fails to distinguish Ninth Circuit authority directly on point, and misinterprets Supreme Court precedent. SolarCity cannot overcome Arizona's complete displacement of competition in favor of regulation for the sale of retail electricity.

SolarCity's arguments that suggest the clear articulation requirement is not met either misread case law or are squarely foreclosed by Arizona's statutory scheme. SolarCity begins its state action argument by asserting that the "state action doctrine 'does not apply where a State has chosen to compete in the private retail market.'" OPP. 6. This is incorrect. The case SolarCity cites for this proposition, *Jefferson County Pharm. Ass'n., Inc. v. Abbott Laboratories*, 460 U.S. 150, 154 (1983), is not a state action immunity case at all. Instead, *Jefferson* dealt with the narrow question whether government activity was exempted from regulation under the Robinson-Patman Act, and is "inapplicable" on questions of state action immunity. *Miller v. Wright*, 705 F.3d 919, 927 (9th Cir. 2013).

Further, SolarCity would wrongly require the District to point to legislation "that authorizes [the District] to displace competition." OPP. 7-8. The Supreme Court has rejected this line of argument because it is "unrealistic" to "require state legislatures to explicitly authorize specific anticompetitive effects before state action immunity could apply." *F.T.C. v. Phoebe Putney Health Sys., Inc.*, 133 S. Ct. 1003, 1012 (2013).

SolarCity also fails to address several aspects of Arizona's regulatory regime that wholly displace retail competition and illustrate a clear articulation. Glaringly, SolarCity fails to address in its opposition that competition in the provision of retail electricity—the

---

[6] The Ninth Circuit's prediction that Arizona would adopt the state action doctrine is binding. *See Ill. Nat'l. Ins. Co. v. Nordic PCL Constr. Inc.*, 870 F. Supp. 2d 1015, 1030 (D. Haw. 2012) (federal appeals court prediction on state law constitutes "law of the circuit" unless state supreme court reaches contrary conclusion).

8

1  product market it alleges—currently is not permitted.  *See* D-MTD 12-13.  This absence
2  of competition—despite the EPCA's attempt to establish a framework for regulated
3  competition—is not accidental.  In the EPCA, the legislature conditioned any retail
4  competition on the ACC's certification of competitors to "furnish electricity" to retail
5  customers.  A.R.S. § 30-803(A).  Thus, any competition would always exist within an
6  established regulatory framework.  But since 2004, the ACC has not certified any retail
7  competitors and has withdrawn those certifications it had previously issued.  *See* D-MTD
8  12.  This suffices under the controlling authority in the Ninth Circuit—also unaddressed
9  by SolarCity—to constitute a clear articulation.  *See Cal. CNG v. S. Cal. Gas Co.*, 96
10 F.3d 1193, 1200 (9th Cir. 1996) (where legislature leaves to regulator decision to allow
11 competition, "any activity" by utility immune until regulator does so).
12         Even if the ACC allowed a competitor into the retail market, it would not displace
13 the state's policy in favor of regulation of retail electric rates.  D-MTD 14.  The ACC's
14 current policy follows directly from the *Phelps Dodge* decision.  207 Ariz. 95, 108 (App.
15 2004), *as amended on denial of reconsideration* (Mar. 15, 2004).  As explained in the
16 District's opening brief, the *Phelps Dodge* court held that the Arizona Constitution's "fair
17 value" provision required the ACC—and not the competitive market alone—to set retail
18 electric rates.  D-MTD 12.  Thus, even if the ACC certified a competitor, its rates would
19 still be determined by regulation, not competition.  207 Ariz. 108.  This is a clear
20 articulation displacing competition.  SolarCity's opposition fails to address the
21 ramifications of *Phelps Dodge*, indeed, it ignores the decision completely.
22         SolarCity also never addresses the fact that the legislature left to the District's
23 Board the authority both to set the District's prices and to adopt any "terms and
24 conditions" of competition.  *See* A.R.S. §§ 30-802, -805.  Thus, it is certainly foreseeable
25 that anticompetitive effects may result from the District's rate-setting.  *See* cases cited D-
26 MTD 14-15; *see also Am. Cab, LLC v. Sunline Servs. Grp.*, 2013 WL 1387198, at *5
27 (C.D. Cal. Apr. 1, 2013) ("anticompetitive effects . . . logically result from statutes
28 authorizing local government entities to establish [] rates for . . . taxicab [] service").

