WILMER CUTLER PICKERING
 HALE AND DORR LLP
Molly S. Boast (*admitted pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
molly.boast@wilmerhale.com

Christopher E. Babbitt (*admitted pro hac vice*)
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
christopher.babbitt@wilmerhale.com

Christopher T. Casamassima (*admitted pro hac vice*)
350 South Grand Ave.
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400
chris.casamassima@wilmerhale.com

STEPTOE & JOHNSON LLP
Paul K. Charlton (012449)
Karl M. Tilleman (013435)
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
Telephone: (602) 257-5200
Facsimile: (602) 257-5299
pcharlton@steptoe.com
ktilleman@steptoe.com

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| SolarCity Corporation<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>Salt River Project Agricultural Improvement and Power District<br><br>　　　　　　Defendant. | Case No. 2:15-cv-00374-DLR<br><br>**DEFENDANT SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT'S MOTION FOR PROTECTIVE ORDER** |

Pursuant to Federal Rules of Civil Procedure 26(c) and 26(b)(2)(C)(iii), and at the direction of the Court, Salt River Project Agricultural Improvement and Power District ("the District") hereby moves for a protective order regarding discovery of certain data sought by SolarCity Corporation ("SolarCity").[1]

**INTRODUCTION**

At the conclusion of the May 29, 2015 Scheduling Conference, the Court ordered the parties "to meet and confer to discuss the production of data, production of contracts, and a list of the top priority custodians." (*See* Dkt. # 46.)  Accordingly, the parties met and conferred numerous times and eventually reached an agreement on most of the priority discovery issues.  To date, the District has produced more than 250 gigabytes of data and more than 10,000 additional responsive documents, totaling more than 44,000 pages and native files.  (*See* Ex. 1, December 4, 2015 Letter.)  However, certain of SolarCity's requests for production went far beyond the scope of SolarCity's then-pending claims.  This motion pertains to SolarCity's request for massive amounts of customer-specific demand, usage, and generation data that have no relevance to the key issues in this case.

The overbreadth of SolarCity's requests is even more pronounced following the Court's October 27, 2015 Order (Dkt. # 77) (the "Order") substantially narrowing this case. In particular, the Order held that SolarCity "does not challenge the District's rates as unreasonable, but instead alleges the District imposed the rates to exclude it from the market." (Order at 25.)  The discovery at issue in this motion reflects SolarCity's challenge to the reasonableness of the District's rates.  That discovery is irrelevant—and disproportionate—to SolarCity's remaining claims.

SolarCity brought this case to challenge the District's addition of a new rate plan (E-27) to its Standard Electric Pricing Plans ("SEPPs") for customers who install distributed-generation technologies (such as rooftop solar panels) after December 8, 2014.  The District

---

[1] Subsequent to the November 24 status conference, the District made efforts to meet and confer to ensure that the parties have conferred in good faith in an attempt to resolve their dispute over the appropriate scope of discovery without the Court's intervention.

1  has been producing, and will continue to produce, the data the District relied upon in the
2  rate-making process that culminated in the E-27 plan, as well as the documents the District's
3  executives and Board reviewed in deciding to adopt it.  As discussed below, this is the
4  information relevant to the District's motives and business justifications for adopting the E-
5  27 plan, and whether they were (in SolarCity's view) "pretextual"—the fundamental issues
6  remaining in this case.  But SolarCity should not be permitted to mine the depths of the
7  District's internal data that no one considered or relied upon to create the E-27 plan.  To do
8  so would cause discovery and expert analysis to expand into areas where SolarCity is
9  precluded from going as a matter of law, at considerable expense to the District, and would
10 potentially result in unnecessary motion practice over the scope of expert discovery and
11 motions in limine.
12     SolarCity evidently seeks to use the District's data to create its own pricing plan that
13 it will then argue presents an alternative showing that the District's business justifications
14 were pretextual.  But other potential pricing plans that SolarCity might have preferred are not
15 what this case is about.  SolarCity had an opportunity to propose alternative pricing plans
16 during the District's public ratemaking process—but it declined to do so, despite its active
17 participation in the proceedings before the District's Board (*see* Dkt. 39 # 91).  SolarCity
18 does not get to reinvent the wheel and argue that the District could have or should have
19 structured the E-27 plan in a different way.  Under the Court's October 27, 2015 Order,
20 SolarCity may examine whether the E-27 plan was enacted for a legitimate purpose, but that
21 inquiry rises and falls with the decision-making process itself—not by comparison to
22 alternatives that may be preferred by SolarCity or its experts.

