COPPERSMITH BROCKELMAN PLC
KEITH BEAUCHAMP (#012434)
ROOPALI H. DESAI (#024295)
2800 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone:  (602) 381-5490
kbeauchamp@cblawyers.com
rdesai@cblawyers.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM A. ISAACSON *(admitted pro hac vice)*
KAREN L. DUNN *(admitted pro hac vice)*
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone:  (202) 237-2727
wisaacson@bsfllp.com
kdunn@bsfllp.com

STEVEN C. HOLTZMAN *(admitted pro hac vice)*
JOHN F. COVE, JR. *(admitted pro hac vice)*
KIERAN P. RINGGENBERG *(admitted pro hac vice)*
SEAN P. RODRIGUEZ *(admitted pro hac vice)*
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
sholtzman@bsfllp.com
jcove@bsfllp.com
kringgenberg@bsfllp.com
srodriguez@bsfllp.com

*Attorneys for Plaintiff SolarCity Corporation*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SolarCity Corporation, | No.  2:15-CV-00374-DLR |
| Plaintiff, | **PLAINTIFF SOLARCITY** |
| vs. | **CORPORATION'S OPPOSITION TO DEFENDANT SALT RIVER** |
| Salt River Project Agricultural Improvement and Power District, | **AGRICULTURAL IMPROVEMENT AND POWER DISTRICT'S MOTION TO CERTIFY AN** |
| Defendant. | **INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)** |

1

# TABLE OF CONTENTS

2

INTRODUCTION ........................................................................................................ 1

3
LEGAL STANDARD ................................................................................................. 1

4
ARGUMENT .............................................................................................................. 2

5
I.    None Of The Questions Are Questions Of Law, Let Alone Controlling
Issues of Law ..................................................................................................... 2

6
    A.    State-action doctrine. ................................................................................ 2

7
    B.    Filed-rate doctrine. ................................................................................... 3

    C.    A.R.S. § 12-820.01. ................................................................................. 4

8
II.    There Is No Substantial Ground For A Difference Of Opinion ......................... 4

9
    A.    State-action doctrine. ................................................................................ 5

10
    B.    Filed-rate doctrine. ................................................................................... 6

    C.    A.R.S. § 12-820.01. ................................................................................. 7

11
III.    Resolution Of None Of The Questions Would Materially Advance The
Ultimate Litigation. ........................................................................................... 8

12
    A.    State-action doctrine. ................................................................................ 8

13
    B.    Filed-rate doctrine. ............................................................................... 10

14
    C.    A.R.S. § 12-820.01. ............................................................................. 10

15
IV.    There Is No Jurisdictional Issue. ..................................................................... 10

CONCLUSION ........................................................................................................ 11

16

17

18

19

20

21

22

23

24

25

26

27

28

1       SolarCity opposes Defendant Salt River Project Agricultural Improvement and

2   Power District ("SRP")'s motion to certify the Court's motion to dismiss order for

3   interlocutory review under 28 U.S.C. § 1292(b).  Dkt. No. 82 (hereafter "Motion" or

4   "Mot.").  SRP argues that three questions justify interlocutory review.  In large measure,

5   SRP's arguments for certification involve the same legal issues addressed at greater length

6   in SolarCity' concurrently filed opposition to SRP's motion to stay.   Dkt. No. 83

7   ("MTS").  SolarCity confines this brief to unique legal issues and arguments raised in the

8   certification context, and respectfully refers the Court to its concurrently filed opposition

9   to SRP's motion to stay ("O-MTS") when additional elaboration would be duplicative.

10   **INTRODUCTION**

11       In a tacit admission that its appeal was improperly noticed, SRP asks the Court to

12   certify the motion to dismiss order for appeal.  Dkt. No. 77 (hereafter the "MTD Order").

13   The certification statute is narrow and meant for extraordinary circumstances that do not

14   exist here.  SRP cannot meet its requirements for any of the questions on which it moves.

15       Indeed, appeal on two of those questions—the filed-rate doctrine and A.R.S. § 12-

16   820.01—are *irrelevant* to the litigation that will proceed before final judgment in this

17   Court because they relate to claims for damages, whereas SolarCity pursues only

18   injunctive relief pending an appeal of the MTD Order's holding on antitrust damages.

