COPPERSMITH BROCKELMAN PLC
KEITH BEAUCHAMP (#012434)
ROOPALI H. DESAI (#024295)
2800 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 381-5490
kbeauchamp@cblawyers.com
rdesai@cblawyers.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM A. ISAACSON *(admitted pro hac vice)*
KAREN L. DUNN *(admitted pro hac vice)*
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
wisaacson@bsfllp.com
kdunn@bsfllp.com

STEVEN C. HOLTZMAN *(admitted pro hac vice)*
JOHN F. COVE, JR. *(admitted pro hac vice)*
KIERAN P. RINGGENBERG *(admitted pro hac vice)*
SEAN P. RODRIGUEZ *(admitted pro hac vice)*
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
sholtzman@bsfllp.com
jcove@bsfllp.com
kringgenberg@bsfllp.com
srodriguez@bsfllp.com

*Attorneys for Plaintiff SolarCity Corporation*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SolarCity Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Salt River Project Agricultural Improvement and Power District,<br><br>Defendant. | No. 2:15-CV-00374-DLR<br><br>**PLAINTIFF SOLARCITY CORPORATION'S OPPOSITION TO DEFENDANT SALT RIVER AGRICULTURAL IMPROVEMENT AND POWER DISTRICT'S MOTION TO STAY DURING PURPORTED APPEAL** |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARDS .................................................................................................. 2

I.    Jurisdictional Effects Of A Notice Of Interlocutory Appeal ................................ 2

II.    Requirements For A Stay ..................................................................................... 3

BACKGROUND ............................................................................................................ 3

I.    SRP Is A Business Enterprise, Not A Sovereign ................................................. 4

II.    Arizona Law And Policy Endorses Antitrust And Tort Liability For SRP. ........ 6

III.    The Defenses On Which SRP Attempts To Appeal. ........................................... 7

    A.    State-Action Doctrine. ................................................................................ 7

    B.    A.R.S. § 12-820.01. .................................................................................... 7

ARGUMENT ................................................................................................................... 8

I.    There Is No Jurisdictional Issue. .......................................................................... 8

II.    SRP's Notice Of Appeal Is A Nullity That Can Have No Jurisdictional Effect Or Provide SRP An Opportunity To Suceed On The Merits. ..................... 9

    A.    The Court's MTD Decision Did Not Conclusively Determine The Disputed Questions. ................................................................................. 10

    B.    The MTD Decision Does Not Resolve An Important Issue Completely Separate From the Merits. ..................................................... 11

        1.    The Decision Does Not Resolve An "Important" Issue. ................ 11

        2.    The Issues Addressed By The MTD Decision Are Not Completely Separate From The Merits. ............................................ 13

    C.    The Issues Are Not Effectively Unreviewable After Final Judgment. ...... 13

III.    No Discretionary Stay Is Warranted. ................................................................. 15

    A.    SRP Cannot Succeed On The Merits. ...................................................... 15

    B.    SRP Identifies No Irreparable Harm. ....................................................... 16

    C.    SRP's Conduct Irreparably Harms SolarCity, Consumers, And The Market Every Day This Case Is Delayed. ................................................. 16

    D.    SRP Can Identify No Public Interest To Support Delay. ......................... 17

SolarCity opposes Defendant Salt River Project Agricultural Improvement and Power District ("SRP")'s latest attempt to delay this case. Dkt. No. 83 (hereafter "Motion" or "Mot."). SolarCity is out of business in SRP's territory as a direct and intended result of SRP's misconduct. SolarCity, competition, and consumers are irreparably harmed every day this case is pending. SRP's ill-fated attempt to appeal provides no basis to interrupt the normal pretrial process.

## INTRODUCTION

SRP's motion to dismiss included arguments on the federal antitrust state-action doctrine and the state-law immunity provisions of Arizona Revised Statute § 12-820.01. Applying well established law, this Court denied those portions of SRP's motion because the complaint's allegations raised fact disputes. Dkt. No. 77 (hereafter the "MTD Order"), at 23-25. SRP has noticed an appeal of that non-final disposition. Dkt. No. 81. SRP now argues that this case cannot move forward pending appeal and, alternatively, seeks a discretionary stay pending appeal. Mot. at 1-2.

*First*, SRP acknowledges that its attempted interlocutory appeal is unprecedented in this Circuit, and analogizes to true "immunities from suit," such as qualified immunity, to incorrectly argue that its notice of appeal divests this Court of jurisdiction to proceed. Appealing the type of immunity SRP incorrectly invokes may prevent a ***trial*** on the issues appealed, but it does not (1) affect the Court's jurisdiction over discovery and other pretrial proceedings or (2) prevent a trial on injunctive relief. Moreover, even true immunities from suit do not permit an appeal from *fact-based* orders such as the MTD Order.

