WILMER CUTLER PICKERING
 HALE AND DORR LLP
Molly S. Boast (*admitted pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
molly.boast@wilmerhale.com

Christopher E. Babbitt (*admitted pro hac vice*)
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
christopher.babbitt@wilmerhale.com

Christopher T. Casamassima (*admitted pro hac vice*)
350 South Grand Ave.
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400
chris.casamassima@wilmerhale.com

STEPTOE & JOHNSON LLP
Paul K. Charlton (012449)
Karl M. Tilleman (013435)
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
Telephone: (602) 257-5200
Facsimile: (602) 257-5299
pcharlton@steptoe.com
ktilleman@steptoe.com

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| SolarCity Corporation,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Salt River Project Agricultural Improvement and Power District; Salt River Valley Water Users' Association,<br><br>　　　　Defendants. | No. 2:15-CV-00374-DLR<br><br>**DEFENDANT SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT'S REPLY IN SUPPORT OF ITS MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b)** |

**INTRODUCTION**

The District's Motion for Certification demonstrates that all of the requirements of 28 U.S.C. § 1292(b) are satisfied and that as a result, this Court should certify its motion to dismiss order, Dkt. No. 77, for interlocutory review. The Ninth Circuit has already held that two of the three issues that the District seeks to appeal—the Court's rulings on state action immunity and the filed rate doctrine—meet the requirements for certification. SolarCity does not even *mention* that controlling authority, let alone explain why it does not apply.

The third issue, the District's entitlement to absolute immunity under A.R.S. § 12-820.01, meets the certification requirements as well. This Court has already held that the District is a political subdivision. (Dkt. No. 77 at 23.) Accordingly, the District is absolutely immune from damages for SolarCity's tort law claims if its ratemaking constitutes a legislative function, a pure legal question that would dispose of any remaining damage claims in the case.

SolarCity cannot "moot" the filed rate and absolute immunity issues by electing to informally abandon its damages claims. SolarCity continues to seek damages in the operative complaint and pledges to have this Court's ruling dismissing its antitrust damages overturned on appeal. And, in any event, even if credited, SolarCity's election does not moot the filed rate defense because the doctrine, if applicable, bars all of SolarCity claims, whether they seek damages or only injunctive relief.

**ARGUMENT**

**I.   THE ISSUES FOR CERTIFICATION PRESENT CONTROLLING QUESTIONS OF LAW**

**A.   State Action Immunity**

Controlling Ninth Circuit authority holds that a district court's denial of a defendant's right to state action immunity presents a "pure" question of law. *Springs Ambulance Serv., Inc. v. City of Rancho Mirage*, 745 F.2d 1270, 1272 (9th Cir. 1984) (granting permission to appeal state action immunity issue pursuant to § 1292(b)); *see*

1

1  *also Grason Elec. Co. v. Sacramento Mun. Util. Dist.*, 526 F. Supp. 276, 281 (E.D. Cal.
2  1981) (application of state action immunity doctrine "presents a pure question of law").
3  Courts in other circuits have reached the same conclusion.  *See, e.g.*, *Grendel's Den, Inc.*
4  *v. Goodwin*, 662 F. 2d 88, 90 (1st Cir. 1981) (denial of a defendant's motion to dismiss
5  on grounds of state action immunity before First Circuit under § 1292(b)); *AT&T Co. v.*
6  *N. Am. Indus. of N.Y.*, *Inc.*, 783 F. Supp. 810, 813-14 (S.D.N.Y. 1992) ("little dispute"
7  that state action issue "raises a controlling issue of law"); *Wall v. City of Athens*, 663 F.
8  Supp. 747, 765 (M.D. Ga. 1987) (same).  And as the Ninth Circuit has plainly stated,
9  "state action immunity is not an issue of fact."  *Columbia Steel Casting Co. v. Portland*
10 *Gen. Elec. Co.*, 111 F.3d 1427, 1442 (9th Cir. 1996).
11        Notably, no case allows a *plaintiff's allegations* to transform a "pure" question of
12 law into a factual dispute, as SolarCity suggests.  (*See* Opp. Mot. Certif. ("Opp"), Dkt.
13 No. 95 at 3.)  Certainly *Hoover v. Ronwin*, 466 U.S. 558 (1984), does not do so.  There,
14 the Supreme Court held that the Ninth Circuit erred in affirming the denial of a motion to
15 dismiss on state action immunity grounds.  *Id.* at 565-67.  In so doing, the majority
16 opinion held that a plaintiff's allegations *cannot* transform a state's regulatory scheme so
17 as to raise issues of fact.  It was the dissent, and not the majority opinion that wanted to
18 credit the plaintiff's allegations.  *Id.* at 587-88.  And notwithstanding SolarCity's
19 observations about "spilled ink" in *Hoover*, Opp. at 3, the Supreme Court reversed the
20 very holding that SolarCity now urges this Court to follow.  *See Ronwin v. State Bar of*
21 *Ariz.*, 686 F.2d 692, 696 (9th Cir. 1981) (affirming denial of motion to dismiss on state
22 action issue because of the absence of a clear "statute or Supreme Court Rule").
23        SolarCity is also wrong to suggest that *Cost Management Services, Inc. v.*
24 *Washington Natural Gas Co.*, 99 F.3d 937, 943 (9th Cir. 1996), held that whether a state
25 has a clearly articulated policy displacing competition is question of fact.  (Opp. at 3.)  As
26 explained in the District's Motion for Certification, Dkt. No. 82 at 6, the Ninth Circuit in
27 *Cost Management* did not hold that the "clear articulation" prong was inappropriately
28 decided on a motion to dismiss.  And even if it had, it would have been overturned the

