**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

SolarCity Corporation,

             Plaintiff,

v.

Salt River Project Agricultural
Improvement and Power District, et al.,

             Defendants.

No. CV-15-00374-PHX-DLR

**ORDER**

Before the Court are Defendant Salt River Agricultural Improvement and Power District's (the "District") Motion for Certification under 28 U.S.C. § 1292(b), (Doc. 82), and Motion to Stay, (Doc. 83). The motions are fully briefed, and neither party requested oral argument. For the reasons below, both motions are denied.

## BACKGROUND

Plaintiff SolarCity Corporation, a manufacturer and distributor of solar panels, filed suit against the District and the Salt River Valley Water Users' Association (the "Association") alleging violations of federal and state antitrust laws. (Doc. 39.) SolarCity alleges that the District and the Association, operating as the Salt River Project ("SRP"), exercise monopoly power over the sale of retail electricity in the greater Phoenix-metro area. (*Id.*, ¶¶ 1-2.) It claims SRP imposed a fee that makes it economically infeasible for customers to obtain some of their electricity from solar systems and that the fee has the effect of eliminating competition from SolarCity and

1   other solar companies in the market.  (*Id.*, ¶¶ 4, 13.)

2         The District and the Association both filed motions to dismiss, which raised

3   several immunities based on the District's status as a political subdivision of the State of

4   Arizona.  (Docs. 52, 53.)  On October 27, 2015, the Court dismissed the Association and

5   several of SolarCity's antitrust claims.   (Doc. 77.)   It also found that the Local

6   Government Antitrust Act ("LGAA") barred SolarCity's claims for damages under

7   federal antitrust law because the District is a political subdivision of Arizona, but denied

8   the District's motion with respect to the remaining immunity defenses.  (*Id.* at 22-26.)

9   SolarCity's claims for equitable relief under § 2 of the Sherman Act (monopolization and

10  attempted monopolization) and damages claims under state antitrust and tort law

11  survived.  The District now moves for the Court to certify three issues for interlocutory

12  appeal pursuant to 28 U.S.C. § 1292(b): (1) whether it is immune from all remaining

13  claims under the state action doctrine, (2) whether it is immune from all damages claims

14  under Arizona Revised Statute ("A.R.S.") § 12-820.01, and (3) whether it immune from

15  all remaining claims under the filed-rate doctrine.  (Doc. 82.)  The District also requests

16  that the Court stay the case pending its appeal.  (Doc. 83.)

17                          <u>**LEGAL STANDARD**</u>

18        Under § 1292(b), the district court shall state in a non-appealable order if the court

19  is of the "opinion that such order involves a controlling question of law as to which there

20  is substantial ground for difference of opinion and that an immediate appeal from the

21  order may materially advance the ultimate termination of the litigation[.]"  28 U.S.C. §

22  1292(b).  The "requirements of § 1292(b) are jurisdictional," and the procedure is a

23  "narrow exception to the final judgment rule[.]"  *Couch v. Telescope Inc.*, 611 F.3d 629,

24  633 (9th Cir. 2010) (internal quotations omitted).  "The party seeking certification has the

25  burden of showing that exceptional circumstances justify a departure from the 'basic rule

26  of postponing appellate review until after the entry of a final judgment.'"  *Fukuda v. L.A.*

27  *Cty.*, 630 F. Supp. 228, 229 (C.D. Cal. 1986) (quoting *Coopers & Lybrand v. Livesay*,

28  437 U.S. 463, 475 (1978)).  "[A] party's strong disagreement with the Court's ruling is

1  not sufficient for there to be a 'substantial ground for difference.'  [In addition,] [t]hat

2  settled law might be applied differently does not establish a substantial ground for

3  difference of opinion."  *Couch*, 611 F.3d at 633.

4  <u>**ANALYSIS**</u>

5  **I.  Motion for § 1292(b) Certification**

6       The District argues that each immunity issue satisfies the requirements of §

7  1292(b).  It claims that resolution of these issues would avoid the risk of piecemeal

8  litigation and multiple appeals, which would lower the costs and burden for both the

9  parties and the Court.  (Doc. 82 at 2.)  The Court disagrees.

10       **A.  State-Action Immunity**

11       State-action immunity "exempts qualifying state and local government regulation

12  from federal antitrust, even if the regulation at issue compels an otherwise clear violation

13  of the federal antitrust laws."  *Cost Mgmt. Servs. v. Wash. Nat. Gas Co.*, 99 F.3d 937, 941

14  (9th Cir. 1996) (internal quotation marks omitted).  The doctrine originated in *Parker v.*

15  *Brown*, 317 U.S. 341 (1943), in which the Supreme Court found that the "Sherman Act

16  was not intended to apply to acts of the States 'as sovereigns.'"  *Springs Ambulance*

17  *Serv., Inc. v. City of Rancho Mirage, Cal.*, 745 F.2d 1270, 1272 (9th Cir. 1984).  But "this

18  state-action immunity does not apply automatically to the state's political subdivisions."

