COPPERSMITH BROCKELMAN PLC
KEITH BEAUCHAMP (#012434)
ROOPALI H. DESAI (#024295)
2800 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 381-5490
kbeauchamp@cblawyers.com
rdesai@cblawyers.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM A. ISAACSON (*admitted pro hac vice*)
KAREN L. DUNN (*admitted pro hac vice*)
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
wisaacson@bsfllp.com
kdunn@bsfllp.com

STEVEN C. HOLTZMAN (*admitted pro hac vice*)
SEAN P. RODRIGUEZ (*admitted pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
sholtzman@bsfllp.com
jcove@bsfllp.com
srodriguez@bsfllp.com

SHEARMAN & STERLING LLP
JOHN F. COVE, JR. (*admitted pro hac vice*)
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (415) 616-1139
john.cove@shearman.com

Attorneys for Plaintiff SolarCity Corporation

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SolarCity Corporation,<br><br>            Plaintiff,<br><br>            vs.<br><br>Salt River Project Agricultural Improvement and Power District,<br><br>            Defendant. | No. 2:15-CV-00374-DLR<br><br>***PROPOSED PUBLIC-REDACTED VERSION***<br><br>**PLAINTIFF SOLARCITY CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

LEGAL STANDARD ....................................................................................................2

ARGUMENT ..................................................................................................................3

I.      The Relevant Product Market Is The Provision Of Energy To End-
        Use Consumers And SolarCity Competes With SRP In That Market..................4

        A.      SRP Admits Reasonable Interchangeability.................................................4

        B.      The Parties Can And Do Deprive One Another Of Business. ...................5

        C.      The Parties View Each Other As Competitors. ...........................................5

        D.      Customers View SRP's And SolarCity's Products As
                Substitutes.....................................................................................................7

        E.      Consumers Consider The Relative Prices of Both Firms And
                SolarCity Prices Its Products In Reference To SRP...................................8

        F.      SRP's Arguments About Market Definition Are Merely Legal
                Contentions About Well-Established Facts: SRP Cannot Point
                To A Material Fact As To Which There Is A Genuine
                Dispute...........................................................................................................8

II.     The Relevant Geographic Market Is SRP's Service Territory........................... 11

III.    SRP Possesses Monopoly Power In The Relevant Market................................ 11

        A.      There Is No Genuine Dispute That Customers Need Access
                To Electricity At Any Time Day Or Night And SRP Is The
                Only One In Its Territory Who Can Provide It. ...................................... 12

        B.      Undisputed Direct Evidence Shows SRP Has The Power To
                Control Prices And Exclude Competition. ................................................ 13

        C.      Undisputed Evidence of Market Shares and Barrier to Entry
                Confirms That SRP Has Monopoly Power. ............................................. 14

                1.      SRP's Monopoly Market Share Demonstrates Its
                        Monopoly Power. ............................................................................ 14

                2.      Entry Barriers Protect SRP's Monopoly Power.............................. 15

CONCLUSION ........................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*American Tobacco Co. v. United States*,
   328 U.S. 781 (1946) ................................................................. 14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................... 2

*Brinson v. Linda Rose Joint Venture*,
   53 F.3d 1044 (9th Cir. 1995) ...................................................... 3

*Brown Shoe Co. v. United States*,
   370 U.S. 294 (1962) ................................................................... 4

*Bunker's Glass Co. v. Pilkington PLC*,
   202 Ariz. 481 (2002) ................................................................... 3

*Bunker's Glass Co. v. Pilkington PLC*,
   206 Ariz. 9 (2003) ...................................................................... 3

*Cal. v. Sutter Health*,
   84 F. Supp. 2d 1057 (N.D. Cal. 2000) ........................................ 9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................... 2

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
   504 U.S. 451 (1992) ................................................ 4, 9, 13, 14

*Filco v. Amana Refrigeration, Inc.*,
   709 F.2d 1257 (9th Cir. 1983) .................................................... 3

*Grason Elec. Co. v. Sacramento Mun. Util. Dist.*,
   571 F. Supp. 1504 (E.D. Cal. 1983) ...................................... 3, 11

*Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc.*,
   895 F.2d 1417 (9th Cir. 1990) .................................................. 10

*IGT v. All. Gaming Corp.*,
   702 F.3d 1338 (Fed. Cir. 2012) ............................................... 10

*Image Tech. Servs. v. Eastman Kodak Co.*,
   125 F.3d 1195 (9th Cir. 1997) .......................................... passim

*In re Super Premium Ice Cream Distrib. Antitrust Litig.*,
   691 F. Supp. 1262 (N.D. Cal. 1988) ........................................ 10

*Los Angeles Land Co. v. Brunswick Corp.*,
   6 F.3d 1422 (9th Cir. 1993) ...................................................... 15

