1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SolarCity Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Salt River Project Agricultural Improvement and Power District,<br><br>Defendant. | No. CV-15-00374-PHX-DLR<br><br>**ORDER** |

Before the Court are Plaintiff SolarCity Corporation's motion to seal (Doc. 268), and Defendant Salt River Project Agricultural Improvement and Power District's motion to seal (Doc. 295). Neither party filed a responsive motion or requested oral argument. For the following reasons, Plaintiff's motion (Doc. 268) is granted and Defendant's motion (Doc. 295) is granted in part and denied in part.

**I. Legal Standard**

Where, as here, parties seek leave to file under seal documents attached to a dispositive motion, they must show compelling reasons for doing so. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678-79 (9th Cir. 2009) (citing *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). The standard is high because the resolution of a dispute on the merits "is at the heart of the interest in ensuring the 'public's understanding of the judicial process and of significant public events.'" *Kamakana*, 447 F.3d at 1179 (citation omitted).

**II. Plaintiff's Motion to Seal (Doc. 268)**

Plaintiff seeks to file under seal: an unredacted version of its Renewed Motion for Summary Judgment (Motion); an unredacted version of its Separate Statement of Undisputed Facts (SSUF); and unredacted versions of the exhibits cited in the Motion and the SSUF. (Doc. 268 at 2.) The documents included in this request fall into three categories, which the Court discusses in turn.

First, Plaintiff seeks to seal "certain portions of deposition transcripts" of two employees because they contain "highly sensitive business information and trade secrets." (*Id.* at 4.) Specifically, these depositions discuss "strategic pricing decisions and their effect on internal financial metrics," the public disclosure of which Plaintiff argues would give its competitors an advantage in "determining how to profitably price their own offerings and better compete" against Plaintiff. (*Id.*) Importantly, because the portions Plaintiff seeks to seal concern service areas not at issue in this case, disclosure offers limited assistance to the public in better understanding the judicial proceedings. *See e.g., Aviva USA Corp. v. Vazirani*, 902 F. Supp. 2d 1246, 1273-74 (D. Ariz. 2012) (finding that sealing document did not interfere with understanding of the judicial process because the dispositive motion did not address information found in that document). The Court therefore finds that compelling reasons justify sealing these portions of the identified depositions.

Next, Plaintiff requests that the Court seal portions of its Motion and SSUF containing private consumer information. Plaintiff argues that release of this information would result in an invasion of privacy interests of third parties, and that consumers' identities should be sealed because disclosure is not necessary for the public to understand the parties' positions or the Court's rulings. Plaintiff notes, correctly, that consumer identities become a matter of the public record if they testify at trial. The Court finds that compelling reasons justify sealing the identified portions of Plaintiff's Motion and SSUF.

Finally, at Defendant's request, Plaintiff has lodged under seal a series of exhibits

that Defendant designated as confidential pursuant to the Court's Protective Order. Plaintiff "does not agree that th[ese] exhibits should be sealed, but has agreed to lodge them under seal" in accordance with the Court's Protective Order and Local Rule 5.6. (Doc. 268 at 2; Doc. 56.) In turn, Defendant filed a separate motion to seal these documents, which the Court discusses below.

## III. Defendant's Motion to Seal (Doc. 295)

Defendant seeks to have sealed 20 exhibits that Plaintiff filed in support of its motion for partial summary judgment, arguing that these exhibits contain information that "affect[s] net revenue" and is "not the sort of information a utility typically makes public." (Doc. 295 at 2-5.) Defendant offers a brief explanation as to why each exhibit should be sealed. For example, Defendant argues that Exhibit 8 consists of internal emails discussing pricing decisions "that necessarily affect" Defendant's net revenue. (Doc. 295 at 2.) Defendant also argues that Exhibit 9 consists of an internal presentation concerning strategic decision making that is "related to issues that affect [Defendant's] overall net revenue." (*Id.*) In support of its arguments, Defendant cites four cases in which business confidentiality and competitive standing have been deemed sufficient reasons to justify sealing court records. (*Id.* (citing *Ctr. for Auto Safety v. Chrysler Grp. LLC*, 809 F.3d 1092, 1098 (9th Cir. 2016); *Bean v. Pearson Educ., Inc.*, No. CV 11-8030-PCT-PGR, 2013 WL 2455930, at *4 (D. Ariz. June 5, 2013); *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, No. CV 09-1531-PHX-JAT, 2011 WL 4947343, at *2 (D. Ariz. Oct. 18, 2011); *Aviva*, 902 F. Supp. 2d at 1273).)

The Court agrees that, in some circumstances, business confidentiality and competitive standing can be compelling reasons justifying sealing court records, and acknowledges that there is some plausibility to Defendant's concerns. But the Court also has doubts as to the concreteness of the harm Defendant claims would result from public disclosure of the documents at issue. For example, Defendant argues that certain information it seeks to seal is not "the kind of information a utility would ordinarily make public." (Doc. 295 at 4.) Simply because information is not ordinarily made public does

not mean its publication necessarily results in harm. Lawsuits regularly result in the public disclosure of information that otherwise would remain private. Without a more specific explanation linking public disclosure with concrete harm, the Court is left with guesswork.