9

1 Indeed, the Arizona legislature exempted the District from the antitrust laws when setting
2 rates or engaging in other conduct authorized under state law.  *See* A.R.S. § 48-247.
3   SolarCity incorrectly argues that A.R.S. § 30-805(D), which addresses the ability
4 of public power entities to recover so-called "stranded costs," bars the challenged
5 conduct.  OPP. 8 & n.5.  But stranded costs are not at issue here and § 30-805(D) *expired*
6 in December 2004.  *See* A.R.S. § 30-805(B).  The provision is irrelevant today.
7   Similarly, A.R.S. § 30-813, which SolarCity labels an "antitrust savings clause,"
8 offers it no assistance.  This section relates to competition among regulated electric
9 service providers and public power entities for retail generation services, which does not
10 exist.  D-MTD 11-12.  Moreover, even if applicable, the fact that the antitrust laws
11 "apply" does not foreclose immunity because the doctrine is part of the antitrust laws.
12 *See Nugget Hydroelectric v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 433 (9th Cir. 1992).
13   In short, Arizona's current regulatory structure entirely displaces competitive
14 market forces in the sale of retail electricity in favor of regulated monopolies.
15 Competition in the sale of retail electricity is not permitted, and, even if it were, that
16 competition could not extend to rates.  The challenged conduct thus results from a clearly
17 articulated state policy to displace competition in setting retail electricity prices.

18   **B.** **The Active Supervision Requirement Does Not Apply To The District**

19   Earlier this year, the Supreme Court held that "a state board on which a controlling
20 number of decisionmakers are *active participants in the occupation the board regulates*,"
21 must be actively supervised in order for the state action doctrine to apply.  *N.C. State Bd.*
22 *of Dental Exam'rs v. F.T.C.*, 135 S. Ct. 1101, 1110-12 (2015) (emphasis added).  That is
23 not this case here.  In *N.C. Board*, the Court held that a state board of dentistry—made up
24 primarily of *dentists*, elected by other dentists—was comprised of active participants in
25 the regulated market (dentistry).  But the District is governed by elected representative
26 residents of the District, A.R.S. § 48-2363, is not controlled by participants in the market
27 for the sale of retail electricity, and shares no similarities with the "private trade
28 associations" that the Court addressed in *N.C. Board*.  135 S. Ct. at 1114.  As the *N.C.*

*Board* Court reaffirmed, where a public entity is controlled by a publicly elected governing body, as is the District, there is no active supervision requirement. *Id.*

SolarCity conflates its irrelevant and *ad hominem* allegations that the District's Board members pursue their "private interests" with active market participation. The two are not analogous. Indeed, the *N.C. Board* decision states that "recipients of immunity will not lose it on the basis of ad hoc and *ex post* questioning of their motives for making particular decisions." 135 S. Ct. at 1113.

In any event, the "active supervision" requirement is met here as a matter of law.[7]

## V.  SOLARCITY LACKS STANDING

### A.  SolarCity Does Not Participate In The Relevant Market

To adequately allege antitrust injury, the plaintiff must be "either a consumer or a competitor of the alleged violator in the restrained market." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013). SolarCity is neither. SolarCity alleges that the relevant market is the "provision of electric power to end-use residential, governmental, and business consumers . . . [in] the retail market." FAC ¶ 49. But SolarCity does not provide "electric power" to retail consumers, and does not compete in the market at issue. SolarCity does not even cite *Somers v. Apple*, a controlling Ninth Circuit decision.

Instead, as is plain from the FAC, SolarCity provides financing for, and installation of, solar panels. This is not the same as providing electric power in the retail market. Among other things, for SolarCity to provide electric power to retail consumers, it would have to "obtain a certificate" from the ACC, which it has not done. Absent doing so, it cannot be a market participant. *See* cases cited D-MTD 19.

SolarCity attempts to distinguish the District's authorities because SolarCity sells

---

[7] Courts regularly find active supervision upon a motion to dismiss. *Cal. CNG*, 96 F.3d at 1203; *Nugget*, 981 F.2d at 435. Here, the Court can resolve active supervision on the face of the FAC. The Board must approve retail electric rate changes, and SolarCity alleges that the Board's authority was exercised here. FAC ¶¶ 89, 97. Because the District is a political subdivision, and its Board is acting pursuant to a detailed state authorization in approving retail electric rates, no further supervision is required. *Mun. Utils. Bd. of Albertville v. Alabama Pwr. Co.*, 934 F.2d 1493, 1503-04 (11th Cir. 1991).