## DISCOVERY IN DISPUTE

24     Taken as a whole and read literally, SolarCity's Second Set of Requests for
25 Production ("RFPs") seek almost every document maintained by the District regarding the
26 generation, transmission, and distribution of electricity.  (*See* Ex. 2, RFPs 1-16.)  The District
27 does not object to the production of the data relied upon in the ratemaking process and many
28 other relevant documents; indeed, it has already been producing these data and documents on

a rolling basis.[2]  Rather, in this motion, the District seeks protection only from SolarCity's following requests for data ("discovery in dispute"):

- Demand data: Separately for self-generation customers, Community Solar customers, and non-solar customers by rate class (*e.g.*, E-26, E-27, Community Solar, etc.), data showing demand for SRP-provided electricity (kW) by 15-minute interval for each day for at least three years and daily peak demand for each day for at least three years to the present. . . . Please provide data in all fields necessary to identify the requested information for each customer separately (e.g., customer id no. etc.) and each customer's stratum.

- Usage data: Separately for self-generation customers, Community Solar customers, and non-solar customers by rate class (*e.g.*, E-26, E-27, Community Solar, etc.), data showing usage of SRP-provided electricity (kWh) by 15-minute interval for each day for at least three years to the present. . . . Please provide data in all fields necessary to identify the requested information for each customer separately (e.g., customer id no. etc.) and each customer's stratum.

- Distributed generation data: For each self-generation customer, data showing generation of electricity (kWh) by 15-minute interval for each day for at least three years to the present. . . . Please provide data in all fields necessary to identify the requested information for each customer separately (e.g., customer id no. etc.) and each customer's rate class and stratum.

- Community Solar generation data: For each Community Solar generating facility, data showing generation of electricity (kWh) by 15-minute interval for each day for at least three years to the present. . . . Please provide fields necessary to identify the data for each generation facility separately.

(*See* Ex. 3, September 28, 2015 Letter w/o attachments, at pp. 4-5.)

---

[2] The District has produced scores of data files and is in the process of producing many more—including data related to cost of service, unbundled revenue analysis, meter and billing data, analysis of econometric data, and forecasting data.

1 For some perspective, the discovery in dispute would encompass some **90 billion rows of data** (78-95 million lines and 6 GBs of data per day for a three-year period), totaling more than **5 terabytes**.  That is a massive amount of material by any measure, and one that is entirely disproportionate to the claims in this case.

## ARGUMENT

Under Rules 26(c) and 26(b)(2)(C)(iii), the Court may issue a protective order for good cause to protect a party from undue burden or expense.  *See*, *e.g.*, *Klungvedt v. UNUM Group*, No. 2:12–cv–00651–JWS, 2013 WL 551473, at *2 (D. Ariz. Feb. 13, 2013).  Requests for irrelevant information are inherently unduly burdensome.  *See, e.g., Carrera v. First Am. Home Buyers Protection Co.*, No. 13cv1585–BAS (JLB), 2014 WL 3695403, at *1 (S.D. Cal. July 23, 2014); Rule 26(b)(2)(C)(iii) (court must limit discovery if it determines that "the proposed discovery is outside the scope permitted by Rule 26(b)(1).").  And while the discovery in dispute is overly broad under the prior language of Rule 26(b)(1), the recent revisions to Rule 26(b)(1)—effective December 1—emphasize that discovery must be "proportional to the needs of the case," and must be "relevant to a[] party's claim or defense."  Whether discovery is "calculated to lead the discovery of admissible evidence" is no longer the applicable test.  *Id.*  The revised version of Rule 1 likewise reinforces that courts and parties should administer the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding."

Here, the discovery in dispute is irrelevant to SolarCity's remaining claims, disproportionate to the relevant issues in the case, and inconsistent with resolving this matter in an efficient and inexpensive manner.

**I.    The District Is Producing Evidence Relevant To SolarCity's Remaining Claims.**

In opposing the District's motion to dismiss, SolarCity argued that it alleged an "independent monopolization theory, expressly asserted at ¶ 119(c) [of its Amended Complaint], under the Supreme Court's *Aspen Skiing* decision, 472 U.S. at 589, 602, 609-11 (1985)."  (Dkt. 58 at 31 n.29.)  It further argued that "*Aspen Skiing* provides an important exception to the no-duty-to-deal principle," and that courts may remedy this type of

- 4 -

anticompetitive conduct "by requiring the violator to deal with a would-be competitor." *Id.* The Court agreed with SolarCity, finding that "SolarCity's allegations are similar to those in *Aspen Skiing*," and that its "allegations plausibly allege anticompetitive conduct by an alleged monopolist." (Order at 21.)