19   SolarCity's damages argument must await final judgment.  So must SRP's appeal.

20   **LEGAL STANDARD**

21       The certification procedure under 28 U.S.C. § 1292(b) is a "narrow exception to the

22   final judgment rule."  *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).  It is

23   meant for "exceptional circumstances."  *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026

24   (9th Cir. 1981), *aff'd sub nom. Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983).

25       Each of the statute's three requirements must be satisfied before the Court of

26   Appeals may exercise jurisdiction.  *Couch*, 611 F.3d at 633.  SRP bears the burden to show

27   that Section 1292(b)'s requirements are met.  *Id.*  The requirements are:  The order

28   addresses a question that (1) "involves a controlling question of law," (2) "as to which

1    there is substantial ground for difference of opinion," and (3) "an immediate appeal from

2    the order may materially advance the ultimate termination of the litigation."  28 U.S.C. §

3    1292(b).  Even then, the certification only permits the Court of Appeals the *discretion* to

4    take the appeal—a rare occurrence.  *See Ahrenholz v. Board of Trustees of the University*

5    *of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000) (*per curiam* for panel of Posner, Easterbrook,

6    and Wood, JJ.) (rare occurrence); 28 U.S.C. § 1292(b) (appellate discretion).

7          Notably absent from Section 1292(b) are considerations extrinsic to the litigation.

8    Policy issues such as "comity" with the state do not alter or lessen the statutory

9    requirements.  *Couch*, 611 F.3d at 634.  The analysis remains "focused on the statutory

10   requirements, not policy considerations which may or may not be furthered by

11   certification."  *Id.* at 635.

12                                **ARGUMENT**

13         None of SRP's grounds for appeal fulfill any of the three requirements of Section

14   1292(b), let alone all three of them, as is required for certification.

15   **I.    None Of The Questions Are Questions Of Law, Let Alone Controlling Issues of**
          **Law.**
16

17         "A question of law means a 'pure question of law,' not a mixed question of law and

18   fact or an application of law to a particular set of facts."  *Gonzales v. Schriro*, 2008 WL

19   2387330, at *1 (D. Ariz. June 10, 2008) (citing *Ahrenholz*, 219 F.3d at 675-77); *see also*

20   *Allen v. Conagra Foods, Inc.*, 2013 WL 6000456, at *3 (N.D. Cal. Nov. 12, 2013).   It

21   must be "one that 'the court of appeals could decide quickly and cleanly without having to

22   study the record.'"  *Gonzales*, 2008 WL 2387330, at *1 (quoting *Ahrenholz*, 219 F.3d at

23   677).  Each of SRP's posited questions involves mixed fact issues.  In addition, two of

24   them, A.R.S. § 12-820.01 and the filed-rate doctrine, involve issues that are not remotely

25   controlling (even if they were pure legal issues, which they are not), because they relate

26   only to damages claims, which are not presently at issue in this litigation.

27         **A.    State-action doctrine.**

28         SRP argues that the "clear articulation" prong of the state-action doctrine is a

1    matter of law that must be resolved at the pleading stage.  Mot. at 6.  SRP is wrong.  As

2    the Court found, the "clear articulation" prong may not be appropriately resolved on the

3    pleadings when, as here, SRP failed to identify any clear statement from the state that

4    undermines the well-pleaded allegations.  MTD Order, at 25.

5         The Supreme Court case SRP cites, *Hoover v. Ronwin*, 466 U.S. 558 (1984),

6    illustrates the point.  In *Hoover*, the district court dismissed a complaint with prejudice on

7    state-action grounds and the Ninth Circuit reversed, holding that the complaint raised a

8    fact issue.  466 U.S. at 566-67.  The Supreme Court began by recognizing, "Closer

9    analysis is required when the activity at issue is not directly that of a legislature or

10   supreme court" because the legislature and supreme court are the "sovereign itself."  *Id.* at

11   568-69, 574.  However, the action in *Hoover* was the state supreme court's exercise of

12   authority over lawyering.  *Id.* at 570-71.  That was an "incontrovertible fact" on which

13   "the record [was] explicit."  *Id.* at 581-82.