*Second,* the defenses on which SRP seeks to appeal, even if they can be called "immunities," are not analogous at all. The defenses SRP asserts do not protect rights or interests nearly as weighty as those protected by such true immunities from suit as qualified immunity and Eleventh Amendment immunity.

*Third*, SRP's request for a discretionary stay fails because SRP cannot show that its appeal has a strong likelihood of success on the merits, or that proceeding with discovery pending appeal would cause irreparable harm, injury to interested parties, or the public

interest. Indeed, whereas SRP can point to no irreparable harm of its own or any serious policy or public interest that supports its desire to be rescued from the ordinary burdens of discovery, staying the case would enable SRP to further cement its monopoly position—including by itself selling solar-generated power to consumers—thereby irreparably injuring SolarCity, consumers, and the competitive process.

SolarCity will seek quick disposition of SRP's meritless appeal. Meanwhile, SRP's motion to stay should be denied.

## LEGAL STANDARDS

Interlocutory appeals disrupt the ordinary judicial process, create unnecessary burdens on the courts, and delay justice. They "are the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995). The specific exception SRP purports to invoke is the collateral-order doctrine. It is "narrow" and has "stringent" requirements. *Will v. Hallock*, 546 U.S. 345, 349-50 (2006). To apply, the appealed order must (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) "be effectively unreviewable on appeal from a final judgment." *Id.* The first requirement considers the specific decision, while the second and third are analyzed with respect to the "entire class of relevant orders." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108-09 (2009).

### I. Jurisdictional Effects Of A Notice Of Interlocutory Appeal

It "is firmly established that an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the case." *Plotkin v. Pacific Tel. and Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982); F.J.C., Manual for Complex Litigation (4th ed. 2004), § 15.12 ("Notwithstanding the pendency of an interlocutory appeal, the litigation usually proceeds as scheduled through discovery and other pretrial steps toward trial").

While the district court generally loses jurisdiction on the issue appealed, it otherwise remains free to move "the case along consistent with its view of the case" and reach decisions on the merits. *Britton v. Co-Op Banking Group*, 916 F.2d 1405, 1412 (9th

Cir. 1990). This makes sense because only issues that are "completely separate" from the merits permit appeal under the collateral-order doctrine. *Will*, 546 U.S. at 349.

Interlocutory appeal on a narrow type of immunity prevents the court from holding *trial* pending appeal. *Chuman v. Wright*, 960 F.2d 104, 105 (1992). That type of immunity is not present here, but even if it were, appeal on such immunities does not stop discovery or other pre-trial proceedings. *Donahoe v. Arpaio*, 2012 WL 2063455, at *3 (D. Ariz. June 7, 2012) (discovery proceeds pending interlocutory appeal on absolute immunity); *Castaneda v. Molinar*, 2008 WL 9449576, at *1 (C.D. Cal. May 20, 2008) (discovery proceeds pending interlocutory appeal on absolute immunity).

## II.   Requirements For A Stay

Alternatively, if interlocutory appeal is available and properly noticed, the appellant may seek a stay of proceedings in the district court pending appeal. A "stay is not a matter of right, even if irreparable injury might otherwise result," but an exercise of judicial discretion "dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting precedents). SRP "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34. The Court's analysis considers factors similar to those required for a preliminary injunction:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 566 U.S. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

## BACKGROUND

SRP's arguments about the effects of its notice of appeal either rest on the premise that it is a sovereign, or analogize its defenses to true immunities at the heart of our system of government. This section reviews the nature of SRP as a business enterprise (not a sovereign), and the defenses on which it relies.

## I.     SRP Is A Business Enterprise, Not A Sovereign

SRP was created in 1937 to allow a group of landholders to issue tax-free bonds and pass the revenue to a private corporation they set up. *Ball v. James*, 451 U.S. 355, 358-59 (1981); *Reichenberger v. Salt River Project Agr. Imp. & Pwr. Dist.*, 50 Ariz. 144, 151-52 (1937). Then and today, only landholders in SRP's original territory vote for Board and Council members (who themselves must be landowners in the original territory) with the votes counted proportionate to their landholdings. A.R.S. §§ 48-2309(A), 48-2383, 48-2363(A). The public justification was financing irrigation. *Ball*, 451 U.S. at 368.

SRP's water-related functions may have some governmental purpose, but SRP later expanded to selling retail electricity to customers who have no right to vote in SRP elections and do not receive SRP irrigation services. *Ball*, 451 U.S. at 358. SRP passes along profits to irrigation users who elect and control it, just like any other for-profit enterprise. *Ball*, 451 U.S. at 369 n.16. Today, about one third of the District's electric customers (landholders or not) have no voting rights, because they do not own land within the District's original geographic area. Am. Compl. ¶ 32.