1  next year by *California CNG, Inc. v. Southern California Gas Co.*, 96 F.3d 1193, 1194
2  (9th Cir. 1997).  *See also Nugget Hydroelectric L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d
3  429, 434 (9th Cir. 1992) (upholding dismissal based on state action immunity).

4        Here, notwithstanding SolarCity's contention that there are facts—which are
5  unspecified—at issue, the Ninth Circuit can resolve the immunity question by looking
6  solely to Arizona's constitutional, statutory, and regulatory regimes.  Indeed, the only
7  questions on state action immunity are controlling questions of law:  (1) whether Arizona
8  has an affirmatively expressed state policy to displace competition, and (2) whether the
9  District's ratemaking is subject to the active supervision requirement.  Were the Ninth
10  Circuit to answer those questions in the District's favor, at a minimum, all of SolarCity's
11  remaining state and federal antitrust law claims would be dismissed.  *See Mothershed v.*
12  *Justices of Sup. Ct.*, 410 F.3d 602, 609 (9th Cir. 2005).[1]  Those questions of law are
13  therefore controlling.

14        **B.**    **Filed Rate Doctrine**

15        The filed rate doctrine also presents a "pure" question of law.  Contrary to
16  SolarCity's contention, the District cited controlling Ninth Circuit authority so holding in
17  its Motion.  (Dkt. No. 82 at 5 (citing *E. & J. Gallo Winery v. EnCana Corp.*, 503 F.3d
18  1027, 1032 (9th Cir. 2007) (recognizing that the filed rate doctrine is a controlling
19  question of law warranting § 1292(b) review)).)  SolarCity does not even attempt to
20  distinguish *E. & J. Gallo*.  Moreover, a very recent decision in the Second Circuit
21  reached the same conclusion.  *See Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 261-65 (2d
22  Cir. 2015).  In *Rothstein*, the plaintiffs initially survived a motion to dismiss when the

---

[1] With dismissal of the federal law claims, diversity would be the sole basis for this court to exercise subject matter jurisdiction.  The state law claims would therefore be barred by the Johnson Act, which states that "[t]he district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where: "(1) Jurisdiction is based solely on diversity of citizenship ... (2) The order does not interfere with interstate commerce; and, (3) The order has been made after reasonable notice and hearing; and, (4) A plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1342.

1 district court held the filed rate doctrine did not apply. But the district court, noting a
2 conflict of authority, certified its decision for interlocutory appeal, which necessarily
3 entailed a conclusion that the filed rate doctrine presented a controlling question of law.
4 The Second Circuit heard the appeal, held that the filed rate doctrine applied as a matter
5 of law, and remanded the case for dismissal. *Id.*

6 *County of Stanislaus v. Pacific Gas & Electric Co.*, 114 F.3d 858 (9th Cir. 1997)
7 did not hold, or even suggest, otherwise. Indeed, in that case, the Ninth Circuit upheld
8 the District Court's decision to grant a motion to dismiss on the basis of the filed rate
9 doctrine. In so doing, it distinguished the "facts" of the case before it from the cases that
10 the plaintiff urged on the court as to why the doctrine did not apply, which "did not
11 involve rates or rate setting." *Id.* at 865. Of course, a predicate to application of the filed
12 rate doctrine is that the plaintiff's challenge involves rates, a fact readily determined by
13 reference to the plaintiff's complaint. (*See, e.g.*, Dkt. No. 39 at ¶¶ 4, 89, 97, 119, 162.)