19  *Id.*  "As with private parties, immunity will only attach to the activities of local

20  governmental entities if they are undertaken pursuant to a 'clearly articulated and

21  affirmatively expressed' state policy to displace competition."  *F.T.C. v. Phoebe Putney*

22  *Health Sys., Inc.*, 133 S. Ct. 1003, 1011 (2013).  "[G]iven the fundamental national

23  values of free enterprise and economic competition that are embodied in the federal

24  antitrust laws, 'state-action immunity is disfavored[.]'"  *Id.* at 1010 (quoting *F.T.C. v.*

25  *Ticor Title Ins. Co.*, 504 U.S. 621, 636 (1992)).

26       The District argues that the question of state-action immunity is a controlling

27  question of law because, if it applies, it bars all of SolarCity's antitrust claims.[1]  An issue

28

_____

     [1] It would not bar SolarCity's remaining state law tort claims.

is "controlling" if its resolution on appeal "could materially affect the outcome of litigation in the district court."  *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).   Because equitable relief under the federal antitrust laws is the crux of SolarCity's case, the Court concludes that application of state-action immunity is a controlling question of law under § 1292(b).  *See Springs Ambulance*, 745 F.2d at 1272 (granting permission for interlocutory appeal of district court's order denying state-action immunity on motion to dismiss after district court found that it is a controlling issue of law).  However, the Court finds that the District has failed to demonstrate a substantial ground for difference of opinion on this issue.

In ruling on the motion to dismiss, the Court concluded that whether Arizona has articulated a clear policy permitting the District's conduct is a question of fact and noted that SolarCity had adequately alleged that Arizona has no such policy.  (Doc. 77 at 25.)  The District argues that the "clear articulation" prong is a question of law that the Court should have decided in its Order.  The Court agrees with the District.  "[T]he state-action immunity question is one of law that turns on whether the displacement of competition with monopolies in the [relevant] market was 'clearly articulated and affirmatively expressed as state policy.'"  *Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*, 111 F.3d 1427, 1442 (9th Cir. 1996).

However, correction of this error on appeal would not materially advance the ultimate termination of the litigation because there is no substantial ground for difference of opinion that the District's alleged conduct is not protected by state-action immunity.  Had the Court decided the issue as a matter of law, it would have found that Arizona has not expressly articulated a clear policy authorizing the conduct of the District.  *See Cost Mgmt.*, 99 F.3d at 942 ("the relevant question is whether the regulatory structure which has been adopted by the state has specifically authorized the conduct alleged to violate the Sherman Act").  In fact, the opposite is true.  A.R.S. § 40-202(B), cited by SolarCity in its response to the District's motion to dismiss, provides that "[i]t is the public policy of this state that a competitive market shall exist in the sale of electric generation

service."  The District did not address this statute in its reply brief, even though, as the moving party, it had the burden of demonstrating that state-action immunity protects its conduct.  In light of the statute, there are no substantial grounds for disagreement that Arizona has no clearly expressed and affirmative policy displacing competition in the retail electricity market.[2]

Nonetheless, the District argued that "Arizona's clearly articulated policy, which is expressed in the Arizona Constitution and statutes, has been to displace unfettered competition with an elaborate regulatory structure."  (Doc. 53 at 10.)  It claimed "[r]etail electric rates in Arizona are not determined by competition," and cited a litany of statutes and regulations pertaining to the Arizona Corporation Commission's ("ACC") authority to prescribe rates for public service corporations and the ratemaking process in general. (*Id.* at 10-11.); *see also* Ariz. Const. Art. 15 § 3 (mandating that the ACC "shall, prescribe just and reasonable rates and charges to be made and collected, by public service corporations").  In essence, the District argued that its conduct is a foreseeable result of Arizona's regulatory scheme pertaining to electricity rates because the retail electric market is heavily regulated, no other companies are certified to provide retail electricity, and electricity rates are set by the ACC, not the market.  *See Hallie v. Eau Claire*, 471 U.S. 34, 43 (1985) (finding that state-action immunity applies if "anticompetitive effects logically would result from [the State's] authority to regulate").