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*,
   924 F.2d 1484 (9th Cir. 1991) .................................................. 11

*Newcal Indus., Inc. v. Ikon Office Sol.*,
   513 F.3d 1038 (9th Cir. 2008) ............................................ 4, 5, 6

*Pasco Indus., Inc. v. Talco Recycling, Inc.*,
    195 Ariz. 50, 985 P.2d 535 (App.1998) ........................................................... 3

*PepsiCo, Inc. v. Coca-Cola Co.*,
    114 F. Supp. 2d 243 (S.D.N.Y. 2000),
    *aff'd*, 315 F.3d 101 (2d Cir. 2002) .................................................................. 5

*Rebel Oil Co. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ................................................................... passim

*Soremekun v. Thrifty Payless, Inc.*,
    509 F.3d 978 (9th Cir. 2007) ........................................................................... 2

*Standard Oil Co. of New Jersey v. United States*,
    221 U.S. 1 (1911) ........................................................................................... 14

*Telecor Commc'ns, Inc. v. Sw. Bell Tel. Co.*,
    305 F.3d 1124 (10th Cir. 2002) ...................................................................... 3

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
    875 F.2d 1369 (9th Cir. 1989) ........................................................................ 6

*Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*,
    959 F.2d 468 (3d Cir. 1992) ........................................................................... 8

*United States v. E. I. du Pont de Nemours & Co.*,
    351 U.S. 377 (1956) ................................................................................... 9, 12

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966) ...................................................................... 4, 6, 10, 11

*United States v. Sungard Data Sys., Inc.*,
    172 F. Supp. 2d 172 (D.D.C. 2001) ............................................................... 9

*Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.*,
    951 F.2d 1158 (9th Cir. 1991) ...................................................................... 10

**STATUTES**

Arizona Revised Statutes
    Section 44-1403 ............................................................................................. 3

Federal Rules of Civil Procedure
    Section 56(a) .............................................................................................. 2, 3
    Section 56(e) .................................................................................................. 3

United States Code
    Title 15, Section 2 ......................................................................................... 3

**INTRODUCTION**

The evidence in this case will demonstrate that SRP has specifically, and successfully, undertaken to exclude the first competition to ever exist to its decades-old electricity monopoly. The evidence will show that SRP formed and executed a deliberate plan—the "E-27" rate structure—to kill rooftop solar. It will also show that SRP's plan worked: Across all solar installers, installations dropped by about 95% in the eighteen months following SRP's implementation of E-27. SRP offers only pretextual justifications and empty legal formalisms to justify and excuse its anticompetitive conduct. None of its arguments comes close to justifying SRP's discrimination against customers whose only meaningful defining characteristic is that they obtain electricity through a competitor. SolarCity looks forward to proving its case and disproving SRP's defenses at trial, where genuine factual disputes continue to exist.

At this juncture, however, SolarCity moves for partial summary judgment where there is no genuine fact dispute: SRP's monopoly power in a relevant market for the provision of electricity to end-use customers in SRP's service territory, which is the first element of SolarCity's federal and state monopolization claims.

The facts demonstrating this relevant market and SRP's power in it are not in dispute. There is no reasonably interchangeable substitute for electricity for end-use consumers. When consumers use more solar-generated electricity, they buy less electricity from SRP, which causes SRP to lose sales and revenues.

The purchasing behavior and unrebutted testimony by customers, as well as numerous contemporaneous SRP documents establish that solar-generated electricity substitutes for electricity that SRP otherwise would supply, thus depriving SRP of sales and revenues when consumers are able to go solar. In response, SRP has argued that it generates electricity when solar power cannot, that consumers must obtain some of their electricity from SRP regardless of whether they also use solar, and that SolarCity typically collects revenues from the sale or lease of solar systems rather selling electricity directly. These arguments are irrelevant. They neither contradict the fundamental

economic realities nor create a dispute as to any material fact about the relevant market for provision of electricity to end-use customers in SRP territory.

Monopoly power is similarly indisputable. As SRP calculated in the ordinary course of business, SRP's market share ███████████████████████████████████ ███████████████████████████████. SRP has the ability to exclude competition, controls the transmission and distribution grid that act as a barrier to entry, and freely admits it sets prices without regard to competition. Indeed, SRP proved its power to exclude competition by radically cpgtkpi "yj g"tc\ g"uttwewvg"hqt consumers who y qwrf deal with competitors, thus dramatically reducing new solar installations from its competitors in its territory. This is textbook monopoly power.

No material fact necessary to resolve the issues of market definition and monopoly power is in dispute. Partial summary judgment would streamline and focus the trial on SRP's abuse of its monopoly power, conserving the parties' and the Court's resources, and so should be granted.

## LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed most favorably to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* (citation omitted).