Moreover, Defendant's requests seem overbroad. In close cases involving some degree of conjecture as to the harm that would result from public disclosure of information, courts may grant a motion to seal provided that sealing the document will not interfere with the public's interest in understanding the judicial process. *See Aviva USA Corp.,* 902 F. Supp. 2d at 1273. The Court, however, has reviewed the exhibits at issue and finds that the information contained within is valuable to the public's understanding of the case.

Plaintiff brings claims under the Sherman Antitrust Act. The central allegation in this case is that Defendant has monopoly power over the electrical grid and has used a pricing strategy to eliminate competition from Plaintiff and other distributed solar entities by assessing a penalty against customers who use solar energy systems but still need grid access. (Doc. 39 ¶¶ 2, 4.) Plaintiff alleges that this pricing strategy exploits the practical reality that customers using solar energy systems are unable to completely disconnect from the grid. According to Plaintiff, "[t]he penalty is so significant that it eliminates the economic value to customers of generating their own power." (¶ 5.)

With this context, the Court is concerned that the exhibits Defendant seeks to seal contain information necessary for the public to understand the parties' positions and the Court's rulings. For example, Defendant seeks to seal Exhibit 6 in its entirety. The exhibit consists of emails between Defendant's employees in which the employees discuss the amount of kilowatt-hours required for its average customer to completely disconnect from the grid. Without this information, the public lacks critical information for understanding why Plaintiff believes the fee imposed on customers using distributed solar is inescapable (i.e., that as a practical reality, customers are unable to produce and store enough energy to completely disconnect from the grid).

Defendant also seeks to seal Exhibit 11, an internal presentation concerning "Emerging Customer Programs." (Doc. 295 at 3.) Defendant argues that the presentation contains "internal forecasts and analyses related to potential future strategies." (*Id.*) After reviewing the exhibit, the Court notes that the presentation characterizes several solar providers as "competition" and offers information on these various entities. The presentation also shows the effect on Defendant's revenue if it does nothing to counteract the competition it faces. Given the nature of the claims against Defendant, this information likely is relevant and valuable to the public's understanding of the case. (*See e.g.*, Doc. 39 ¶ 147 ("[Defendant's pricing plan] has the purpose and effect of excluding competition from distributed solar, including by actually foreclosing competition in the market and preventing entry).)

There might be select pieces of information contained within these exhibits that is not relevant or only tangentially related to the proceedings before the Court. The Court, however, is unable to grant Defendant's broad requests without also depriving the public of other vital information contained within these documents. For example, Defendant seeks to seal the entirety of Exhibit 14, an internal strategic planning chart. In part, the chart discusses effects of the economy, cybersecurity, and water supply on Defendant's business. Arguably, not all of that information is relevant to this case. The chart, however, also includes information on the impact of varying degrees of market penetration of distributed solar. If Defendant's interest in confidentiality pertains only to a discrete potion of a document, then its motion to seal should be appropriately limited.

For these reasons, the Court denies Defendant's request as it pertains to Exhibits 1, 4-20, and 22. The Court, however, grants in part Defendant's request to seal Exhibit 21. The exhibit "contains confidential customer information relating to non-sanctioned consumer generation as well as aggregated customer data concerning use of certain renewable energy technologies." (Doc. 295 at 5.) Defendant argues that the exhibit should be sealed in its entirety because "internal customer data is not the kind of information typically made public." (*Id.*) As discussed, although the Court finds this

explanation somewhat plausible, the Court also finds that Defendant's concern somewhat conjectural. The Court will not seal the entire exhibit because information contained within the exhibit is useful to the public, but in light of customers' privacy interests, the Court will require that customer last names included in the document be redacted from the publicly filed version of the exhibit.

**IT IS ORDERED** that Plaintiff's motion to seal (Doc. 268) is **GRANTED**. The Clerk of Court shall file under seal Exhibits 2 and 3 (lodged at Doc. 271-2 and 271-3) and Plaintiff's Motion and SSUF (lodged Docs. 276 and 277).

**IT IS FURTHER ORDERED** that Defendant's motion (Doc. 295) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendant's motion to seal Exhibits 1, 4-20, and 22 (lodged at Doc. 271-1, 272-4 through 271-11, 272-1 through 272-9, 272-11) is denied. Within **10 days** of the date of this order, Plaintiff shall publicly file unredacted versions of these exhibits.

2. Defendant's motion to seal Exhibit 21 (lodged at 272-10) is granted in part. The Clerk shall file Exhibit 21 under seal, but within **10 days** of the date of this order Plaintiff shall publicly file a revised version of Exhibit 21 that redacts only customer names.

**IT IS FURTHER ORDERED** that, within **10 days** of the date of this order, Plaintiff shall publicly file a revised version of its Motion and SSUF that redacts only the information the Court has ordered to be sealed.

Dated this 8th day of December, 2017.

Douglas L. Rayes
United States District Judge