1  its products without a license to furnish electricity, whereas the plaintiffs in the cited
2  cases did not. But this argument proves too much. SolarCity may legally sell its
3  products only because those products do *not* provide retail electricity, and thus do *not*
4  compete with the District.
5        SolarCity's emphasis on *Bhan v. NME Hosps., Inc.*, 772 F.2d 1467 (9th Cir.
6  1985), to support its argument is misplaced. *Bhan* did not hold that regulatory issues "do
7  not control" the standing analysis. OPP. 22-23. The opposite is true. The *Bhan* Court
8  took full account of the regulatory regime, and only after doing so concluded that nurse
9  anesthetists in that case did compete with physicians in the same market. 772 F.2d at
10 1471; *see also McWane, Inc. v. F.T.C.*, 783 F.3d 814, 829 (11th Cir. 2015) (cited OPP.
11 29) ("To the extent that regulation limits substitution, it may define the extent of the
12 market"). And in sharp contrast to SolarCity, the nurse anesthetists in *Bhan were*
13 licensed participants. *Id*.

14       **B.**    **The Alleged Harm To SolarCity Is Not Harm To Competition**

15       In its opposition, SolarCity fails to satisfy the additional requirement of adequately
16 alleging cognizable harm to competition; harm to SolarCity "as a competitor", OPP. 21,
17 is insufficient. The "antitrust laws . . . were enacted for the protection of competition, not
18 competitors." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977).
19 The FAC does not allege antitrust injury because there is no plausible allegation that the
20 SEPPs harm competition, as opposed to SolarCity's finances as a lessor of solar panels.
21 *See R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 146 (9th Cir.
22 1989) ("a landlord or receiver of royalties does not establish antitrust standing by
23 showing its receipts are down and it is in the area where an antitrust violation produced
24 this result."). SolarCity does allege—without support—that there are fewer choices and
25 higher prices because of the SEPPs, but bare allegations that conduct "reduc[es]
26 consumers' choices or increase[s] prices to consumers does not sufficiently allege an
27 injury to competition." *Brantley v. NBCU, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012).
28

## VI. SOLARCITY'S ANTITRUST CLAIMS ARE IMPLAUSIBLE

### A. SolarCity Has Failed To Plead A Relevant Market

SolarCity has failed to allege the relevant product market with "reference to the rule of reasonable interchangeability and cross-elasticity of demand," requiring dismissal of its antitrust claims. D-MTD 21; *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001). SolarCity counters that it sufficiently pled a retail electricity market, but the sole fact it cites is that its panels allegedly "deprive[] the District of business." This allegation fails to get SolarCity over the required "plausibility" line. *Newcal Indus. v. Ikon Office Solutions*, 513 F.3d 1038, 1045 (9th Cir. 2008).

SolarCity's proposed market is implausible because it alleges negative cross-elasticity of demand. That is, the entirety of SolarCity's case is that the District's price increase caused customers to *decrease* their purchases of SolarCity's panels. FAC ¶ 123. But where the "cross-price elasticity [between two products] is negative, the goods are complements." Areeda, *Antitrust Law* ¶ 507. And "as a matter of law, complementary products . . . are not in the same market." *Little Rock Cardiology Clinic, P.A. v. Baptist Health*, 573 F. Supp. 2d 1125, 1146 (E.D. Ark. 2008); *Babcock & Wilcox Co. v. United Techs. Corp.*, 435 F. Supp. 1249, 1268 (N.D. Ohio 1977) (where products had "negative cross-elasticity" they could not be in the same relevant market).

Further, SolarCity's proposed retail electricity market fails as a matter of law because its panels (and anything else that can be used for customers to self-generate electricity) are not a part of the relevant market. The District sells retail electricity as a lawful monopolist under Arizona's current regulatory scheme. SolarCity does not sell electricity; instead, its panels facilitate electricity generation, and are therefore irrelevant for the purposes of assessing competition for the sale of electricity itself at the retail level. *See North Star Steel v. MidAmerican Energy Holdings Co.*, 184 F.3d 732, 738-39 (8th Cir. 1999) ("[T]he fact that MidAmerican does not generate all of its own electricity is irrelevant . . . because there is still no competition for retail customers . . . wholesale is an entirely different market than retail."); c*f. Solyndra Residual Tr. v. Suntech Pwr.*

1  *Holdings Co., Ltd.*, 62 F. Supp. 3d 1027, 1045-46 (N.D. Cal. 2014) (upholding market of
2  "commercial and industrial rooftop solar photovoltaic panels").  In any event, "[C]ourts
3  in antitrust cases frequently exclude [] self-supply substitutes from relevant product
4  markets."  *United States v. H&R Block, Inc.*, 833 F. Supp. 2d 36, 57-58 (D.D.C. 2011)
5  (pen-and-paper tax preparation not in same market as digital tax software).