SolarCity's "independent monopolization theory" is the only antitrust claim remaining in this case—and any antitrust-related discovery requests must be limited accordingly. The District is already producing the relevant data that the District's analysts, executives, and Board relied upon during the ratemaking process, and is further willing to produce data regarding E-27 customers' electricity demand and usage since April 1, 2015, the date the E-27 plan went into effect.[3] The District, however, objects to producing vast quantities—literally, terabytes—of data that reside in various databases that were never used during the ratemaking process, and thus did not inform the analysis of the decision-makers who designed and adopted the E-27 plan.

Under *Aspen Skiing* and the subsequent binding authority interpreting it, to establish anticompetitive conduct, SolarCity must prove, among other things, that the District terminated a voluntary, profitable, prior course of dealing with SolarCity that resulted in the loss of short-term profits.[4] *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004); *LiveUniverse, Inc. v. MySpace, Inc.*, 304 Fed. Appx. 554, 556-57 (9th Cir. 2008); *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1131-34 (9th Cir. 2004). If SolarCity proves a *prima facie* case under these requirements, the District then has the opportunity to demonstrate a legitimate, non-pretextual business reason for the adoption of the E-27 plan. Only if *no* legitimate reason exists for the District's "refusal to deal" may its conduct be deemed anticompetitive. *See Oahu Gas Service, Inc. v. Pacific Res., Inc.*, 838 F.2d 360, 368-69 (9th Cir. 1988) (holding that *a* business justification by a monopolist precludes Section 2 liability); *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d

---

[3] These data may be relevant to how the E-27 plan affected customers' demand and usage.
[4] This is not an exhaustive list of the elements of a Section 2 claim, but rather those elements that pertain to this motion.

1373, 1379 (9th Cir. 1992) (holding that, "even if the monopolist does refuse aid partially because it wishes to restrict competition, 'we determine antitrust liability by asking whether there was a legitimate business justification for the monopolist's conduct.'") (quoting *Image Tech. Service, Inc. v. Eastman Kodak Co.*, 903 F.2d 612, 620 (9th Cir. 1990)). As a result, even if SolarCity could show that the District could have achieved its goals with a different rate plan, such a showing would not establish that the District's business justifications were pretextual.

Every enterprise must price its products so it can cover its costs. This is true even for non-profit entities like the District, and the E-27 plan was an effort to do just that for distributed generation customers. While SolarCity bears the burden of proving that there were no legitimate business justifications for the District's actions, whether there were less restrictive means of accomplishing the District's business objectives is irrelevant. *See City of Anaheim*, 955 F.2d at 1379; *Image Technical Servs., Inc. v. Eastman Kodak Co.*, 903 F.2d 1195, 1213 (9th Cir. 1997) ("*Kodak III*"); *Image Tech.*, 903 F.2d at 620 ("[T]here is no least restrictive alternative requirement in the context of a Section 2 claim."). Instead, SolarCity must demonstrate that the District's business justification was invalid or not real, and that the only motivation for its conduct was an anticompetitive one. *See Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 914 F.2d 1256, 1259 (9th Cir. 1990) (documents indicating secondary anticompetitive motive insufficient to create a fact question of pretext). If that is the case, it will be evident from documents and data the analysts and decision-makers created or relied upon during the ratemaking process—not from the mountain of data that SolarCity seeks.

To that end, the documents that the District is producing consist of the materials provided to the District's Board and considered by the District's management in designing and recommending the E-27 plan. The District is producing thousands—and ultimately, likely tens of thousands—of internal emails and other documents created or received by District employees chosen by SolarCity, largely based on search terms proposed by SolarCity. The District is producing the data that was used during the ratemaking process,

- 6 -

including an estimated **500 gigabytes** of data that provide full insight into the underlying costs, demand, and revenues the District considered in designing the E-27 plan.  And the District is producing data about E-27 customers' electricity demand and usage since the E-27 plan went into effect.  This universe of documents is appropriately tailored to the claims that remain in this case.  *See, e.g.*, *Knapp v. Cate*, No. 1:08–cv–01779–AWI–BAM PC, 2012 WL 5309132, at *2 (E.D. Cal. Oct. 29, 2012) ("Plaintiff's requests that pertain to claims that have been dismissed from this action with prejudice are outside of the scope of discovery."); *Walker v. Ryan*, No. CV–10–1408–PHX–JWS (LOA), 2012 WL 1599984, at *2 (D. Ariz. May 7, 2012) (same).