14        If SRP's position were correct, the Supreme Court's majority unnecessarily spilled

15   ink in *Hoover.*  There was no reason for it to counter the dissent's argument by pointing

16   out that it had identified an "explicit" and "incontrovertible fact" that made the question

17   resolvable by the Supreme Court after an appeal from final judgment.  Nor need it have

18   opened with a caution about "closer analysis" when the action is taken by an entity that is

19   not a traditional sovereign.  As SolarCity explains below and in its opposition to SRP's

20   stay motion, even if a court were to find that SRP is a public entity for present purposes as

21   a matter of fact or law, it would still not be a *sovereign* public actor.

22        **B.    Filed-rate doctrine.**

23        SRP cites no case holding that the filed-rate doctrine is a matter of pure law.  The

24   Ninth Circuit has explained that "facts" have "guided" or "prompted" its decisions under

25   the doctrine.  *County of Stanislaus v. Pac. Gas and Elec. Co.*, 114 F.3d 858, 865-66 (9th

26   Cir. 1997).  The Circuit has elaborated that whether the filed-rate doctrine applies may

27   turn on the "conduct" that is challenged.  *Id.* at 866.  None of those statements make sense

28   if the filed-rate doctrine is necessarily a question of pure law.

Moreover, even if the filed-rate doctrine issue on which SRP appeals were a pure matter of law (which it is not), that issue could not be controlling in this case. The Supreme Court and Ninth Circuit have both made clear that the filed-rate doctrine is no bar to the antitrust relief SolarCity currently seeks – specifically, injunctive relief only – before final judgment. *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.,* 476 U.S. 409, 418 n.22 (1986) (filed rate doctrine prevents recovery of damages based on tariff but "does not dispose of . . . relief by way of injunction" against repeating the antitrust violation underlying the tariff's competitive harm); *In re NOS Communications*, 495 F.3d 1052, 1060-61 (9th Cir. 2007) (filed-rate doctrine may prevent "damages," but other relief, including "injunctive relief" remains unaffected).[1]  Nothing about SRP's appeal as to the filed-rate doctrine would control *anything* about the currently-pending litigation.

### C.    A.R.S. § 12-820.01.

Section 12-820.01 "immunity is related to a defendant's status," which means "usually there are limited factual determinations necessary to resolve the issue." *Link v. Pima County*, 193 Ariz. 336, 341 (Ct. App. 1998).  It may even require resolution of related fact issues "by the jury as in qualified immunity cases." *Id.*  The Court determined there were factual issues, consistent with the statute.

Moreover, as with the filed-rate doctrine, A.R.S. § 12-820.01 only affects claims for damages. *AlliedSignal, Inc. v. City of Phoenix*, 182 F.3d 692, 697 (9th Cir. 1999) (citing *Zeigler v. Kirschner*, 162 Ariz. 77, 84 (Ct. App. 1989)).  Accordingly, even if SRP's appeal under the statute related to a pure question of law (which it does not), it does not relate to a *controlling* issue in the litigation.

### II.    There Is No Substantial Ground For A Difference Of Opinion.

The next requirement is a "substantial ground for difference of opinion," which courts determine by examining "to what extent the controlling law is unclear." *Couch*,

---

[1]    SRP says that the Court would need to fix a rate to remedy the competitive harm. Mot. at 7-8.  That is premature speculation, and it is false.  A variety of injunctions can remedy competitive harms without fixing rates.  For example, SRP could be prevented from discriminating against customers that use competitive technology or competing providers.