The law has always regarded SRP's retail electric operations as a private "business enterprise," in which SRP takes "profits from the sale of electricity" and uses them "to defray the expense in irrigating these private lands for personal profit." *Local 266, Int'l Bd. of Elec. Workers v. Salt River Project Agr. Imp. & Pwr. Dist.*, 78 Ariz. 30, 44 (1954). As the U.S. Supreme Court has explained, SRP and other irrigation districts "remain essentially business enterprises, created by and chiefly benefitting a specific group of landowners." *Ball*, 451 U.S. at 368; *see also Niedner v. Salt River Project Agr. Imp. & Pwr. Dist.*, 121 Ariz. 331, 331 (1979) ("inherent characteristics of the District as a business corporation"). And SRP's relationship with its electric customers "is essentially that between consumers and a business enterprise from which they buy." *Id.* at 370.

Consistent with this legal framework, SRP conducts its retail electric business in the private interests of its governors and management. High-intensity water users—particularly large agricultural interests—have durably captured a majority of the District's

Board, Am. Compl. ¶ 34, which runs the business at the expense of un- and underrepresented customers. *See Ball*, 451 U.S. at 359-60. Indeed, SRP imposes supracompetitive electricity prices to generate profits that subsidize water and support the private economic interests of the majority of the Board. Last year, the District transferred as much as $100 million in electric profits to these private interests. *Id.* ¶¶ 21-35.

The District is not considered a government actor in a variety of federal and state contexts. *E.g.*, *Ball*, 451 U.S. at 368-72 (SRP's "nominal public character" does not make it subject to Equal Protection Clause); *Gorenc*, 869 F.2d at 504 (SRP's conduct is not "state action" for constitutional due process; SRP's conduct is not "under color of state law" for § 1983); *Local 266*, 78 Ariz. at 42-44 (SRP's employees are not "agents of government" or "public employees" in labor relations); *see also Maricopa Cnty. Mun. Water Conservation Dist. No. 1 v. La Prade*, 45 Ariz. 61, 76 (1935) (districts organized under the title enabling SRP have "no political or governmental purposes or functions" and are granted limited authority to benefit landholders through water-related services; addressing title subsequently renumbered to title 48, Ariz. Sess. Laws Ch. 190 § 18 (1985)). State law draws a bright line: SRP's retail electric operations are "proprietary"— *i.e.*, non-governmental—activities. *City of Mesa v. Salt River Proj. Agr. Imp. and Pwr. Dist.*, 92 Ariz. 91 (1962).

All of the above reflects SRP's limited public purpose and its lack of sovereign powers. *Ball*, 451 U.S. at 366 (SRP "cannot impose ad valorem property taxes or sales taxes," it "cannot enact any laws governing the conduct of citizens, nor does it administer such normal functions of government as the maintenance of streets, the operation of schools, or sanitation, health, or welfare services"); *see also id.* at 368-69 (electricity "not a traditional element of governmental sovereignty" and merely incidental to water operations); *Niedner v. Salt River Project Agr. Imp. & Pwr. Dist.*, 121 Ariz. 331, 331 (1979) ("The District's powers as a political subdivision are limited to the purposes justifying its political existence and the provisions of Art. 13, s 7 do not alter the inherent characteristics of the District as a business corporation with attributes of sovereignty which

are only incidental . . . ." (internal quotations omitted)). Arizona "never intended to grant [SRP] governmental powers on a par with cities, counties, or the state itself." *Gorenc*, 869 F.2d at 507. This critical fact fundamentally undermines SRP's core arguments for a stay.

## II. Arizona Law And Policy Endorses Antitrust And Tort Liability For SRP.

The Arizona Legislature has confirmed that SRP is intended to be subject to state antitrust law. In 1998, the Legislature confirmed a policy of electric competition by enacting the Electric Power Competition Act (EPCA), Ariz. Sess. Laws. Ch. 209 (1998), codified at A.R.S. §§ 30-801 *et seq.* & 40-202 *et seq.*, *et al.* Among other things, EPCA confirmed that "public power entities" are intended to be subject to the state antitrust laws by providing that nothing in EPCA was intended to shield public power entities from such liability. A.R.S. § 30-813. The provision would be surplusage if, as SRP asserts, state law articulates a policy to displace competition and create "immunity" from antitrust law.

Arizona law also endorses tort liability for SRP. With an "overarching policy of holding a public entity responsible" for harm it causes, "the rule is governmental liability and immunity the exception." *Backus v. State*, 220 Ariz. 101, 104 (2009); *AlliedSignal, Inc. v. City of Phoenix*, 182 F.3d 692, 694 (9th Cir. 1999) ("It is well-settled law in Arizona that governmental immunity is the exception and liability is the rule."). Arizona long ago abrogated common law sovereign immunity. *Clouse ex rel. Clouse v. State*, 199 Ariz. 196, 198-203 (2001) (discussing the history of sovereign immunity in Arizona). But even before Arizona abrogated sovereign immunity, SRP answered in tort for acts in its proprietary capacity (which includes provision of electric power at retail). *Taylor v. Roosevelt Irrigation Dist.*, 71 Ariz. 254, 258 (1950); *City of Mesa v. Salt River Proj. Agr. Imp. and Pwr. Dist.*, 92 Ariz. 91, 100 (1962) (retail sale of electric power is proprietary). Arizona re-enacted sovereign immunity in some circumstances through later legislation, but those statutes did no more than revive the previous common law. *Diaz v. Magma Copper Co.*, 190 Ariz. 544, 554-55 (Ct. App. 1997).