14 Tellingly, SolarCity never even hints at what "facts" are needed to guide the
15 Court's filed rate doctrine inquiry. This case clearly is a challenge to rates filed,
16 reviewed, and approved after modification by the District's ratemaking body—its elected
17 Board—and as a result, the application of the filed rate doctrine raises a pure question of
18 law.

19 Not only is the filed rate doctrine a pure question of law, but it controls here.
20 SolarCity repeats its inaccurate argument from its opposition to the District's Motion to
21 Dismiss that *In re NOS Communications*, 495 F.3d 1052 (9th Cir. 2007), holds that the
22 filed rate doctrine does not apply to injunctive relief. It held no such thing. As the
23 District explained previously, *In re NOS Communications* held only that, "[t]o the extent
24 … plaintiffs can prove damages *without attacking the filed rate*," their claims could
25 proceed. *Id.* at 1060-61.

26 Under Ninth Circuit law, the filed rate doctrine bars suits seeking injunctive relief
27 where, as is true here, the relief sought would necessarily require an adjustment to the set
28 rate. *See Pub. Util. Dist. No. 1 of Snohomish Cty v. Dynegy Power Mktg., Inc.*, 384 F.3d

4

756, 761 (9th Cir. 2004) ("injunctive relief . . . [is] barred by the filed rate doctrine"); *McLeodUSA Telecomms. Servs. v. Ariz. Corp. Comm'n*, 655 F. Supp. 2d 1003, 1009-11 (D. Ariz. 2009) (same).

SolarCity seeks to avoid the import of this line of authority by suggesting that the Court could fashion injunctive relief without "fix[ing]" the District's rate. (Opp. at 4 n.1.) But even if that were true (and SolarCity provides no plausible explanation of how it could be), that would not avoid application of the doctrine. The filed rate doctrine applies in *any* case that would require the Court to "invalidate a filed rate." *Carlin v. DairyAmerica Inc.*, 705 F.3d 856, 867 (9th Cir. 2012). Here, SolarCity seeks invalidation of the E-27 rate and its claims must therefore be dismissed.

### C. Absolute Immunity Under A.R.S. § 12-820.01

SolarCity correctly states that where there are issues related to a defendant's status under A.R.S. § 12-820.01, "limited factual determinations" may be necessary. (Opp. at 4.) But no such issues exist here—and SolarCity's heavy reliance on *Link v. Pima County*, 972 P.2d 669 (Ariz. Ct. App. 1998) is therefore misplaced. As that case makes clear: "*In the absence of such factual issues* … the court should apply the statute and resolve the immunity issue [as a matter of law]." *Id.* at 674 (emphasis added). Here, the Court has already determined the District's status as a matter of law. The District is a political subdivision entitled under Arizona's Constitution to all immunities provided under Arizona or Federal law to municipalities. *See* Ariz. Const. art. 13, § 7. Not only are all municipalities immune under A.R.S. § 12-820.01, which by itself would entitle the District to immunity under the statute, but by its terms A.R.S. § 12-820.01 applies to all public entities, including political subdivisions. Thus, the statute entitles the District to immunity if its ratemaking constitutes a legislative function. That is a pure question of law, as explained in the District's Motion. (Dkt. No. 82 at 6-7 (citing cases).)

SolarCity's statement that it currently is not seeking damages does not alter the analysis. The operative complaint still seeks damages, and SolarCity has not formally dismissed its damages claims with prejudice or struck its prayer for damages. *See Rizzo*

1  *v. Ins. Co. of State of Pa.*, 969 F. Supp. 2d 1180, 1196-97 (C.D. Cal. 2013), *aff'd in part,*
2  *remanded in part by* No. 13-56770, 2015 WL 7567450 (9th Cir. Nov. 25, 2015).
3  Moreover, SolarCity has stated that it intends to appeal the Court's ruling on the
4  application of the LGAA and thereby have its antitrust damages claims reinstated. (Dkt.
5  No. 96 at 12.)  As a result, absolute immunity under A.R.S. § 12-820.01 presents a
6  controlling question of law.  *See, e.g.*, *Diaz v. First Am. Home Buyers Prot. Corp.*, 732
7  F.3d 948, 954-55 (9th Cir. 2013) (claim is moot "only when it is impossible for a court to
8  grant any effectual relief whatever to the prevailing party").[2]