At most, the District demonstrated that Arizona does not permit retail electricity *rates* to be determined in the open market.  This is the function of the ACC.  But the fact that electricity rates are heavily regulated does not mean that the District is free to act anticompetitively when setting its own prices for distribution of electricity, which incorporates those rates.  *See Phoebe*, 133 S. Ct. at 1012 ("Our case law makes clear that state-law authority to act is insufficient to establish state-action immunity; the substate

---

[2] The District presents no additional arguments on the merits of its state-action immunity defense.  Instead, it only takes issue with the Court's finding that whether Arizona has a clearly expressed and articulated policy displacing competition in the retail electricity market was a question of fact.

governmental entity must also show that it has been delegated authority to act or regulate anticompetitively."). Nor is the District's anticompetitive conduct a foreseeable result of fixed electricity rates. The District adheres to an administrative scheme when setting its "terms and conditions for customer selection, complaint resolution, consumer protection, stranded costs, distribution service rates and charges, system benefit charges and other related matters[.]" A.R.S. § 30-802(B). But this hardly indicates that the District is free to act anticompetitively. Rather, the purpose of the administrative process governing the District's prices is to "promote consistent statewide application of [the public power entities'] respective rules, procedures and orders." *Id.* § 3-802(A).

In summary, had the Court reached the issue as a matter of law, it would have concluded that Arizona does not have a clearly articulated policy to displace competition in the retail electricity market. The clearly articulated policy in Arizona *favors* competition. Although the Court erroneously concluded that application of state-action immunity presented questions of fact, correction of this error on appeal would not materially advance the ultimate termination of this case because, given the undisputed language of A.R.S. § 40-202(B), it is beyond substantial dispute that the District's alleged conduct is not protected by state-action immunity. Therefore, the Court declines to certify this issue for interlocutory appeal.

### B.  Absolute Immunity Under Arizona Law

A.R.S. § 12-820.01 provides "absolute immunity" for a public entity's "exercise of a judicial or legislative function." As a political subdivision of the state, the District is a "public entity" under Arizona law. *See* A.R.S. § 12-820(7) ("'Public entity' includes this state and any political subdivision of this state."). This immunity applies to damages only, not equitable relief. *See AlliedSignal, Inc. v. City of Phx.*, 182 F.3d 692, 697 (9th Cir. 1999) (citing *Zeigler v. Kirschner*, 781 P.2d 54, 61 (Ariz. Ct. App. 1989)). Because this issue turns on questions of fact and would only bar damages, not SolarCity's claims for equitable relief under the federal antitrust laws, it is not a controlling question of law. *See In re Cement Antitrust Litig.*, 673 F.2d at 1026.

1    In addition, there are no substantial grounds for difference of opinion regarding
2    the Court's decision.  The Court found that whether the District's alleged ratemaking
3    ability is a legislative function is a question of fact.  (Doc. 77 at 23.)  The District argues
4    this is a question of law.  (Doc. 82 at 8.)  Absolute immunity is generally a question of
5    law for the court to decide; however, "[b]ecause absolute immunity is related to a
6    defendant's status, usually there are limited factual determinations necessary to resolve
7    the issue."  *Link v. Pima Cty.*, 972 P.2d 669, 674 (Ariz. Ct. App. 1998) (internal citations
8    omitted).  "If an absolute immunity defense is raised and related factual issues exist,
9    those issues should be resolved by the jury as in qualified immunity cases."  *Id.*

10    The District labels its conduct as ratemaking, but there is no authority holding that
11    the District's adoption of prices for sale of retail electricity is ratemaking, let alone that it
12    is a legislative function.  The cases cited by the District in its motion applied to the
13    ACC's ratemaking ability, not the District's.  *See Arizona Corp. Comm'n v. State ex rel.*
14    *Woods*, 830 P.2d 807, 812 (Ariz. 1992) (noting ratemaking is a legislative power of the
15    ACC); *Arizona Corp. Comm'n v. Superior Court*, 480 P.2d 988, 991 (Ariz. 1971) (same).
16    The prices set by the District for its distribution of electricity are wholly separate from
17    the ACC's process for setting the rate of a commodity sold by a public utility.

18    The District claims "it is the *substance* of the public function at issue that
19    determines whether it is legislative in character and that if ratemaking is legislative in
20    character for the ACC, it is legislative in character for the District as well."  (Doc. 83 at
21    13.)  But when ruling on a motion to dismiss, the Court is limited to the allegations in the
22    complaint.  Here, the allegations of the complaint do not allow the Court to make any
23    determination about the District's price setting function, i.e., whether this function has the
24    same features that make the ACC's rate setting functions legislative in character.  Instead,
25    SolarCity alleges that the District acts more like a private corporation because its Board
26    approves the prices after it receives comment from interested parties, it is not subject to
27    any regulation by any state agency with respect to determining its prices, it refused to
28    release information about the process, and it never released a final decision stating the

factual and legal bases for the prices.  (Doc. 39, ¶¶ 42, 91-102.)  Whether the District engages in ratemaking at all, let alone any legislative functions as a traditional branch of government, remains to be determined on a fully-developed factual record.  The Court will not certify this issue for interlocutory appeal.