Where the moving party will have the burden of proof at trial, it must demonstrate that no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The party opposing summary judgment "may not rest upon mere allegations of denials of pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044,

1049 (9th Cir. 1995); *see also* Fed. R. Civ. P. 56(e). "[I]f there is no genuine issue of material fact, and if the resisting party does not present a record sufficient to support a reasonable finding in his favor, a district court has a duty to grant the motion for summary judgment." *Filco v. Amana Refrigeration, Inc.*, 709 F.2d 1257, 1260 (9th Cir. 1983) (citation omitted).

Partial summary judgment is appropriate when there is no material factual dispute as to "part of [a] claim or defense." Fed. R. Civ. P. 56(a). It is appropriate to grant summary judgment on market definition and monopoly power when no material facts are in dispute. *Telecor Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 305 F.3d 1124, 1136 (10th Cir. 2002) (affirming grant of plaintiff's partial summary judgment motion on product market definition); *Grason Elec. Co. v. Sacramento Mun. Util. Dist.*, 571 F. Supp. 1504, 1523 (E.D. Cal. 1983) (deciding the relevant market for Sherman Act, Section 2 claims at summary judgment, while denying remainder of summary judgment motion).

## ARGUMENT

To establish its federal and state monopolization claims, SolarCity must show (1) possession of monopoly power in the relevant market and (2) willful acquisition or maintenance of that power in a manner that caused harm to competition. *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997) ("*Kodak III*").[1] SolarCity moves for summary judgment on SRP's monopoly power in a relevant market.[2] To meet its burden, SolarCity must show that a relevant market exists and that

---

[1] Monopolization under Arizona state law (A.R.S. § 44-1403) uses substantially the same analysis, except that Arizona may disapprove more recent federal case law. *See Bunker's Glass Co. v. Pilkington PLC* ("*Bunker's Glass I*"), 202 Ariz. 481, 488-89 (2002); *Bunker's Glass Co. v. Pilkington PLC* ("*Bunker's Glass II*"), 206 Ariz. 9, 16 (2003) ("Thus the goal of the Uniform Act" from which Arizona's antitrust laws were adopted "appears to be uniformity in the standard of conduct required . . . ."); *see also Pasco Indus., Inc. v. Talco Recycling, Inc.*, 195 Ariz. 50, 57, ¶ 25, 985 P.2d 535, 542 (App.1998) (described in *Bunker's II* as "looking to federal law for the standard to determine whether an antitrust defendant possessed monopoly powers").

[2] As noted above, this motion is limited to the issue of monopoly power, and does not address the issue of whether SRP has acted anticompetitively to enhance or maintain that power, which SolarCity will prove at trial. Courts recognize that a firm's *possession* of monopoly power is a distinct issue from the *exercise* of that power. *E.g.*, *United States v.* (footnote continued on next page)

SRP has monopoly power within that market. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008). Because there is no disputed issue of material fact that the relevant market is the provision of electricity to end-use customers in SRP's service territory, and SRP possesses monopoly power in that market, summary judgment on those elements is appropriate here.

## I. The Relevant Product Market Is The Provision Of Energy To End-Use Consumers And SolarCity Competes With SRP In That Market.

"The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). "Reasonable interchangeability" looks to "the commercial realities faced by consumers." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482 (1992). In this case, that commercial reality is the interchangeability to end-use consumers of electricity provided by SRP and that provided by rooftop solar systems. *See* PI-Kalt Rep. ¶ 112 (Dkt. No. 160-33) (cited at SSUF ¶ 25). The relevant product market in this case is "the provision of energy to end-use consumers," which "includes as competitors SRP and, when electricity from on-site solar generation is available, providers of rooftop solar power systems, such as SolarCity." *Id.*

### A. SRP Admits Reasonable Interchangeability

Among other evidence, SRP witnesses from all levels of the company admit reasonable interchangeability. SSUF ¶ 8. For example:

> Q. Is the electricity generated by the rooftop solar system reasonably interchangeable with the displaced electricity from SRP? A. Yes, it is. (Bonsall 71:5-8.)

> Q. So the power generated by rooftop solar is interchangeable with the power provided by SRP? . . . A. Used for the same purpose, if by that, you mean, used for the same purpose, I would say that they can use either one, yes." (Hendrickson at 92:6-19.)

*Grinnell Corp.*, 384 U.S. 563, 571 (1966) ("In the present case, 87% of the accredited central station service business leaves no doubt that the congeries of these defendants have monopoly power—*power which, as our discussion of the record indicates, they did not hesitate to wield*—if that business is the relevant market.") (emphasis added).

**B.** **The Parties Can And Do Deprive One Another Of Business.**

"Ultimately, the relevant market must include 'the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business.'" MTD Order at 12 (quoting *Newcal Indus.*, 513 F.3d at 1045); *see also Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). The undisputed facts establish that until SRP acted to exclude competition, SRP and rooftop solar firms, including SolarCity, deprived each other of significant levels of business.