   **B.**  **SolarCity's Monopolization And Attempted Monopolization Claims Must Be Dismissed**

   In its opposition, SolarCity fails to provide the Court with a single authority recognizing a valid antitrust claim based solely on the theory that a purported monopolist's prices are too high—and for good reason.  Such a claim is foreclosed by precedent holding that the price a supplier charges for its product cannot give rise to antitrust liability unless that price is below its costs (the "price cost test").[8]  *Atl. Richfield Co. v. USA Petroleum*, 495 U.S. 328, 339 (1990) ("in the context of pricing practices, only predatory pricing has the requisite anticompetitive effect"); *Name.Space, Inc. v. ICANN*, --- F.3d ----, 2015 WL 4591897, at *6 (9th Cir. Jul. 31, 2015) ("[b]arring predatory behavior [firms are] free to choose the parties with whom [they] will deal, as well as the prices, terms, and conditions of that dealing").

   SolarCity cannot overcome this line of authority.  SolarCity claims that it challenges the SEPP's "exclusionary, discriminatory terms," OPP. 26, but the FAC points to only one allegedly "exclusionary" term—the price term.  *See, e.g.*, FAC ¶¶ 4 (SEPPs are "*pricing plans*"); 119 ("SEPPs are exclusionary because they punish customers for dealing with SRP's competitors *by raising prices*.").  And as SolarCity admits, where "price is the predominant mechanism of exclusion" alleged, an antitrust plaintiff must satisfy the price-cost test, OPP. 27, which SolarCity has not done and cannot do.

   SolarCity also suggests that the price-cost test applies only to discounting or rebates, and not to what it calls "penalty" prices that are "not intended to be paid."  OPP. 27.  But SolarCity offers no authority to support its novel delineation.  SolarCity cites only *ZF Meritor LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012), which held that the

---

[8] This analysis bars all of SolarCity's exclusive dealing claims.  *See* D-MTD 26.

14

plaintiffs there were not challenging the defendant's pricing practices and distinguished the facts of that case from a case like this one where "the defendant's pricing itself operated as the exclusionary tool." *Id*. at 279.  The court there also reiterated that "the price-cost test applies [whenever] a pricing practices claim is brought." *Id.* at 280 n.13. SolarCity's invocation of the term "agreement" does not change that its complaint challenges the District's prices.

SolarCity does not contend that the District has an antitrust "duty to deal" with SolarCity, but tries to advance an "independent monopolization theory" under *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985).  This theory fares no better.  At a minimum, under *Aspen Skiing*, a plaintiff must allege that the defendant is "willing[] to forsake short-term profits to achieve an anticompetitive end." *Id*. at 409. SolarCity makes no such allegation, nor could it do so.[9]

### C.     SolarCity Has Not Pled An Illegal Agreement

SolarCity's claims for an unreasonable restraint of trade and exclusive dealing require plausible evidence of an illegal agreement.  *See* OPP. 25.  SolarCity points only to the SEPPs' price term as the illegal agreement.  FAC ¶ 162.  But that price term is set *unilaterally* by the District's Board.  FAC ¶¶ 89, 97.  The SEPPs therefore cannot give rise to antitrust liability based on an agreement.  *Name.Space,* 2015 WL 4591897 at *4. ("independent business decisions about . . . price . . . are not policed by § 1.").

In any event, SolarCity's claims under § 1 of the Sherman Act and § 3 of the Clayton Act (and their state law analogues) fail on their own terms.  *See, e.g.*, FAC ¶ 114; OPP. 27.  Both the FAC and SolarCity's opposition allege that customers *will not agree* to the new allegedly anticompetitive SEPPs.  SolarCity even alleges that the "announcement" of the SEPPs was "itself an anticompetitive act."  FAC ¶ 116.  Thus, any purported anticompetitive effects arising from the SEPPs cannot arise from an

---

[9] Further, *Aspen Skiing* is "at or near the outer boundary of § 2 liability," and is a "limited exception" to the rule that there is no antitrust duty to deal with rivals.  *Verizon Comm'ns v. Trinko*, 540 U.S. 398, 408-09 (2004).

15

1  agreement. *See, e.g.*, *Brantley*, 675 F.3d at 1201 (dismissing complaint where injury did
2  not "flow" from challenged agreement). And if a customer did agree to the challenged
3  self-generation SEPP, there would be no anticompetitive effect because that customer
4  would necessarily be using distributed generation.