Moreover, if during the course of discovery SolarCity requests additional categories of data, the District will consider any such additional requests and produce additional data that is reasonably targeted to the relevant issues in this case.  SolarCity's current requests for data, however, are excessively broad and not focused on its remaining claims.

## II.     SolarCity Seeks Irrelevant Data, Or, At Minimum, Data That Is Disproportionate To The Needs Of The Case

As the Court has already held, SolarCity's claim is not that the District's rates are unreasonable, but that "the District imposed the rates to exclude it from the market."  (Order at 25.)  The discovery in dispute is not targeted to that theory.  Rather, it appears to be directed at analyzing and proposing alternative rate plans—plans presumably that would be less restrictive or more "reasonable" in SolarCity's view.  The discovery in dispute therefore is not probative of whether "the District imposed the rates to exclude [SolarCity] from the market." *Id.*

As discussed above, the discovery in dispute has little or no bearing on whether the District terminated a voluntary, profitable, prior course of dealing with SolarCity that resulted in the loss of short-term profits.  Documents potentially relevant to the proper inquiry relate to the regulatory environment surrounding the District's prior course of dealing with respect to rooftop solar installations; the revenues and costs associated with serving distributed generation customers; and the history of the District's prior dealings with

1  SolarCity—all of which the District is producing or will produce.

2       By contrast, SolarCity's request for three years of demand, usage, distributed
3  generation, and community solar generation data, is designed to permit SolarCity and its
4  experts to generate alternative rate structures, which, as discussed above, are irrelevant and
5  would constitute impermissible "second guessing" of the District's Board and management
6  about how to best accomplish the District's legitimate business objectives.  *Kodak III*, 125
7  F.3d at 1213 (approving jury instruction that the jury could not "second guess whether
8  [defendant's] business judgment was wise or correct in retrospect").  Moreover, even if
9  potentially marginally relevant, the contemplated discovery of these massive amounts of data
10 is not proportional to resolving the issues in this case.  *See Guillen v. Owens*, No. CV-10-
11 226-PHX-JWS (LOA), 2011 WL 5882554, at *6 (D. Ariz. Nov. 23, 2011) (citing rules of
12 proportionality and denying burdensome discovery where "Plaintiff can support his [claim]
13 using other means").

14      At the November 24 Scheduling Conference, SolarCity also suggested that it needed
15 wide-ranging data beyond those the District relied upon in the rate-making process because
16 the District may have "cherry-picked" data to reach its desired result.  (*See* 11/24/15 Tr.
17 18:10-13.)  That statement, however, is baseless—and, even if it were true, the reality surely
18 would be reflected in other documents the District has agreed to produce.  In any event, such
19 speculation provides no basis for imposing the burden on the District that such discovery
20 would entail.

- 8 -

# CONCLUSION

The Federal Rules are to be construed and administered to secure "the just, speedy, and inexpensive determination" of each case, including this one. The discovery in dispute is contrary to that mandate, and risks taking this Court and the parties down irrelevant and expensive paths that will undoubtedly create unnecessary expert discovery and motion practice. The District will consider future targeted data requests from SolarCity in good faith, but respectfully asks that this Court enter a protective order precluding the discovery in dispute requested by SolarCity.

RESPECTFULLY SUBMITTED this 4th day of December, 2015.

STEPTOE & JOHNSON LLP
Paul K. Charlton
Karl M. Tilleman
201 East Washington Street, Suite 1600
Phoenix, AZ 85004
Telephone: (602) 257-5200
Facsimile: (602) 257-5299
pcharlton@steptoe.com
ktilleman@steptoe.com

/s/Christopher E. Babbitt
WILMER CUTLER PICKERING HALE AND DORR LLP
Molly S. Boast
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
molly.boast@wilmerhale.com

Christopher E. Babbitt
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663 6000
Facsimile: (202) 663 6363
christopher.babbitt@wilmerhale.com

Christopher T. Casamassima
350 South Grand Ave.
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400
chris.casamassima@wilmerhale.com

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Richard J. Pocke

BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
William A. Isaacson
Karen L. Dunn

BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Steven C. Holtzman
John F. Cove, Jr.
Kieran P. Ringgenberg
Sean P. Rodriguez

COPPERSMITH BROCKELMAN PLC
2800 North Central Avenue, Suite 1200
Phoenix, AZ 85004
Keith Beauchamp
Roopali H. Desai

                              /s/Christopher E. Babbitt