611 F.3d at 633.  One "party's strong disagreement with the Court's ruling is not sufficient."  *Id.* (quotation omitted).  Nor is "the mere presence of a disputed issue that is a question of first impression."  *Id.* at 634 (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)).  A "sufficient number of conflicting and contradictory opinions" may show substantial grounds for disagreement, though the opinions should "provide the factual context" to make "meaningful analysis and comparison possible."  *Id.*

### A.    State-action doctrine.

The question SRP seeks to certify on state action is about the first requirement, clear articulation.  Mot. at 3, 6.  SRP does not argue that the Court should certify the second showing that SRP must make to use the state-action doctrine—that the active supervision prong either does not apply or is fulfilled if it does.  *Id.*

Nearly all of SRP's "clear articulation" arguments to date have been based on the Arizona Electric Power Competition Act ("EPCA").  Ariz. Sess. Laws. Ch. 209 (1998), codified at A.R.S. §§ 30-801 *et seq.* & 40-202 *et seq.*, *et al.*  As SolarCity pointed out in the motion to dismiss briefing, the Eleventh Circuit has performed a state-action analysis of a statute similar to, and of the same vintage as, 1998's EPCA.  *Kay Elec. Coop. v. City of Newkirk*, 647 F.3d 1039, 1045-47 (10th Cir. 2011).  The Eleventh Circuit's analysis demonstrates that SRP cannot succeed on clear articulation.

The defendants in *Kay Electric* were more than a business enterprise; they were "the City of Newkirk, Oklahoma" and its "Municipal Authority, a public trust."  *Id.* at 1039.  The statutory scheme was Oklahoma's 1997 "Electric Restructuring Act."  *Id.* at 1045.  The Act created a "task force" and framework to "provide greater competition" and "more efficient regulation" by opening traditional landline providers to a limited form of retail competition similar to EPCA.  *Id.*  Like EPCA, the regime was in disuse.  *Id.*  The Eleventh Circuit found in the Restructuring Act a policy to promote competition and consistency with the federal antitrust laws.  *Id.*

In part, that came from *Kay Electric*'s recognition that a "clearly articulated and affirmatively expressed" policy to displace competition means what it says:  "Put simply,

1    simple permission to play in a market doesn't foreseeably entail permission to roughhouse

2    in that market unlawfully." *Id.* at 1044.  The Supreme Court cited *Kay Electric* with

3    approval—quoting those same words—on the state action doctrine two years later.  *F.T.C*

4    *v. Phoebe Putney Health Sys., Inc.*, 133 S. Ct. 1003, 1013 (2013).

5        There is neither substantial ground to argue for a different outcome under EPCA

6    nor any ambiguity in controlling law.

7        **B.    Filed-rate doctrine.**

8        There is no substantial ground for a difference of opinion as to whether the filed-

9    rate doctrine can apply in this case.

10       The Court held that this case does not come within the filed-rate doctrine because

11   SolarCity has not challenged the reasonableness of a regulatory rate that it pays.  MTD

12   Order at 25.  That is true for four reasons—any one of which would suffice, but none of

13   which is subject to dispute.

14       *First*, the filed-rate doctrine only applies to suits by customers that are subject to

15   the rate.  *Cost Mgmt.*, 99 F.3d at 945-48.  As the Court recognized, SolarCity alleges SRP

16   "imposed the rates to exclude [SolarCity] from the market."  MTD Order at 25.  *Second*,

17   the doctrine only applies when a tariff is filed with a regulator.  *Knevelbaard Dairies v.*

18   *Kraft Foods, Inc.*, 232 F.3d 979, 992 (9th Cir. 2000); *see also MCI Telecom. Corp. v.*

19   *AT&T,* 512 U.S. 218, 234 (1994) (doctrine protects "regulated firms" under some

20   circumstances).  As the Court recognized, the filed-rate doctrine's predicate is a tariff filed

21   with a "regulatory agency."  MTD Order at 25 (citing *Ark. La. Gas Co. v. Hall*, 453 U.S.

22   571, 577 (1981)).  *Third*, even if the SEPPs were a tariff (they are not), SRP filed them

23   with no one but itself.  *Fourth*, the SEPPs impose penalties so severe they are not meant to

24   be paid at all, but are meant to prevent customers from defecting to SRP's solar

25   competition, thereby excluding SolarCity.

26       As for whether the filed-rate doctrine applies under Arizona antitrust law, SRP cites

27   two federal court decisions that it says "assumed" the doctrine applied to state laws,[2] and

---

[2]    Actually, neither case assumed anything about Arizona substantive law.  Both cases
(footnote continued on next page)

1  language from a state case about whether a tariff was enforceable under the Arizona

2  constitution (not a challenge that implicated the filed-rate doctrine or antitrust).  Mot. at 8.