### III. The Defenses On Which SRP Attempts To Appeal.

#### A. State-Action Doctrine.

Antitrust policies are so "fundamental" to our economic system that many purported government actors must abide by them. *N.C. State Board Of Dental Examiners v. F.T.C.*, 135 S. Ct. 1101, 1110 (2015). The state-action doctrine is a judicial gloss on the federal antitrust laws that limits their scope when a state has clearly exercised its sovereign prerogatives in a manner that displaces competition. *Nugget Hydroelectric, LP v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 433 (9th Cir. 1992) ("The state action doctrine is an interpretation of the Sherman Antitrust Act"); *S.C. State Board of Dentistry v. F.T.C.*, 455 F.3d 436, 444-45 (4th Cir. 2006), *cert. denied*, 549 U.S. 1165 (2007). The doctrine is "disfavored" and "interpreted narrowly." *N.C. State Board*, 135 S. Ct. at 1110 ("disfavored"); *Shames v. Cal. Travel & Tourism Comm'n*, 626 F.3d 1079, 1084 (9th Cir. 2010) ("interpreted narrowly").

To establish a defense under the doctrine, the District must first show that the state has "articulated a clear policy to allow the anticompetitive conduct." *N.C. State Board*, 135 S. Ct. at 1112. Next, because SRP's structure promotes private interests and SRP is not a sovereign, it must be "actively supervised" by the state. *Id.* at 1110. The Ninth Circuit is clear that this requirement raises "factual" questions "inappropriately resolved in the context of a motion to dismiss." *Cost Mgmt. Svcs., Inc. v. Wash. Nat. Gas Co.*, 99 F.3d 937, 943 (9th Cir. 1996).

This Court explained both requirements in the MTD Order and denied SRP's state-action argument on fact grounds, applying the Ninth Circuit's express holding that the state-action doctrine determinations may require a fact record. MTD Order at 25.

#### B. A.R.S. § 12-820.01.

Section § 12-820.01 "immunizes a public entity only from money damages and not from equitable relief." *AlliedSignal, Inc. v. City of Phoenix*, 182 F.3d 692, 697 (9th Cir. 1999) (citing *Zeigler v. Kirschner*, 162 Ariz. 77, 84 (Ct. App. 1989)). SolarCity's election to proceed without tort damages after the MTD Order denied state antitrust damages

moots the § 12-820.01 issue. Dkt. No. 84 at 2; 11/24/2015 Tr. 33:9-11, 35:23-36:7.

Section 12-820.01 reestablished portions of the common law immunities; it did not expand them. *Diaz*, 190 Ariz. at 555. Specifically, it resurrected immunity for narrow types of actions: exercise of judicial or legislative functions, and administrative decisions on fundamental public policy. A.R.S. § 12-820.01(A). "Proprietary" and "operational" functions have no immunity. *Doe ex rel. Doe v. State*, 200 Ariz. 174, 176 (2001) (operational); *Smyser v. City of Peoria*, 215 Ariz. 428, 434-38 (Ct. App. 2007) (proprietary). The statute is narrowly construed. *Doe*, 200 Ariz. at 176.

As discussed above, SRP's retail provision of electric power takes place in its proprietary—*i.e.*, non-governmental—capacity. *City of Mesa*, 92 Ariz. 91, 100 (retail sale of electric power is proprietary). SRP has no statutory immunity, both because (1) proprietary actions are not "legislative" or "administrative" functions and (2) A.R.S. § 12-820.01 did not expand the common law immunities.

In any event, courts recognize that because § 12-820.01 "immunity is related to a defendant's status, usually there are limited factual determinations necessary to resolve the issue." *Link v. Pima County*, 193 Ariz. 336, 341 (Ct. App. 1998). In fact, it may even require that some issues "be resolved by the jury as in qualified immunity cases." *Id.* Consistent with *Link*, this Court held that it needed more facts to determine the nature of SRP's conduct for purposes of A.R.S. § 12-820.01. MTD Order at 23-24.