## II. RESOLUTION OF ANY OF THE THREE ISSUES WOULD MATERIALLY ADVANCE THE LITIGATION

### A. State Action Immunity

Contrary to SolarCity's suggestion, Opp. at 8, the District seeks certification of the Court's entire ruling on state action immunity.  There are at least two questions embedded in that issue.  First, whether the District, as a political subdivision governed by a publicly-elected Board, is required to show that its conduct is actively supervised, or whether it need only show that its conduct was undertaken pursuant to a clearly articulated state policy.  And, second, whether it has done the latter as a matter of law. *California CNG*, 96 F.3d at 1194.  Taken together, rulings on those questions would "materially affect" the outcome of the litigation in this Court.  *See In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).

In its opposition, SolarCity clearly disagrees with the District on the correct answer to those questions.  And SolarCity is free to argue the merits before the Ninth Circuit if it chooses.  But if a party could successfully argue that litigation would not be materially advanced because it disagreed with the opposing party's position on the merits, this prong of the test could never be satisfied.

---

[2] Counsel for the District has contacted counsel for SolarCity in an attempt to formalize plaintiff's position with respect to its tort claims.  That discussion is ongoing, and no agreement has been reached.

6

**B.     Filed Rate Doctrine**

SolarCity's only argument as to why a ruling on the filed rate doctrine would not materially advance the litigation is its contention that the doctrine does not apply to damages claims.  As noted, this is incorrect.  *See supra* I.B.  Because the filed rate doctrine would bar all of SolarCity's claims, *see Wah Chang v. Duke Energy Trading & Marketing LLC*, 507 F.3d 1222, 1225 (9th Cir. 2007),  resolution of that question would materially advance the litigation.  *See Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687-88 (9th Cir. 2011).

**C.     A.R.S. § 12-820.01**

Similarly, SolarCity's only argument as to why resolution of the District's entitlement to absolute immunity under A.R.S. § 12-820.01 would not materially advance the litigation is based on its claim that it is no longer seeking damages.  But as noted, SolarCity continues to insist that it is entitled to damages on its antitrust claims and plans to appeal the Court's ruling on the LGAA.  Nor has it altered its operative complaint.  *See supra* I.C.  Thus, resolution of the District's immunity from damages under state law would still materially advance the litigation.

**III.   A SUBSTANTIAL GROUND FOR A DIFFERENCE OPINION EXISTS ON ALL THREE ISSUES**

**A.     State Action Immunity**

A substantial ground for difference of opinion exists on the District's state action immunity claim.

At the very least, the question of whether political subdivisions like the District must satisfy the active supervision requirement in the wake of *North Carolina State Board of Dental Examiners* presents the type of "novel and difficult" question of first impression appropriate for certification.  *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2011).  SolarCity's arguments about whether the District is subject to the active supervision requirement prove the point.  Prior to the Supreme Court's decision in *North Carolina State Board of Dental Examiners v. FTC*, 135 S. Ct. 1101 (2015), political

7

1  subdivisions like the District did not have to prove active supervision.  The Supreme
2  Court held only that, where the defendant invoking immunity is governed by "active
3  market participants" (*i.e.* dentists governing other dentists, and similar situations
4  involving professional certification bodies chartered by the state), the defendant must
5  satisfy the active supervision prong of the state action doctrine to receive antitrust
6  immunity.  *Id*. at 1115.  The Court plainly did not address or disturb its prior case law
7  holding that political subdivisions governed by electorally accountable officials must
8  show active supervision.  It did just the opposite.  *See id*. at 1114 (where a public entity is
9  controlled by a publicly elected governing body there is no active supervision
10 requirement).
11       To suggest that there is no basis for disagreement on the "clear articulation" prong
12 of state action immunity, SolarCity relies primarily on the Tenth Circuit's decision in *Kay*
13 *Electric Cooperative v. City of Newkirk*, 647 F.3d 1039 (10th Cir. 2011).  (Opp. at 5.)
14 But *Kay Electric* is not controlling here.  Rather, the Ninth Circuit's decision in *Caifornia*
15 *CNG*, 96 F.3d at 1198, controls.  And in *California CNG*, the Ninth Circuit interpreted a
16 statute like Arizona's Electric Power Competition Act ("EPCA"), and held—on a motion
17 to dismiss—that unless and until the state regulatory agency actually permitted
18 competition, state action immunity applied to any conduct by the monopoly utility.  *See*
19 96 F.3d at 1200.  Arizona's regulatory authorities have not permitted retail competition
20 and, as a result, the state cannot be said to have a clearly articulated policy that endorses
21 competition.
22       SolarCity once again ignores *California CNG* entirely, but it cannot wish the
23 decision away.  To the extent that *Kay Electric* has any bearing at all in the Ninth Circuit,
24 it only highlights that there is substantial disagreement over how to apply the state action
25 doctrine to public utilities against the backdrop of electricity deregulation.  *See Couch*,
26 611 F.3d at 633-34 ("identification of a sufficient number of conflicting and
27 contradictory opinions" demonstrates that reasonable jurists could disagree as to the
28 question presented).