### C.  Filed-Rate Doctrine

The filed-rate doctrine "precludes interference with the rate setting authority of an administrative agency[.]"  *Wah Chang v. Duke Energy Trading & Mktg.*, 507 F.3d 1222, 1225 (9th Cir. 2007).  Rates that are deemed reasonable by a regulatory agency are insulated from challenge.  *See Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981).[3] Originally, the doctrine applied to rates reviewed and filed by federal agencies.  *See id.* at 578.  Several states have adopted the doctrine, *see Qwest Corp. v. Kelly*, 59 P.3d 789, 800 (Ariz. Ct. App. 2002) (listing cases), but Arizona has not, *see id.*; *see also Johnson v. First Am. Title Ins. Co.*, No. CV-08-01184-PHX-DGC, 2008 WL 4850198, at *4 (D. Ariz. 2008) (Arizona "has never adopted the filed-rate doctrine").  Here, the Court concluded that the doctrine did not apply because, even assuming the prices set by the District are "rates," "SolarCity does not challenge the District's electricity rates as unreasonable, but instead alleges the District imposed the rates to exclude it from the market."  (Doc. 77 at 25.)

Assuming *arguendo* that this is a controlling question of law, there are no substantial grounds for difference of opinion regarding the Court's finding.  The filed-rate doctrine is one of deference for a regulatory agency's conclusion that a rate for some type of public good or service is reasonable.  *See Hall*, 453 U.S. at 577.  The purpose of the doctrine is to prevent "price discrimination among rate payers" and preserve "the role of regulatory agencies in deciding reasonable rates for public utilities and services."  *Qwest*, 59 P.3d at 799.  Federal courts "apply the filed rate doctrine out of deference to a 'congressional scheme of uniform . . . regulation.'  Otherwise [courts] would

---

[3] Although refined in *Hall*, the doctrine originated in *Keogh v. Chicago & Northwestern Railway, Co.*, 260 U.S. 156 (1922), and has been criticized and narrowed by the Ninth Circuit in *Cost Management*, 99 F.3d at 943-48.

1   impermissibly 'usurp[ ] a function that Congress has assigned to a federal regulatory

2   body.'"   *Cty. of Stanislaus v. Pac. Gas & Elec. Co.*, 114 F.3d 858, 862 (9th Cir. 1997)

3   (quoting *Hall*, 453 U.S. at 579, 582) (internal citations omitted).

4         SolarCity does not challenge the reasonableness of any "filed rate" set by any

5   regulatory agency.  It does not claim the District's prices are too high, too low, or that

6   they are artificially inflated to increase profit.  Rather, they challenge the District's

7   discriminatory pricing directed at restricting competition.  The result would be the same

8   had the District decided to refuse electric service to customers who purchase some of

9   their electricity from SolarCity.

10         The District also conflates the *rate* for electricity, which is determined by the

11   ACC, and the *prices* set by the District for distributing that electricity via the grid.  The

12   District does not claim to be a regulatory authority, it does not argue that Arizona grants

13   it any authority to set uniform prices for distributing electricity, and it does not file the

14   prices with any other governmental unit but itself.[4]  No regulatory authority, such as the

15   ACC, approved the District's electricity prices, and thus there is no reason to assume the

16   prices are reasonable as a matter of law.[5]

17         Furthermore, the doctrine does not bar antitrust suits by competitors alleging that

18   "the rates which were adopted were adopted in part because of an antitrust violation on

19   the part of the defendant."  *Cost Mgmt.*, 99 F.3d at 947.  The District argues SolarCity

20   brings this action "in the shoes" of electric customers.  (Doc. 99 at 11.)  But the Court has

21   concluded that SolarCity is a competitor of the District, and SolarCity alleges the District

22   violated antitrust laws when it changed its pricing structure.  The doctrine simply does

23   not apply to this case, and the Court declines to certify this issue for interlocutory appeal.

24         **D.  Conclusion**

25

---

26       [4] If, for instance, SolarCity filed suit challenging the rates for electricity set by the
ACC, the doctrine would apply and bar the suit.  *See Hall*, 453 U.S.