Both parties' products generate electricity for end-use consumers: SRP provides electricity to retail customers, and SolarCity provides distributed rooftop solar systems to retail customers, by sale or lease, that produce electricity. SSUF ¶ 1, SSUF ¶ 4, SSUF ¶ 6. The electricity generated by SolarCity systems is exactly interchangeable with the electricity generated by SRP. SSUF ¶ 8. SRP agrees. As its CEO, Mark Bonsall, admitted, "some of that electricity produced by the solar system displace[s] some of the electricity that the customer buys from SRP." SSUF ¶ 9; *see also* SSUF ¶¶ 8-10. Put another way, the more a consumer's solar system produces, the less she buys from SRP. As SRP's expert Michael Katz put it, when customers acquire "more electricity from SolarCity," "as part of that decision [they are] buying less . . . from SRP." Katz Tr. at 31:9-33:21 (cited at SSUF ¶ 8). From the consumer perspective, the electricity is the same – only the percentages obtained from each supplier vary, in inverse proportion.

**C.** **The Parties View Each Other As Competitors.**

As a matter of practical economic reality, market participants' own assessment of the identity of their competition is instructive in determining the relevant product market. *PepsiCo, Inc. v. Coca-Cola Co.*, 114 F. Supp. 2d 243, 253 (S.D.N.Y. 2000), *aff'd*, 315 F.3d 101 (2d Cir. 2002) (determining relevant market on summary judgment and rejecting Pepsi's narrow market definition where "the evidence shows that Coca–Cola viewed PepsiCo as a competitor, and *vice versa*, and that both they and fountain syrup purchasers viewed systems distribution as a competitive advantage, not a separate market").



███████████████████████████████████████████

██████████████████████████████████████████

████████████████ [3] SSUF ¶ 10. █████████████

██████████████████████████████████████████

██████████ SSUF ¶ 16. ████████████████████

██ █████████████████████████████████ SJ-PX 275 at slide 65 (cited at SSUF ¶ 16).

• ██████████████████████████████████████
████████████████████████████
█████████████ I-PX 112 (cited at SSUF ¶ 17).

• █████████████████████████████████████ PI-PX 60 (Dkt.159-15) at -145 (cited at SSUF ¶ 10); *see also* PI-PX 82 (Dkt. No. 159-22) at -982 (cited at SSUF ¶ 10).

These admissions leave no genuine dispute that SRP and rooftop solar competed in a single relevant market, and that SRP viewed competition in exactly that way.

████████████████████████████████████████

██████████████████████████████████████ SSUF ¶¶ 11–17.[4]  SolarCity viewed the market no differently.  As its CEO made clear at

---

[3] This Court has already recognized: "When SRP imposed an extra fee for customers with self-generating systems, customers switched back to purchasing all of their electricity from SRP. This dynamic illustrates that SolarCity and the District have the actual ability to deprive each other of significant business in the relevant market. *See Newcal Indus.*, 513 F.3d at 1045 (quoting *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.,* 875 F.2d 1369, 1374 (9th Cir. 1989)." (MTD Order at 14.)

[4] Although SRP sometimes contends that rooftop solar firms are not competitors (and, somewhat perversely, that SRP is a monopoly), because, unlike SRP, they do not operate a grid that delivers electricity 24 hours a day, every day, (e.*g.*, Bonsall 61:12-24 (("We don't really have any competitors. We have a dedicated service territory") (cited at SSUF ¶ 42), that is not a factual dispute but an argument about the import of undisputed facts. As explained more fully in Section I.E, it is well-established that the fact that a product is not a complete substitute at all times and for all uses does not mean that the product is not reasonably interchangeable and competing in the same market as a product for which it is a partial substitute. *United States v. Grinnell Corp.*, 384 U.S. 563, 571-72 (1966); *Kodak III,* 125 F.3d at 1205.  Here, the electricity produced by SolarCity is not only a reasonable substitute, but it is the exact same thing whether it is consumed or exported back into the (footnote continued on next page)

deposition: "the primary competitor is the utility and then the secondary competitor is the -- another solar company." SSUF ¶ 5. The practical economic reality is indisputable: until being excluded by SRP's anticompetitive conduct, rooftop solar competed in the same relevant market with SRP.