5        **D.**    **SolarCity Has Not Stated A Valid Claim For Tying**

6        To state a valid claim for tying, SolarCity agrees that it must plausibly allege the
7  existence of two "distinct" products with unique demand in different markets whose sales
8  are tied together. OPP. 24. SolarCity fashions a standalone "grid access" market to
9  justify its tying allegations. *Id.* But there is no consumer-facing grid access product, nor
10  is there independent demand for such a product. The only reason retail customers desire
11  "access" to the grid is to purchase electricity. FAC ¶ 63; D-MTD 24. SolarCity's tying
12  claim must be dismissed because the relevant markets are implausibly defined. *See Krehl*
13  *v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1352-53 (9th Cir. 1982) (rejecting
14  tying claim where "function" of products established only one product).[10]

15  **VII.**    **SOLARCITY DID NOT COMPLY WITH A.R.S. § 30-810**

16        SolarCity admits that it did not request a rehearing pursuant to A.R.S. § 30-
17  810(A), but contends the provision did not apply. As a threshold matter, the provision
18  applies to all "matters as determined in the reasonable discretion of the governing body of
19  the public power entity." *Id.* The District is a "public power entity" and the rate-setting
20  proceeding was conducted pursuant to the requirements of the EPCA. *See* A.R.S. §§ 30-
21  801(16), 802(b). Further, the statute applies to any "decision [] made by the governing
22  body . . . regarding terms and conditions for . . . transmission and distribution service
23  rates and charges and other related matters," all of which were included in the SEPPs.
24  A.R.S. § 30-810. Thus, there is no support for SolarCity's contention that the rehearing
25  requirement does not apply.

---

[10] The FAC's invocation of "cross-elasticity" for the grid access market is a legal conclusion that the court need not credit. *Apple v. Psystar Corp.,* 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008).

16

1   SolarCity also contends it was not a "party" under the statute.  OPP. 19.  But, after
2   having extensively participated in the rate-setting process, D-MTD 5, SolarCity cannot
3   credibly contend that it was not a "party."  SolarCity's argument depends on a definition
4   of what it means to be a "party" in litigation, which does not speak to "party" status under
5   Title 30.  Arizona cases have construed a nearly identical rehearing requirement (A.R.S.
6   § 40-253) as barring any collateral attack, even by nonparties.  *See* D-MTD 29.

## VIII.  SOLARCITY'S TORT LAW CLAIMS MUST BE DISMISSED

SolarCity does not dispute that if the Court dismisses its antitrust claims, its tortious interference claims must fail to the extent they rely on the same conduct.  OPP. 29.  Instead, SolarCity contends that its interference claims are also based on the timing of the District's decision about the SEPPs' effective dates.  *Id.*  Even if that were true, dismissal would still be required because SolarCity never explains, as it must, *how* that conduct is "improper" if it does not violate the antitrust laws.  *See Wells Fargo v. Arizona Laborers Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 494-95 (2002).

## CONCLUSION

For all the foregoing reasons, the District respectfully requests that the Court dismiss with prejudice Plaintiff SolarCity's First Amended Complaint in its entirety.

RESPECTFULLY SUBMITTED this 12th day of August, 2015.

Steptoe & Johnson LLP
Paul K. Charlton
Karl M. Tilleman
201 East Washington Street, Suite 1600
Phoenix, AZ 85004
Telephone:  (602) 257-5200
Facsimile:  (602) 257-5299
pcharlton@steptoe.com
ktilleman@steptoe.com

s/Christopher E. Babbitt
Wilmer Cutler Pickering Hale and Dorr LLP
Eric Mahr
Christopher E. Babbitt
Christopher T. Casamassima
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone:  (202) 663 6000
Facsimile:  (202) 663 6363
eric.mahr@wilmerhale.com
christopher.babbitt@wilmerhale.com
chris.casamassima@wilmerhale.com

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Richard J. Pocker (012548)

BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
William A. Isaacson (*admitted pro hac vice*)
Karen L. Dunn (*admitted pro hac vice*)

BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Steven C. Holtzman
John F. Cove, Jr.
Kieran P. Ringgenberg
Sean P. Rodriguez

COPPERSMITH BROCKELMAN PLC
2800 North Central Avenue, Suite 1200
Phoenix, AZ 85004
Keith Beauchamp
Roopali H. Desai

s/ Christopher E. Babbitt