3  In fact, the Arizona courts have done nothing but express skepticism about the filed-rate

4  doctrine.  *Qwest Corp. v. Kelly*, 204 Ariz. 25, 36 (App. 2002).[3]  Nothing about controlling

5  law, either federal or state, is unclear.

6      **C.**    **A.R.S. § 12-820.01.**

7        There is no substantial ground for a difference of opinion under A.R.S. § 12-

8  820.01.  As elaborated in the concurrently filed opposition to SRP's motion to stay, SRP is

9  not entitled to immunity—either under the common-law immunity the statute had revived

10  or under the statute wrongly construed to expand that common-law immunity—for its

11  electric functions, which are proprietary.  O-MTS, Background III.B.

12        SRP says the Court's decision to defer a final determination on A.R.S. § 12-820.01

13  "conflicts" with state courts.  Mot. at 6.  But the state courts are clear that A.R.S. § 12-

14  820.01 may present embedded factual issues, and that too is sufficient to reject SRP's

15  argument.  *Link*, 193 Ariz. at 341.

16        SRP analogizes to the regulatory proceedings of the Arizona Corporation

17  Commission, "a separate, popularly-elected branch of state government" that exercises

18  wide range of judicial and legislative powers, *Arizona Corporation Commission v. State*

19  *ex rel. Woods*, 171 Ariz. 286, 290 (1992), as well as a California city and a Washington

20  involved federal law:  In *McLeodUSA,* the tariff was filed with the ACC pursuant to a
**federal** statute.  *McLeodUSA Telecomms. Servs., Inc. v. Arizona Corp. Comm'n*, 655 F.

21  Supp. 2d 1003, 1018-19 (D. Ariz. 2009).  In *Sun City,* the claims arose under **federal** law.
*Sun City Taxpayers' Assoc. v. Citizens Utils. Co.*, 847 F. Supp. 281, 283 (D. Conn. 1994).

22  Both courts therefore applied the federal filed-rate doctrine.  *Knevelbaard*, 232 F.3d at 992
(discussing circumstances under which it is appropriate to apply the federal filed-rate

23  doctrine rather than looking to substantive state law).  Nor, contrary to SRP's
representation, did *Sun City* hold that the "Arizona constitution codifies filed rate

24  doctrine."  Mot at 8.  *Sun City* observed that the ACC was the type of powerful regulator to
which the doctrine is meant to apply.  847 F. Supp. 2d at 289.

25  [3]    The U.S. Supreme Court has suggested it has doubts about the doctrine, and the
Ninth Circuit has likewise recognized its infirmities and declined to expand it.  *Cost*

26  *Mgmt.*, 99 F.3d at 944-47 (discussing *Square D. Co. v. Niagara Frontier Tariff Bureau*,
476 U.S. 409 (1986)); *see also Knevelbaard Dairies*, 232 F.3d 992 ("Although the

27  doctrine has been questioned by many including the Supreme Court itself, it lives on to a
limited extent").  There is no substantial ground to believe those considered opinions have

28  reversed.

1    municipality, both of which were substate entities exercising a wide array of sovereign

2    powers over the public that elects them.  Mot. at 6-7.  By contrast, SRP's retail electric

3    operations are a "business enterprise" designed to promote private interests that control it,

4    at the expense of the majority of electric customers who have no right to vote.  *Ball v.*

5    *James*, 451 U.S. 355, 358-59 (1981); *Niedner v. Salt River Project Agr. Imp. & Pwr. Dist.*,

6    121 Ariz. 331, 331 (1979); *Local 266, Int'l Bd. of Elec. Workers v. Salt River Project Agr.*

7    *Imp. & Pwr. Dist.*, 78 Ariz. 30, 44 (1954).  Under these circumstances there is no lack of

8    clarity in controlling law.