## ARGUMENT

**I.     There Is No Jurisdictional Issue.**

An appeal on certain immunities divests district courts' jurisdiction to proceed ***with trial*** under some circumstances. *Chuman*, 960 F.2d 104, 105. The cases SRP cites stand for nothing more. Mot. at 4-5 (citing *Chuman*, 960 F.2d at 105 (no jurisdiction to hold trial for damages while qualified immunity appeal pending); *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989) (no jurisdiction to order defendant to appear for trial; one rationale for permitting interlocutory appeals under the collateral order doctrine is that appeal of a collateral order will not otherwise "disrupt the litigation in the district court")).

By contrast, the district court retains jurisdiction to proceed through "discovery and other pretrial matters." *Castaneda*, 2008 WL 9449576, at *1 (rejecting request for a stay pending appeal on absolute immunity) (quoting *Schering Corp. v. First DataBank, Inc.*, 2007 WL 1747115, at *4 (N.D. Cal. June 18, 2007)); *see also Beecham v. City of W. Sacramento*, 2008 WL 4821655, at *1 (E.D. Cal. Nov. 4, 2008) (recognizing that the court retained jurisdiction over discovery pending appeal on qualified immunity). As a Court in this District summed up:

> when a public official files an interlocutory appeal from the denial of a non-frivolous claim to absolute immunity, the district court may not alter the decision on appeal, *i.e.,* the denial of immunity, which is separate from the merits of the underlying litigation. But the district court may exercise discretion regarding pretrial discovery, considering the possibility of compromising any immunity protection the defendants may have and avoiding unnecessary disruption of the ongoing proceedings.

*Donahoe*, 2012 WL 2063455, at *3. Accordingly, the Court retains jurisdiction.

## II. SRP's Notice Of Appeal Is A Nullity That Can Have No Jurisdictional Effect Or Provide SRP An Opportunity To Suceed On The Merits.

All the foregoing assumes that SRP has a colorable argument for interlocutory review. It does not. The decisions that SRP seeks to appeal do not meet a single one of the collateral-order doctrine's "stringent" requirements—"conclusively determine the disputed question," "resolve an important issue completely separate from the merits of the action," and "be effectively unreviewable on appeal from a final judgment." *Will*, 546 U.S. at 349-50. Thus, the notice of appeal can have no jurisdictional effect. *Nascimento v. Dummer*, 508 F.3d 905, 909-10 (9th Cir. 2007) (when defendant appeals non-appealable interlocutory order, the Ninth Circuit never obtains jurisdiction, and it is "proper" for the district court to continue jurisdiction).

This defect has three adverse implications for SRP's motion. *First*, it further undermines SRP's arguments about this Court's jurisdiction.[1] *Second*, it means there is no

---

[1] SRP includes a footnote about district courts' "certifying that the appeal is frivolous or has been waived." Mot. n.2. That rule is for qualified immunity and Eleventh Amendment appeals in damages cases—and only for ***trial***. *Chuman*, 960 F.2d at 105. It (footnote continued on next page)

concern about balancing "the possibility of compromising any immunity protection the defendants may have" with the "disruption" occasioned by delay. *Donahoe*, 2012 WL 2063455, at *3. *Third*, it means that SRP cannot show a strong likelihood of success on an appeal that will not be heard on the merits.

### A. The Court's MTD Decision Did Not Conclusively Determine The Disputed Questions.

Determinations are conclusive when "made with the expectation that they will be the final word on the subject addressed." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, n.14 (1983)). Thus, denials of qualified immunity are not appealable when they rest on fact grounds such that they could be granted at a fact stage. *Johnson*, 515 U.S. at 307; *see also Ortiz v. Jordan*, 562 U.S. 180, 190, 191 (2011) (qualified immunity decisions not "final" for purposes of immediate appeal unless they turn on "purely legal issues" or "neat abstract issues of law").

The MTD Order was not a conclusive determination of the issues SRP wants to appeal. The Court rejected SRP's state action and A.R.S. § 12-820.01 arguments on the pleadings, anticipating that SRP would try them again on a factual record. MTD Order at 23-25. On the state-action doctrine, SolarCity's complaint plausibly alleged that Arizona "has a policy permitting competition and that the District operates without supervision." MTD Order at 25. Accordingly, the Court applied *Cost Management*, and declined to make further determinations without the benefit of a fuller record. MTD Order at 25 (citing 99 F.3d at 942-43). As for A.R.S. § 12-820.01, SRP failed to undermine the well-pleaded allegations with judicially noticeable materials. MTD Order at 23-24. That outcome is understandable because § 12-820.01, like the state-action doctrine, involves

---

has no application to pre-trial proceedings, or outside qualified-immunity and Eleventh Amendment contexts. Moreover, as explained in this section, when an appeal is not properly taken, jurisdiction never transfers, so certification would be superfluous. *Nascimento*, 508 F.3d at 909, 910; *Rivera-Torres v. Ortiz Velez*, 341 F.3d 86, 96-97 (1st Cir. 2002) (qualified immunity appeal over which the Court of Appeals lacked jurisdiction does not require a frivolousness certification because jurisdiction never transferred). And SRP's appeal is frivolous for precisely the reasons discussed in this section.