8

1    And for *Kay Electric* to have any relevance at all, the EPCA must have some
2 applicability to SolarCity's allegations. *See* A.R.S. § 30-813. Yet, SolarCity argues in its
3 opposition to the District's Motion to Stay that the EPCA has "no direct application here"
4 and "does not apply to SolarCity." (Dkt. No. 96 at 15.) SolarCity cannot have it both
5 ways. Either the EPCA does apply, in which case SolarCity must accept that there is a
6 significant disagreement between the Ninth and Tenth Circuits about its effect on the
7 application of state action immunity; or the EPCA does not apply, in which case
8 SolarCity loses its basis for contending that there is a state policy endorsing competition.
9    In either event, the District does not rest its clear-articulation argument solely on
10 the EPCA. For example, Arizona's state policy displacing competition comes in part
11 from its constitution. And under the Arizona Constitution, retail price competition for
12 electricity in Arizona is impermissible. *See Phelps Dodge v. Corp. v. Ariz. Elec. Power*
13 *Co-op., Inc.*, 83 P.3d 573, 586 (Ariz. Ct. App. 2004), *as amended on denial of*
14 *reconsideration* (Mar. 15, 2004). This is a clear articulation that "unfettered business
15 freedom" does not exist with respect to retail electricity rates.

**B.    Filed Rate Doctrine**

17    SolarCity's arguments on the filed rate doctrine fare no better. First, SolarCity is
18 incorrect that the filed rate doctrine applies only to suits by customers. (Opp. at 6.)[3] To
19 be sure, the doctrine does not apply to suits by competitors challenging rates as too low—
20 but that is not this case because SolarCity alleges the E-27 rate is too *high*. *Compare*
21 *Cost Mgmt. Servs.*, 99 F.3d at 946 (allowing competitor challenge to rates that were
22 allegedly too low but noting that a regulatory agency "generally scrutinizes rates to see if
23 they are too high") *with Town of Norwood v. New England Power Co.*, 202 F.3d 408, 420
24 (1st Cir. 2000) (rejecting applicability of competitor exception where rate was challenged
25 as too high). In any event, SolarCity has elsewhere disclaimed that it is suing as a

---

[3] SolarCity also may not invoke this exception because, as the record will establish, it does not compete with utilities in the sale of retail electricity, nor is it allowed to do so under Arizona law.

9

1 competitor and argued that it is instead suing on behalf of its customers (to support its
2 argument that it does not need to satisfy the requirements of "refusal to deal" law in the
3 Ninth Circuit because it asserts the District refuses to deal with its customers, not
4 SolarCity). (Dkt. No. 97 at 3 ("this case does not involve a duty to deal with a
5 competitor").) SolarCity cannot both stand in the shoes of the District's customers for
6 purposes of establishing liability, while at the same time claiming that it is not like a
7 customer challenging a rate for purposes of avoiding the filed rate doctrine. At the very
8 least, the applicability of the filed rate doctrine to a challenge based on a non-customer
9 plaintiff's allegations that the rates certain customers pay are too high is the type of novel
10 legal issue that warrants certification. *See Couch*, 611 F.3d at 633.
11       Second, as the Ninth Circuit has held, the filed rate doctrine extends beyond
12 tariffs. *See Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1170 (9th Cir.
13 2002) (noting doctrine extends to suits "challenging services, billing, or other practices").
14 And even if it were so limited, the SEPPs are nothing more than tariffs by another name.
15 *See* Merriam-Webster College Dictionary (definition of tariff: "a schedule of rates or
16 charges of a . . . public utility"). Moreover, to the extent there is a requirement that a rate
17 be "filed" with a regulatory agency, the District's elected board, as the ratemaking body
18 of a political subdivision, qualifies. *See* 28 U.S.C. § 1342. SolarCity's contention that
19 the Board is not sufficiently independent, includes farmers, and is not "democratically
20 elected," does not preclude application of the doctrine. *See, e.g.*, *Ark. La. Gas Co. v.
21 Hall*, 453 U.S. 571, 577 (1981) (doctrine applies to "the spectrum of regulated utilities");
22 *Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1227 (9th Cir. 2007)
23 ("lax" regulatory authority "does not indicate, much less establish, that [plaintiff] can turn
24 directly to the courts for rate relief").
25       And third, while SolarCity alleges that the E-27 rate is a penalty that SRP never
26 intended customers to actually pay, the filed rate doctrine forbids precisely this type of
27 second-guessing. The filed rate doctrine precludes plaintiffs from "assuming a
28