27       [5] The District argues that its Board approved the prices, and thus they are entitled
to deference.  But the District cannot self-police its own rates, especially given the Board

28   is elected by its "shareholders," much like a for-profit corporation.  (Doc. 39, ¶¶ 24, 25).

1    The District has failed to establish exceptional circumstances that would justify

2    immediate appeal of these issues.  *See Livesay*, 437 U.S. at 475.  The motion is denied.

3    **II.  Motion to Stay**

4        The District requests that the Court stay this action pending resolution of its

5    appeal on two issues: state-action immunity and absolute immunity under Arizona law.

6    (Doc. 83.)  The District appealed the Court's ruling on these issues on November 20,

7    2015.  (Doc. 81.)  It argues these two immunities are immediately appealable at this

8    stage, and thus the Court should stay the case.[6]  Even assuming these issues are

9    appealable as of right, it "is firmly established that an appeal from an interlocutory order

10   does not divest the trial court of jurisdiction to continue with other phases of the case."

11   *Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982).[7]  Although the

12   Court must wait for the Ninth Circuit's determination before proceeding on those issues,

13   the Court is not required to stay the entire case.  *See Britton v. Co-op Banking Grp.*, 916

14   F.2d 1405, 1412 (9th Cir. 1990) ("Absent a stay, an appeal seeking review of collateral

15   orders does not deprive the trial court of jurisdiction over other proceedings in the case,

16   and an appeal of an interlocutory order does not ordinarily deprive the district court of

17

18   [6] The cases cited by the District in support of immediate appeal are not Ninth
19   Circuit authority, and each case dealt with a trial court's denial of an immunity at the
20   summary judgment stage, not the 12(b) stage.  *See Commuter Transp. Sys., Inc. v.
     Hillsborough Cty. Aviation Auth.*, 801 F.2d 1286, 1289 (11th Cir. 1986) (finding district
21   court's order denying summary judgment on state-action immunity grounds a final
     appealable decision); *Tucson Unified Sch. Dist. v. Borek*, 322 P.3d 181, 184 (Ariz. Ct.
22   App. 2014) (accepting special action jurisdiction of trial court order denying summary
23   judgment on absolute immunity under A.R.S. § 12-820.01); *Pinal Cty. v. Cooper*, 2015
     WL 6157397, at *2 (Ariz. Ct. App. Oct. 20, 2015) (allowing appeal of immunity claims
24   denied on motion for summary judgment).

25   [7] The Court has serious doubts as to whether the two immunity issues are
26   immediately appealable.  "Federal appellate jurisdiction is generally limited to review of
     'final decisions of the district courts of the United States.'"  *DC Comics v. Pac. Pictures
27   Corp.*, 706 F.3d 1009, 1012 (9th Cir. 2013) (quoting 28 U.S.C. § 1291)).  The Court did
     not make a final decision on the state-action doctrine or absolute immunity under Arizona
28   law.  The District is free to raise these immunities at summary judgment.

jurisdiction except with regard to the matters that are the subject of the appeal.").  As stated above, the Court declines to certify the three immunity issues for direct appeal, and it sees no reason to further delay the case.

The District asks the Court to use its discretion and stay the case because the District is likely to succeed on its immunity claims, and it will suffer irreparable injury if the Court denies the stay.  (Doc. 83 at 9.)  "A stay is not a matter of right, even if irreparable injury might otherwise result."  *Nken v. Holder*, 556 U.S. 418, 433 (2009). Whether to impose a stay is an exercise of judicial discretion guided by four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other [parties]; and (4) where the public interest lies."  *Id.* at 434.

The Court has already concluded that the District is unlikely to succeed on its state-action immunity defense and that questions of fact preclude a determination that the District is absolutely immune under Arizona law.  In addition, were the Court inclined to grant the stay, the harm suffered by SolarCity would likely outweigh the harm suffered by the District.  SolarCity has allegedly been ousted from the market by the District.  Not only does it lose sales, it loses customer goodwill and market share.  The District, meanwhile, suffers only monetary harm as a result of litigation, i.e., the money it spends defending itself.  Monetary harm is not irreparable.  *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.").  As such, the Court will not exercise its discretion to stay this case.

Because the Court declines to certify these issues for appeal, and because the Court finds that the District failed to present "a substantial case for relief on the merits," *see Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012), the District's motion to stay is denied.

**IT IS ORDERED** that the District's motion for certification pursuant to 28 U.S.C. § 1292(b), (Doc. 82), and motion to stay, (Doc. 83), are **DENIED**.

Dated this 21st day of December, 2015.


Douglas L. Rayes
United States District Judge