### D. Customers View SRP's And SolarCity's Products As Substitutes.

SolarCity and SRP are not the only ones to view their products as competitors in a single relevant market. So do customers. In both in their purchasing behavior prior to SRP's anticompetitive conduct and in testimony, customers show that they, like the parties, view electricity provided through rooftop solar and electricity from SRP as commercially practical substitutes. SSUF ¶ 18. Customers' interest in solar recurrently includes the desire to reduce the amount of electricity purchased from SRP. As one customer succinctly put it:

> My goal, as before, was to substitute some of the electricity I purchased from the utility with a solar installation that would allow me to generate some of the electricity I consume. I was excited about this because it seemed to me that solar provided the first opportunity to have a choice of electricity providers, as well as being good for the environment. PI-███████ at ¶ 2 (Dkt. No. 160-23) (cited at SSUF ¶ 18).

Or another:

> I want to install solar panels on my roof, both to save money on my monthly SRP bills, and to support renewable energy. My hope was to decrease the amount of electricity I bought from SRP by installing solar, and generating some of my own electricity. PI-███████. at ¶ 2 (Dkt. No. 160-39) (SSUF ¶ 18).

"If consumers view the products as substitutes, the products are part of the same market." *Rebel Oil*, 51 F.3d at 1435. That is unquestionably the case here, and nothing in the record shows (or could show) otherwise. SRP provided no contrary customer declarations. SRP's experts have not spoken to any SRP customers. SSUF ¶ 24. There is no material dispute about the interchangeability of SRP's and SolarCity's products

---

grid. That SolarCity's product does not offer identical features as SRP's is legally irrelevant. As this Court has already held: "the fact that customers who purchase SolarCity's product still have to purchase electricity from the District does not undermine the interchangeability of the two products." MTD Order at 13.

from a consumer viewpoint.  This alone is dispositive.

**E.    Consumers Consider The Relative Prices of Both Firms And SolarCity Prices Its Products In Reference To SRP.**

Two products are part of the same relevant market when one firm prices in reference to another firm.  *E.g., Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 480 (3d Cir. 1992) (affirming rejection of single-brand Chrysler-only market on summary judgment because, inter alia, "Chrysler's sales depend on its cars' comparative prices and features" in relation to other car brands).  Here, it is clear that customers consider the relative pricing offered by SRP and rooftop solar firms when making electricity purchasing decisions.  ██████████████████████████

████████████████████████████████████████████████████████

███████████████████  SSUF ¶ 20.  This behavior, which is not in dispute, reflects cross-elasticity of demand and the reality of product substitutability.  Similarly, it is undisputed that SolarCity's main factor in pricing its rooftop solar systems is to price below utility pricing.  SSUF ¶ 19.  Neither SRP's fact witnesses nor SRP's experts dispute these basic facts.[5]

**F.    SRP's Arguments About Market Definition Are Merely Legal Contentions About Well-Established Facts: SRP Cannot Point To A Material Fact As To Which There Is A Genuine Dispute.**

Since SRP cannot materially dispute SolarCity's proposed relevant market – indeed, its experts neither offer an alternative, nor dispute the pertinent facts – it relies on

---

[5] The stunning  drop in new residential solar installations that occurred after SRP instituted E-27, which increased the effective price consumers would pay for electricity if they adopt solar, also demonstrates the cross elasticity of demand between SRP and SolarCity's offerings.  PI-Kalt Rep. ¶ 124. Dr. Katz argues that this conclusion is flawed because a price increase by one competitor would ordinarily would increase demand for the other competitor's product.  PI-Katz Rep. ¶¶ 135-36.  But Dr. Katz willfully ignores the key undisputed fact: with E-27, SRP dramatically increased its electricity price to new rooftop solar customers only (i.e., effectively *raising the consumer's costs of dealing with a competitor*), satisfying itself with a much more moderate price increase to other customers.  The net effect, as Dr. Katz well understands but ignores, was that the total cost of distributed solar to end users increased dramatically in relation to their cost of solely using SRP electricity.  The predictable result—a near complete drop in solar installations due to the radical change in relative costs to consumers—is unequivocal evidence of cross-elasticity of demand between solar- and SRP-generated power.

flimsy legal contentions or misdirection to try to avoid a market definition. SSUF ¶¶ 23–25. SRP's experts attempt distraction through either formalistic distinctions, such as the extent to which rooftop solar providers have been subjected to regulation as providers of electricity under Arizona law, or re-categorizations, such as arguing (despite this Court's previous finding to the contrary) that because solar does not provide a complete substitute for what SRP provides and customers must interconnect and purchase electricity from SRP even with solar, it is a "complement" and does not compete in the same relevant market. PI-Katz (Dkt. No. 160-35) ¶¶ 113–16; Tierney Tr. 40:7–41:22. None of these distractions succeeds.