9    **III.    Resolution Of None Of The Questions Would Materially Advance The**
     **Ultimate Litigation.**

10

11           Section 1292(b) requires that that a certified legal question "could materially affect

12   the outcome of litigation in the district court."  *In re Cement Antitrust*, 673 F.2d at 1026.

13   Even if SRP were right about the questions it posits, resolving those questions in SRP's

14   favor would do nothing at all to change the scope of litigation or discovery.

15           **A.    State-action doctrine.**

16           Again, the state-action question SRP identifies for certification concerns the

17   doctrine's first requirement, "clear articulation."  Mot. at 3, 6.  This question would not

18   materially advance anything because SRP must still make a factual showing on "active

19   supervision."

20           SRP suggests in the Motion's introduction that "clear articulation" does not matter

21   because state law denominates it as a "political subdivision."  Mot. at 3.  The Supreme

22   Court earlier this year renounced any such standard.  *N.C. State Board of Dental*

23   *Examiners v. F.T.C.*, 135 S. Ct. 1101 (2015).  If a "***nonsovereign***" state entity has features

24   suggesting it will "further purely parochial public interests at the expense of more

25   overriding state goals," then it must show it is supervised by a sovereign.  *Id.* at 1112

26   (emphasis added).  In this way, the state-action doctrine balances respect for the states'

27   police powers against the federal interests of free and open competition from out-of-state

28   competitors.  *See id.* at 1112-14.

1    Sovereign entities have hallmarks, such as exercising a "wide range of
2    governmental powers across different economic spheres, substantially reducing the risk"
3    of pursuing "private interests while regulating any single field." *Id.* at 1113.  By contrast,
4    entities are likely to be nonsovereign and require active supervision when they are
5    controlled by private interests that have a stake in the market. *Id.* at 1112-13.

6    The Supreme Court, the Ninth Circuit, and the Arizona Supreme Court have
7    consistently explained why SRP is not sovereign:  It has limited powers, and is
8    fundamentally a "business enterprise." *Ball*, 451 U.S. at 358-59, 367-70; *Niedner*, 121
9    Ariz. at 331; *Local 266* at 44.  In a case against SRP, the Ninth Circuit has concluded that
10   Arizona "never intended to grant irrigation districts [such as SRP] governmental powers
11   on a par with cities, counties, or the state itself." *Gorenc v. Salt River Project Agr. Imp. &*
12   *Pwr. Dist.*, 869 F.2d 503, 507 (9th Cir. 1989).  SRP is controlled by private interests that
13   benefit from its conduct.  SRP is electorally accountable only to a subset (one-third) of its
14   electric customers.  Am. Compl. ¶ 32.  This subset benefits from the profits taken from the
15   unrepresented two-thirds.  *Local 266*, 78 Ariz. at 44 (1954).

16   Accordingly, SRP must show active supervision, which is "inappropriately
17   resolved on a motion to dismiss." *Cost Mgmt.*, 99 F.3d at 942-43.  There can be no
18   difference of opinion; since the February 2015 *N.C. State Board* decision, SRP's
19   arguments are outmoded.[4]  Indeed, this is a much clearer case than *N.C. State Board* for

---

[4]    *Cf. Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 287 (2d. Cir. 2015) (illegality exists "if—whether motivated by rent-seeking or by libertarian ideals—state action, though rational, violates the dormant Commerce Clause, or if a state licensing board that is insufficiently controlled by the state creates a monopoly in violation of the Sherman Act" (citing *N.C. State Board*)); *Rivera-Nazario v. Corporacion del Fondo del Seguro del Estado*, 2015 WL 5254417, *7 (D.P.R. Sept. 9, 2015) ("Up until recently, it was unclear whether formal state agencies and political subdivisions were subject to *Midcal's* "active state supervision" requirement."; "Earlier this year, however, the Supreme Court clarified that its holding in *Phoebe Putney*, was premised on the fact that the "need for supervision turns not on the formal designation given by States to regulators but on the risk that active market participants will pursue private interests in restraining trade"); *Patel v. Texas Dep't of Licensing and Regulation*, 469 S.W.3d 69, 107-08 (Tex. 2015) (Willett, Lehrmann, & Devine, J.J., concurring) (lauding *N.C. State* for recognizing that "state licensing boards prone to regulatory capture deserved no immunity for Sherman Act abuses," a welcome clarification because under prior law it was assumed such board "were sanctioned by the state" and need only meet the clear articulation test).