SRP's "status," and therefore the Court was entitled to demand a more complete fact record before making a conclusive determination. *Link*, 193 Ariz. at 341.

Finally, the non-finality of the Court's order also distinguishes the decisions in two Circuits, cited by SRP, that applied pre-*Will* and pre-*N.C. State Board* law to find a right to immediate appeal of certain orders applying the state-action doctrine. Mot. at 6-7 (*Martin v. Mem'l Hosp. at Gulfport*, 86 F.3d 1391, 1396 (5th Cir. 1996); *Commuter Transp. Sys., Inc. v. Hillsborough Cty. Aviation Auth.*, 801 F.2d 1286, 1289 (11th Cir. 1986)). Both those cases were denials of summary judgment, and both appeals raised pure issues of law. Thus, SRP's appeal does not implicate any Circuit split.

### B. The MTD Decision Does Not Resolve An Important Issue Completely Separate From the Merits.

#### 1. The Decision Does Not Resolve An "Important" Issue.

In issuing its *Will* decision in 2006, the Supreme Court clarified that "important issue" under the collateral order doctrine means a "weighty public objective" or "values so important that only an immediate appeal can effectively vindicate them." 546 U.S. at 347, 353-355. Contrary to SRP's protests, it is not enough that a trial that could leave "officials burdened and distracted" or that avoiding suit would "save trouble for the Government and its employees." *Id.* at 353. To justify immediate appeal, the "important issue" must protect interests so "deeply rooted in public policy" that they warrant joining the "small," "narrow and selective" class of immediately appealable orders. *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 884 (1994); *Will*, at 350 ("small," "narrow and selective"); *see also id.* at 351-52.

The state-action doctrine is "disfavored" and narrow. *N.C. State*, 135 S. Ct. at 1110 ("disfavored"); *Shames*, 626 F.3d at 1084 ("interpreted narrowly"). Such a doctrine cannot be so important as to disrupt normal procedure and clog the appellate courts with unnecessary appeals. In *Will v. Hallock*, the Supreme Court explained why this would be in discussing statutory defenses of even government officials:

> If simply abbreviating litigation troublesome to Government employees were important enough for *Cohen* treatment, collateral order appeal would

be a matter of right whenever the Government lost a motion. 546 U.S. at 353.

SRP's analogies to qualified or sovereign immunity illustrate its arguments' absurdity. Holding states to account and protecting the supremacy of federal law are so important that there is an exception to Eleventh Amendment immunity for suits for prospective injunctive relief. *Green v. Mansour*, 474 U.S. 64, 69 (1985). The same is true of qualified immunity. *Hydrick v. Hunter*, 669 F.3d 937, 939-40 (9th Cir. 2012). With damages off the table in this case prior to final judgment, SRP's analogy cannot prevail.

Another comparison illustrates the point. The *Noerr-Pennington* doctrine is a rule of antitrust statutory construction that prevents liability, just like the state-action doctrine. *Nunag-Tanedo v. East Baton Rouge Parish School Bd.*, 711 F.3d 1136, 1139-40 (2013). Like the state-action doctrine, it is also called an "immunity." *Id.* at 1140. And it comes from First Amendment principles, just as federalism concerns caused the Supreme Court to create the state-action doctrine. *Id.* at 1139, 1140. None of that is enough to satisfy the stringent collateral-order standard. The *Noerr-Pennington* doctrine does not serve interests as weighty and substantial as qualified-immunity, an immunity that was designed to stem the tide of "insubstantial claims" against officers and makes officials more effective by permitting them to act without fear of personal liability in "areas of unsettled law." *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991) ("unsettled areas of the law"); *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987) ("insubstantial claims").

SRP argues that a "common feature" of some collateral orders "is that they arise from the governmental status of the defendant asserting them, and thus serve important interests in their own right." Mot at 6. *Will* cautioned against precisely this "lawyer's temptation to generalize." 546 U.S. at 350. SRP operates a proprietary business. And *Will* rejected SRP's argument by explaining that it is insufficient to identify governmental burdens or hypothesize inconvenience for government personnel. *Id.* at 353-54. It is accordingly no surprise that both Circuits to consider state-action appealability post-*Will*

have declined to permit an appeal. *S.C. State*, 455 F.3d at 441-44; *see also Auraria Student Housing at the Regency, LLC v. Campus Village Apartments, LLC*, 703 F.3d 1147, 1150-53 (10th Cir. 2013).

### 2. The Issues Addressed By The MTD Decision Are Not Completely Separate From The Merits.

The collateral-order doctrine also requires that the "important" issues be "completely separate from the merits." *Will*, 546 U.S. at 349. But the entire state-action inquiry is "enmeshed" with competitive effects and the nature of the market. *S.C. State*, 455 F.3d at 442-43. For example, SRP argued in its motion to dismiss that EPCA and other statutes had implications for the substantive antitrust requirement of antitrust injury (through an argument about market definition, another antitrust element). Dkt. No. 53 at 11-12, 14-15. Those are the same facts from which SRP tries to draw a clearly articulated policy to permit anticompetitive conduct. *Id.* at 13-15.

Similarly, the clearly articulated prong may inquire whether the entity is acting like a "market participant." *See A.D. Bedell Wholesale Co., Inc. v. Philip Morris Inc.*, 263 F.3d 239, 265 n.55 (3d Cir. 2001) (collecting authority). The inquiry determines whether the entity behaves like a private economic actor "in a proprietary activity." *See* Areeda & Hovenkamp, Antitrust Law, ¶ 224e1 (Lexis 2015) (synthesizing cases). If so, it is unlikely the state authorized such conduct to supersede the antitrust laws. *See id.* Similarly, a defendant must show "active supervision" when a state entity is controlled—as a structural and practical matter—by self-interested private actors. *N.C. State Board*, 135 S. Ct. at 1110-12. That overlaps with merits issues of economic incentives and intent.

### C. The Issues Are Not Effectively Unreviewable After Final Judgment.

For an issue to be "effectively unreviewable," the appellant must identify more than just "a claim of right to prevail without trial." *Will*, 546 U.S. at 351. The law "requires" courts to view such arguments about a "'right not to be tried' with skepticism, if not a jaundiced eye." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 43 (1995) (quoting precedent). Thus, a county commission—an entity with a far more colorable claim to

sovereignty than SRP—had to await final judgment to appeal. *Id.*

The state-action doctrine was created out of a concern for impinging on the states' police powers, tempered by the countervailing federal interest in free interstate commerce. *N.C. State*, 135 S. Ct. at 1112-14; *S.C. State*, 455 F.3d at 444. Nothing in the doctrine's history suggests it was meant to be an immunity from the judicial process, such that a decision denying protection under it is effectively unreviewable after final judgment. *S.C. State*, 455 F.3d at 444. Even to the extent that the doctrine might be compared to true immunities from suit (which it really cannot, for the reasons discussed above), the justifications underlying those immunities are undermined when the district court proceedings are, as here, limited to injunctive relief. *See American Fire*, 932 F.2d at 818 ("it is unlikely that the possibility of injunctions will deter officials from the decisive exercise of their duties" (quoting precedent); "The concern about the burdens and risks of litigation is therefore much diminished in actions involving only equitable relief").[2]

As for A.R.S. § 12-820.01, because it is only an immunity from damages (not an injunction), and not from the litigation process, SRP cannot identify any right it will be denied if its appeal is heard after final judgment.[3]

\*          \*          \*

SRP has to meet every one of the foregoing requirements to take an immediate appeal. It cannot meet any of them. Nothing suggests that the state-action doctrine or § 12-820.01 implicate or are analogous to the rare immunities that either are unreviewable after judgment or so swallow up the litigation that trial (let alone discovery) must await their resolution. Instead, the ordinary rule should apply: This Court's jurisdiction continues over all the issues in the case except the specific decisions SRP appeals.

---

[2] SolarCity disagrees that the "government" bears the burden of any litigation. SRP is a "business enterprise" and any expense only detracts from the supracompetitive electric profits that SRP makes and uses to benefit a narrow set of irrigation users "for private profit." *Ball*, 451 U.S. at 368; *Local 266*, 78 Ariz. at 44.

[3] SRP cites state appellate procedure, Mot. at 1, but appealability is a matter of federal procedural law. *Liberal v. Estrada*, 632 F.3d 1064, 1074 (9th Cir. 2011).

### III. No Discretionary Stay Is Warranted.

SRP's alternative request for a stay should be denied. SRP cannot meet any, let alone all, of the requirements for a discretionary stay.

#### A. SRP Cannot Succeed On The Merits.

For the reasons discussed in the Background section above, SRP cannot make a "strong showing" of success on the merits, which is one of the two "most critical" factors. *Nken*, 556 U.S. at 433-34. This is true as to both the state-action doctrine and A.R.S. § 12.820.01. Moreover, there is no appellate jurisdiction; SRP cannot succeed on an appeal that will never be heard on the merits.

SRP argues that it may succeed on the merits because Arizona has a "regulatory structure" that displaces competition. Mot. at 9-10. But SRP is entirely outside that structure. *Salt River Valley Water Users' Ass'n v. Giglio*, 113 Ariz. 190, 193 (1976) (the District is "not a public service corporation . . . and is not subject to regulation by the [ACC] as to its services and rates" (internal quotations omitted)).

SRP also says it "cannot simply set retail electric rates at whatever figure it desires." Mot. at 10. SRP can, does, and has. No provision of law sets any substantive standard or limitation for its rates, and SRP sets them without any regulatory oversight. Its argument that such oversight is provided by its Board is circular. SRP also cites a procedural statute (A.R.S. § 48-2334), but that statute requires a minimal level of disclosure and a vote by its Board—which is not democratically elected or accountable, serve their own private interests, and admit they have no independence from management. Am. Compl. ¶ 103. Finally, SRP cites a provision of EPCA, A.R.S. § 30-802(B), which would permit SRP to set some "terms and conditions" for landline-based utilities to access its distribution and other facilities. As SRP admits, EPCA has no direct application to SRP's conduct, provides SRP no authority concerning distributed solar, and does not apply to SolarCity. *E.g.*, Dkt. No. 53 at n.17; 19:3-13; *see also* Dkt. No. 58 at 8-10 (explaining why EPCA is flatly contrary to SRP's arguments).

**B.      SRP Identifies No Irreparable Harm.**

The other "most critical" factor is irreparable harm. *Nken*, 556 U.S. at 433-34. The only irreparable harms SRP can identify are being subject to discovery and ultimately trial. A trial is not irreparable harm—and certainly a bench trial is not. And discovery is a basic function of our justice system to which all parties are subject. *Castaneda*, 2008 WL 9449576 at *4 (discovery "does not constitute an irreparable injury"; denying motion to stay pending appeal on qualified immunity).

**C.      SRP's Conduct Irreparably Harms SolarCity, Consumers, And The Market Every Day This Case Is Delayed.**

SRP's successful delay will do more than "substantially injure the other parties interested in the proceeding." *Nken*, 566 U.S. at 434. It will irreparably injure them.

Under the MTD Order, SolarCity cannot be fully compensated for the business it has lost due to SRP's misconduct—business that SolarCity continues to lose each day relief is delayed. SRP has every incentive to continue delaying, because every day of delay, it takes, and keeps, revenue that would have been diverted to distributed solar.

SRP's conduct has eliminated consumer choice, squelched competition from innovative upstarts, and raised customers' electric costs. Am. Comp. ¶¶ 13, 72-84, 128, 162, 171, 195. These types of competitive harm to consumers are irreparable. *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 661 (2d Cir. 2015).

SRP's demonstrated ability to exclude distributed solar also undermines consumer confidence and goodwill. Consumers have seen SolarCity forced from the market and SRP has demonstrated that it will not tolerate successful competitors. These, too, are irreparable harms that a delayed trial will only compound. *E.g.*, *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."); *Regents of University of California v. American Broadcasting Companies, Inc.*, 747 F.2d 511, 520 (9th Cir. 1984) (finding irreparable harm where plaintiffs' football programs "would suffer some palpable diminution in national reputation," including injury to its recruitment efforts and alumni and community

goodwill absent injunctive relief).

### D.  SRP Can Identify No Public Interest To Support Delay.

Finally, the Court considers the public interest.  *Nken*, 566 U.S. at 434.  The public interest lies in strong and vigorous competition.  Competition is fundamental to our economic system.  Antitrust suits serve "the high purpose of enforcing the antitrust laws."  *Zenith Radio Corporation v. Hazeltine Research*, 395 U.S. 100, 130-31 (1969).

There is no public interest in delaying the judicial process, and SRP does not attempt to argue otherwise.  SRP instead asserts, in various ways, that its status is sufficient.  Mot. at 14.  Of course, there are countervailing public interests in holding public entities accountable and treating litigants of every status equally.  *E.g.*, *Backus*, 220 Ariz. at 104 (Arizona has a particularly strong policy of holding its government entities liable in court).  Moreover, SRP's arguments deny the unassailable fact that it does not serve the "public interest" but is merely a "business enterprise" that takes electric profits to serve private interests.  *Local 266*, 78 Ariz. at 44; *Ball*, 451 U.S. at 368.

## CONCLUSION

The District's motion to stay should be denied.

Dated:  December 7, 2015              Respectfully submitted,

BOIES, SCHILLER & FLEXNER LLP

By:   s/Steven C. Holtzman
         Steven C. Holtzman

*Attorneys for Plaintiff SolarCity Corporation*

# **CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

WILMER CUTLER PICKERING HALE & DORR LLP
Molly S. Boast *(admitted pro hac vice)*
7 World Trade Center
250 Greenwich Street
New York, NY 10007

Christopher E. Babbitt *(admitted pro hac vice)*
1875 Pennsylvania Ave. NW
Washington, DC 20006

350 South Grand Ave.
Los Angeles, CA 90071
Christopher T. Casamassina (*admitted pro hac vice*)

STEPTOE & JOHNSON LLP
Paul K. Charlton (012449)
Karl M. Tilleman (013435)
Quintin Cushner (027303)
Jason M. Porter (027475)
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004-2382

s/Steven C. Holtzman
Steven C. Holtzman