1  hypothetical rate" other than the one chosen.  *Transmission Agency of N. Cal. v. Sierra*
2  *Pac. Power Co.*, 295 F.3d 918, 930 (9th Cir. 2002).

3       **C.**    **A.R.S. § 12-820.01**

4      To suggest that no difference of opinion exists under A.R.S. § 12-820.01,
5  SolarCity once again revives its argument—already rejected by this Court—that the
6  District somehow loses its constitutional and statutory entitlement to immunity because it
7  engages in some proprietary activities.  That is not the law.  Arizona courts have
8  consistently held that the fact that the District engages in proprietary activity "does not
9  defeat its status as a … political subdivision of the state."  *Salt River Project Agric.*
10 *Improvement & Power Dist. v. City of Phoenix*, 631 P.2d 553, 554-55 (Ariz. Ct. App.
11 1981); *see also Smith v. Salt River Project Agric. Improvement & Power Dist.*, 109 F.3d
12 586, 594 (9th Cir. 1997) ("The fact that the District is a limited-purpose public entity
13 makes it no less public."); *Rubenstein Constr. Co. v. Salt River Project Agric.*
14 *Improvement & Power Dist.*, 265 P.2d 455, 456 (Ariz. 1953) ("[P]laintiff contends . . .
15 that when municipal corporations engage in proprietary functions they thereby lose their
16 municipal status . . . .  There can be no such metamorphosis.  The [District] is either at all
17 times a political subdivision of the state, or it never is.").

18     Because the Court's Order on the District's Motion to Dismiss conflicts with a
19 number of decisions of the Arizona courts (1) holding that application of Title 12 presents
20 a question of law and (2) determining, as a matter of law, that ratemaking is a legislative
21 function, it is clear that, at a minimum, reasonable jurists could disagree as to the
22 question presented.  (Dkt. No. 82 at 6 (citing cases).)

23         **CONCLUSION**

24     For all these reasons, the District respectfully requests that this Court grant the
25 District's Motion for Certification of the Court's October 27, 2015 Order.

26
27
28

RESPECTFULLY SUBMITTED this 17th day of December, 2015.

| | |
|---|---|
| | s/Christopher E. Babbitt |
| STEPTOE & JOHNSON LLP | WILMER CUTLER PICKERING HALE AND |
| Paul K. Charlton | DORR LLP |
| Karl M. Tilleman | Molly S. Boast |
| 201 East Washington Street, Suite 1600 | 7 World Trade Center |
| Phoenix, AZ 85004 | 250 Greenwich Street |
| Telephone: (602) 257-5200 | New York, NY 10007 |
| Facsimile: (602) 257-5299 | Telephone: (212) 230-8800 |
| pcharlton@steptoe.com | Facsimile: (212) 230-8888 |
| ktilleman@steptoe.com | molly.boast@wilmerhale.com |
| | |
| | Christopher E. Babbitt |
| | 1875 Pennsylvania Avenue NW |
| | Washington, DC 20006 |
| | Telephone:  (202) 663 6000 |
| | Facsimile:  (202) 663 6363 |
| | christopher.babbitt@wilmerhale.com |
| | |
| | Christopher T. Casamassima |
| | 350 South Grand Ave. |
| | Los Angeles, CA 90071 |
| | Telephone: (213) 443-5300 |
| | Facsimile: (213) 443-5400 |
| | chris.casamassima@wilmerhale.com |
| | |
| | Attorneys for Defendant |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Richard J. Pocker

BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
William A. Isaacson
Karen L. Dunn

BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Steven C. Holtzman
John F. Cove, Jr.
Kieran P. Ringgenberg
Sean P. Rodriguez

COPPERSMITH BROCKELMAN PLC
2800 North Central Avenue, Suite 1200
Phoenix, AZ 85004
Keith Beauchamp
Roopali H. Desai

s/ Christopher E. Babbitt