As to the first, "[l]egal presumptions that rest on formalistic distinctions rather than actual market realities are generally disfavored in antitrust law. . . . In determining the existence of market power, and specifically the 'responsiveness of the sales of one product to price changes of the other,' this Court has examined closely the economic reality of the market at issue." *Kodak*, 504 U.S. at 466-467 (quoting *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 400 (1956)). Formal legal distinctions that do not affect competition in the marketplace, such as the degree to which solar is regulated, are irrelevant to market definition and cannot create a genuine factual issue. Real-world consumer decisions and perceptions are what matter.[6]

According to at least ███ of SRP's own experts—███ it hired to review E-27

---

[6] Similarly, SRP's argument that SolarCity does not compete in the market for the provision of electricity to end-users because it merely enables consumers to generate their own electricity, rather than selling electricity itself as a formal matter, does not undermine the economic reality of competition. *See United States v. Sungard Data Sys., Inc.*, 172 F. Supp. 2d 172, 186 (D.D.C. 2001) ("As a matter of law, courts have generally recognized that when a customer can replace the services of an external product with an internally-created system, this 'captive output' (i.e. the self-production of all or part of the relevant product) should be included in the same market."); *see also Cal. v. Sutter Health*, 84 F. Supp. 2d 1057, 1068 (N.D. Cal. 2000) ("Internal or captive transfers of a product should be included in the market. It is a part of supply, and control over supply determines the existence of market power . . . .") (internal quotations and modifications omitted), *aff'd*, 217 F.3d 846 (9th Cir. 2000). Quoting *Sungard*, this Court has already concluded that "when a customer can replace the services of an external product with an internally-created system, this 'captive output' (i.e. the self-production of all or part of the relevant product) should be included in the same market." MTD Order at 13 (internal quotations omitted).

during the 2014-15 Price Process and ██████████████████████████—consumer

rooftop solar, including that provided by SolarCity, competes with utility-provided

electricity.  SSUF ¶¶ 13, 22.  As SRP's expert Ahmad Faruqui admits, rooftop solar

providers compete with utilities because "they are providing customers the means by

which to generate their own power as opposed to buy it from the grid."  SSUF ¶ 13.

Neither formal distinctions nor regulatory definitions can change this.

As to SRP's second argument, the Supreme Court and the Ninth Circuit have

made clear many times that firms need not offer the same product or set of products or

services to compete in a relevant market.  *United States v. Grinnell Corp.*, 384 U.S. 563,

571-72 (1966); *Kodak III*, 125 F.3d at 1205 ("that all providers do not offer the same

'package' or cluster of goods or services is irrelevant"); *Yellow Pages Cost Consultants,*

*Inc. v. GTE Directories Corp.*, 951 F.2d 1158, 1160 (9th Cir. 1991) (defendant offering

consulting services bundled with advertising sales could still be subject to liability in

Section 2 case brought by firm that offered consulting services but not advertising sales

for alleged monopolization of market for consulting services).[7]

Thus, as this Court has already held (see above, fn. 4), the fact that SolarCity does

not deprive SRP of electricity revenues for power sold when the sun is not shining does

not negate the competition that exists for the provision of electricity when solar *is*

producing.  Although solar users indisputably need some SRP electricity, labeling solar a

---

[7] Similarly, products need not be perfect substitutes or compete at all times for all uses to
be competitors in the same market.  *E.g.*, *IGT v. All. Gaming Corp.*, 702 F.3d 1338, 1345
(Fed. Cir. 2012) (affirming District Court's rejection of plaintiff's alleged market of
casino "wheel games" in favor of broader market of all casino floor games,
notwithstanding various functional differences among such games, because "a market
limited to wheel games would not encompass all economic substitutes"; District Court
correctly "based its ultimate conclusion on competition, not on functionality").  *In re*
*Super Premium Ice Cream Distrib. Antitrust Litig.*, 691 F. Supp. 1262, 1268 (N.D. Cal.
1988), *aff'd sub nom. Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc.*,
895 F.2d 1417 (9th Cir. 1990) (holding on summary judgment that products were in same
relevant market despite "physical or price differences" because the record demonstrated
that they "compete[d] with one another for customer preference and for space in the
retailers' freezers").

"complement" on this basis does not mean that it is not also a competitive substitute.[8]

Customers', SRP's, and SolarCity's real-world view of rooftop solar as a reasonably interchangeable substitute for SRP-provided power is dispositive. No superficial labels can change that.

## II.    The Relevant Geographic Market Is SRP's Service Territory.

Courts assess monopoly power within a product and geographic market. "The purpose of the search for the relevant geographical market is to find the area or areas to which a potential buyer may rationally look for the goods or services that he seeks." *Grinnell*, 384 U.S. at 588; *see also Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir. 1991) (geographic market is the "area of effective competition where buyers can turn for alternate sources of supply") (internal quotation marks omitted). Firms that "have the actual or potential ability to deprive each other of significant levels of business" are in the same market. *Rebel Oil*, 51 F.3d at 1434.

There is no genuine disputed issue that the geographic market in this case is SRP's service territory. SSUF ¶¶ 26-28. As SRP's CEO admitted, retail electricity customers "can't reasonably substitute electricity procured outside SRP's territory." SSUF ¶ 26; *cf. Grason Elec. Co.*, 571 F. Supp. at 1523 (finding on summary judgment that electrical utility's service area relevant geographic market). SRP cannot reasonably, or factually, contend that any other geography other than its service territory should apply.

## III.    SRP Possesses Monopoly Power In The Relevant Market.

---

[8] Dr. Katz also criticizes Dr. Kalt for not properly performing the so-called "hypothetical monopolist test" from the U.S. Department of Justice/Federal Trade Commission's Horizontal Merger Guidelines. ███████████████████████████████████ ████████████████████████████████████████████████████ PI-Kalt Rep. ¶¶ 120-24. Dr. Katz argues that competition from a firm outside the "minimal" set of sellers contemplated by the hypothetical monopolist test would be insufficient to protect buyers from the exercise of market power by firms within that set. PI-Katz ¶¶ 127, 132. This is irrelevant. SRP is not a hypothetical monopolist but an actual, admitted monopolist. SolarCity does not contend that either it or solar providers generally are currently capable of preventing any and all exercise of monopoly power by SRP, only that distributed solar takes some business away from SRP and would be capable of taking more, and serving as a more effective competitive check on SRP, in the absence of anticompetitive conduct.

SRP has monopoly power – "the power to control prices or exclude competition." *Du Pont*, 351 U.S. at 391.   Market power can be proven by either direct or circumstantial evidence, and here there can be no genuine dispute that SRP possesses it.  *Rebel Oil*, 51 F.3d at 1434.

**A.   There Is No Genuine Dispute That Customers Need Access To Electricity At Any Time Day Or Night And SRP Is The Only One In Its Territory Who Can Provide It.**

"When a product is controlled by one interest, without substitutes available in the market, there is monopoly power."  *Du Pont*, 351 U.S. at 394.

Any customer in SRP's service territory who wants electricity power needs to obtain at least some of it from SRP.  SSUF ¶ 29.  ██████████████████████████

███████████████████████████████████████ SSUF ¶ 42; *see also id.* at ¶ 42

█████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████   Similarly, SRP's experts do not dispute that SRP has monopoly power.    Dr. Tierney believes that SRP is a monopolist.  SSUF ¶ 43

More importantly, customers agree, repeatedly stating that as they consider their alternatives as matter of practical reality, they see SRP as a monopoly:

- I wish I could choose my energy supplier, but I feel that SRP is a monopoly from which I cannot free myself. Either I do not go solar, and do not have a choice of energy suppliers, or I do go solar, and do not have a choice of price plans or ability to save. This seems like no choice at all.

- I think of SRP like the telecommunications monopolies of the '70s – the utility controls the grid, on which I must depend, and this allows them to extort me."

- Let's face it - SRP is a monopoly. Those of us on their grid have nowhere else to turn to for electricity. This smacks of a monopolistic tactic to eliminate what little competition they have.

SUUF ¶ 29.

Customers' perception that SRP is a monopoly is based on two indisputable factors, both of which are core to the monopoly power inquiry: SRP has the demonstrated power to exclude competition and admitted power over price.

**B.    Undisputed Direct Evidence Shows SRP Has The Power To Control Prices And Exclude Competition.**

There is no dispute that SRP has the power to control price, and does so.  There is currently no competitive check on SRP's ability to set prices, and SRP sets its prices without regard to competition.  As its Manager of Pricing Design, John Tucker testified:



SSUF ¶ 30.[9]  This testimony is consistent with SRP's long history of unrestrained price increases.  SSUF ¶ 21.  A defendant's ability to price without regard to competition reflects monopoly power.  *Rebel Oil*, 51 F.3d at 1439.

Nor can there be dispute that SRP has the power to exclude competition and has done so. SRP has demonstrated its ability to squelch competition by unilaterally imposing E-27 on customers who wish to acquire electricity from a competitor.  SSUF ¶¶ 30-31, 37, 39.  Indeed, SRP's control of the grid provides it the ability to exclude because customers must do business with SRP.  SSUF ¶ 40.  ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

SSUF ¶¶ 32, 35 – indisputably shows SRP's ability to exclude.[10]  As one customer put it:

> To our surprise, we were repeatedly turned down by company after company. Installers told us, "we'd love to work with you, but to be honest, there will be little to no savings for you now that SRP is charging additional

---

[9] In fact, as noted above, in depositions SRP executives sometimes described SRP as a monopolist without any competition at all on the theory that distributed solar cannot provide electricity on demand at all times, as SRP does.  *See* fn. 4 above.

[10] That a small number of consumers applied for and installed solar systems after E-27 does not negate monopoly power because complete exclusion of any and all competition is not necessary for monopoly power.  *E.g., Eastman Kodak Co*., 504 U.S. at 481; *see* Section C.2 below. The undisputed evidence shows that SRP can do what it likes with its prices.

fees." From small installers like American Solar to national installers like Sunrun, nobody wanted to work with us.

**C.      Undisputed Evidence of Market Shares and Barrier to Entry Confirms That SRP Has Monopoly Power.**

To demonstrate market power by circumstantial evidence, a plaintiff can: "(1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Kodak III*, 125 F.3d at 1202.

**1.      SRP's Monopoly Market Share Demonstrates Its Monopoly Power.**

Monopoly power "ordinarily may be inferred from the predominant share of the market." *Kodak*, 504 U.S. at 481 (defendant controlled 80-100% of relevant markets); *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 33 (1911) (defendant controlled 90% of the relevant market); *American Tobacco Co. v. United States*, 328 U.S. 781, 797 (1946) (over two-thirds of the market is a monopoly).  There is no factual dispute that SRP has the dominant share of the market for the provision of end-use energy in its service area. ███████████████████████████████████

██████████████████████████████████SSUF ¶ 27███████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████SSUF ¶ 42███████████

███████████████████████████████████████████████

███████████████████████████████████████████

These estimates are far over the legal threshold for monopoly power.[11]  There is no basis for dispute that SRP's calculation of its share in the self-described "Electricity

---

[11] As discussed above, these SRP analyses also support summary judgment as to market definition because they acknowledge that distributed generation competes in the same electricity market as SRP and taking some "market share" – albeit not very much – away from SRP in a single market.

1  Market" is inaccurate or insufficient standing alone to establish its monopoly power in

2  that market.

3  ### 2. Entry Barriers Protect SRP's Monopoly Power.

4  Entry barriers are "additional long-run costs that were not incurred by incumbent

5  firms but must be incurred by new entrants," or "factors in the market that deter entry

6  while permitting incumbent firms to earn monopoly returns." *Rebel Oil*, 51 F.3d at 1439

7  (quoting *Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1427–28 (9th Cir.

8  1993)); *see also Kodak III*, 125 F.3d at 1208 (9th Cir. 1997) (monopolist's economies of

9  scale, among other factors, constituted barrier to entry).

10  A number of entry barriers protect SRP's monopoly position. No one can contend

11  that new entry as a grid operator duplicating all or part of SRP's grid would be practical

12  or timely. As a practical matter, every rooftop solar customer must obtain electricity

13  from SRP some of the time; interconnection to SRP's grid is essential to obtain that

14  electricity. SSUF ¶ 36. Consumers recognize that going off the grid is not a viable

15  economic substitute, and is unlikely to be for years to come. *Id.*

16  In sum, indisputable direct evidence, as well as monopoly market shares and well

17  established barriers to entry, compel the conclusion that SRP possesses monopoly power

18  in the relevant market for the provision of energy to end-use consumers.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

**CONCLUSION**

2      For the foregoing reasons, the Court should grant SolarCity's motion for partial

3 summary judgment and hold that (1) the relevant product market in this case is the

4 provision of energy to end-use consumers which includes as competitors both SRP and

5 providers of rooftop solar power systems, such as SolarCity; (2) the relevant geographic

6 market is SRP's service territory; and (3) SRP possesses monopoly power in the relevant

7 market.

8

9 Dated:  September 15, 2016                    Respectfully submitted,

10                                                              BOIES, SCHILLER & FLEXNER LLP

11                                                              By:   s/Steven C. Holtzman

12                                                                      Steven C. Holtzman

13                                                              *Attorneys for Plaintiff SolarCity Corporation*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ECF ATTESTATION OF FILER**

     I, Steven C. Holtzman, am the ECF User whose ID and password is used to file this document and its associated attachments and lodged materials. Certain of these attachments and lodged materials bear the electronic signature of Sean P. Rodriguez or Nina Eisenberg. I hereby attest that each of those persons has expressly approved and concurred in filing under their electronic signature.


Dated: September 15, 2016

                                        s/Steven C. Holtzman
                                        Steven C. Holtzman

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

WILMER CUTLER PICKERING HALE & DORR LLP
Molly S. Boast (*admitted pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
molly.boast@wilmerhale.com

Christopher E. Babbitt (*admitted pro hac vice*)
1875 Pennsylvania Ave. NW
Washington, DC 20006
christopher.babbitt@wilmerhale.com

Christopher T. Casamassina (*admitted pro hac vice*)
350 South Grand Ave.
Los Angeles, CA 90071
chris.casamassina@wilmerhale.com

STEPTOE & JOHNSON LLP
Paul K. Charlton (012449)
Karl M. Tilleman (013435)
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
pcharlton@steptoe.com
ktilleman@steptoe.com

s/Steven C. Holtzman
Steven C. Holtzman