1    another factual reason:  The N.C. State Board had a duty to "create, administer, and

2    enforce" a licensing scheme and was granted "broad authority" to license the practice of

3    dentistry—that is, regulatory powers over its competitors.  135 S. Ct. at 1104, 1107.  SRP

4    lacks the power to control SolarCity's business through a licensing regime.

5        For these reasons, the state-action question on which SRP seeks certification (clear

6    articulation) cannot determine whether the state-action doctrine would apply and can have

7    no effect on the pending litigation.

8        **B.    Filed-rate doctrine.**

9        As noted above, the filed-rate doctrine applies only to claims for *damages*.

10   Damages are not at issue in this case unless and until SolarCity has the opportunity for

11   appeal the MTD Order's damages holding after final judgment.  Accordingly, no filed-rate

12   doctrine question could affect this Court's proceedings before final judgment.

13       **C.    A.R.S. § 12-820.01.**

14       Similarly, A.R.S. § 12-820.01 only affects damages and therefore cannot affect the

15   scope of litigation before final judgment.  *AlliedSignal*, 182 F.3d at 697 (citing *Zeigler v.*

16   *Kirschner*, 162 Ariz. 77, 84 (Ct. App. 1989)).

17   **IV.    There Is No Jurisdictional Issue.**

18       SRP ends the Motion with a version of the jurisdictional argument from its motion

19   to stay.  Mot. at 9.  If the MTD Order were properly appealable (which it is not), then the

20   Court would not be able to alter the decision on the questions at issue in the MTD Order

21   while the appeal was pending.  O-MTS, Argument I.

22       The cases SRP cites in its Motion are consistent with those rules.  Mot. at 9 (citing

23   *Ret. Bd. of the Policeman's Annuity & Benefits Fund of Chi. v. Bank of N.Y. Mellon*, 775

24   F.3d 154, 159 n.4 (2d Cir. 2014) (after Court of Appeals took jurisdiction under 1292(b),

25   no jurisdiction to perform an action that would require the district court "to reconsider its

26   holding" on the issue appealed); *Karsjens v. Jesson*, 2015 WL 1893191 at *3 (D. Minn.

27   Apr. 24, 2015) (indicative ruling where the Court's intended ruling would modify the

28   appealed order to moot interlocutory appeal and divest Court of Appeals of jurisdiction)).

1

**CONCLUSION**

2          Nothing about the issues which SRP seeks to appeal warrants certification of this

3   matter.  Under the circumstances, SolarCity is entitled to litigate this case, obtain the relief

4   that it and its consumers deserve, and get back to business.  SRP must not be permitted to

5   continue excluding competition for years as the case goes back and forth between this

6   Court and the Court of Appeals.

7          The District's motion should be denied.

8

9   Dated:  December 7, 2015                    Respectfully submitted,

10                                              BOIES, SCHILLER & FLEXNER LLP

11
                                               By:  s/Steven C. Holtzman
12                                                   Steven C. Holtzman

13                                             *Attorneys for Plaintiff SolarCity Corporation*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on December 7, 2015, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

WILMER CUTLER PICKERING HALE & DORR LLP
Molly S. Boast (*admitted pro hac vice*)

6

7 World Trade Center
250 Greenwich Street

7

New York, NY 10007

8

9

Christopher E. Babbitt (*admitted pro hac vice*)
1875 Pennsylvania Ave. NW

10

Washington, DC 20006

11

350 South Grand Ave.

12

Los Angeles, CA 90071
Christopher T. Casamassina (*admitted pro hac vice*)

13

14

STEPTOE & JOHNSON LLP
Paul K. Charlton (012449)

15

Karl M. Tilleman (013435)
Quintin Cushner (027303)

16

Jason M. Porter (027475)

17

201 East Washington Street, Suite 1600
Phoenix, Arizona 85004-2382

18

19

20

s/Steven C. Holtzman

21

Steven C. Holtzman

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE